UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John Doe<br>c/o<br>Dean Boland, Esq.<br>18123 Sloane Avenue<br>Lakewood, Ohio 44107 | CASE NO: |
| PLAINTIFF,<br><br>V. | JUDGE: |
| Sexsearch.com<br>6565 Sunset Boulevard<br>Suite #400<br>Los Angeles, CA 90028 | |
| Sexsearchcom.com<br>6565 Sunset Boulevard<br>Suite #400<br>Los Angeles, CA 90028 | |
| Jenna Jameson (aka Jenna Marie Massoli)<br>8390 E. Via de Ventura<br>Ste F110 #258<br>Scottsdale, AZ 85258 | |
| Playboy Enterprises, Inc.<br>680 North Lake Shore Drive<br>Chicago, IL 60611 | COMPLAINT<br>DEMAND FOR JURY TRIAL<br>ENDORSED HEREON |
| Cyber Flow Solutions, Inc.<br>6565 Sunset Boulevard<br>Suite #400<br>Los Angeles, CA 90028 | |
| Manic Media (aka Manic Media, Inc.)<br>6565 Sunset Boulevard<br>Suite #400<br>Los Angeles, CA 90028 | |
| Stallion.com FSC Limited<br>12 Kingslyn Ave<br>Kingston W.I. 10 JM | |

1

Dockets.Justia.com

CJ, Inc.
680 North Lake Shore Drive
Chicago, IL 60611

CJI, Inc.
680 North Lake Shore Drive
Chicago, IL 60611

Club Jenna, Inc.
680 North Lake Shore Drive
Chicago, IL 60611

DNR
1E Braemar Ave
Unit 19
Kingston 10 W.I. Jamaica

Experienced Internet.com, Inc.
11514-Y S.W. 109 Road
Miami, FL 33176

Fiesta Catering International, Inc. (aka Ficsta
Catering International, Inc).
Global Corporate Centre
2 Pleasant View
Cave Hill, St. Michael, Barbados

Adam Small
6565 Sunset Boulevard
Suite #400
Los Angeles, CA 90028

Camelia Francis
12 Kingslyn Avenue
Kingston 10 Jamaica

Damian Cross (aka Damian I. Cross)
6565 Sunset Boulevard
Suite #400
Los Angeles, CA 90028

Ed Kunkel
6565 Sunset Boulevard
Suite #400
Los Angeles, CA 90028

Mauricio Bedoya
8306 Mills Dr.
Suite #390
Miami, FL 33183

Patricia Quesada
11514-Y S.W. 109 Road
Miami, FL 33176

Richard Levine
6100 Wilshire Boulevard
Suite 235
Los Angeles, CA 90048

Moniker Online Services, LLC.
20 SW 27th Ave.
Suite 201
Pompano Beach, Florida 33069

DEFENDANTS.

Plaintiff John Doe, through his undersigned Counsel, makes the following statements and claims for his Complaint against Defendants:

PARTIES AND JURISDICTION

1.    At all times relevant to the events in this matter, Plaintiff was an adult male resident of the State of Ohio.

2.    Plaintiff is identified as John Doe as this lawsuit involves facts of the utmost intimacy to wit: sexual conduct between Plaintiff and another Sexsearch.com member identified as Jane Roe.

3.    Jane Roe is not identified by her real name because at all times relevant to the allegations herein, Jane Roe was a minor female.

4.    Jane Roe was a paid member of Defendants' website based service known as Sexsearch.com.

5.    Plaintiff is the father of minor children who will suffer significant emotional harm if his name is required to be disclosed on publicly available materials related to this litigation.

6.    Jane Roe is currently a minor who will suffer significant emotional harm if her name is required to be disclosed on publicly available materials related to this litigation.

JURISDICTION AND VENUE

7.    Plaintiff incorporates all previous paragraphs as if fully re-written.

8.    The amount in controversy exceeds $75,000 and otherwise satisfies the jurisdictional requirements of 28 U.S.C. 1332.

9.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Ohio.

10.   Venue is proper in this jurisdiction pursuant to 28 U.S.C. 1391(a) because Defendants have contracted with thousands of Ohio residents to provide Sexsearch.com services.

11.   Venue is proper in this jurisdiction pursuant to 28 U.S.C. 1391(a) because Defendants marketed their services to Plaintiff, a resident of Ohio.

12.   Venue is proper in this jurisdiction pursuant to 28 U.S.C. 1391(a) because the injury caused by Defendants occurred in Ohio to an Ohio resident.

13.   Defendants' have engaged in the acts and practices described herein in various Ohio counties, including the County of residence of John Doe and Jane Roe.

14.     The name of the counties in Ohio are omitted as part of the need to protect the
identification of John Doe and Jane Roe.

OWNERSHIP OF SEXSEARCH.COM AND SEXSEARCHCOM.COM

15.     Defendant, Sexsearch.com is an owner of sexsearch.com

16.     Defendant, Jenna Jameson (aka Jenna Marie Massoli) is an owner of Sexsearch.com.

17.     Defendant, Sexsearchcom.com is an owner of Sexsearch.com.

18.     Defendant, Cyber Flow Solutions, Inc. is an owner of Sexsearch.com.

19.     Defendant, Manic Media (aka Manic Media, Inc.) is an owner of Sexsearch.com.

20.     Defendant, Stallion.com FSC Limited is an owner of Sexsearch.com.

21.     Defendant, CJ, Inc. is an owner of Sexsearch.com.

22.     Defendant, CJI, Inc. is an owner of Sexsearch.com.

23.     Defendant, Club Jenna, Inc. is an owner of Sexsearch.com.

24.     Defendant, DNR is an owner of Sexsearch.com.

25.     Defendant, Experienced Internet, Inc. is an owner of Sexsearch.com.

26.     Defendant, Fiesta Catering International, Inc. (aka Ficsta [sic] Catering International,
Inc.) is an owner of Sexsearch.com.

27.     Defendant, Adam Small is an owner of Sexsearch.com.

28.     Defendant, Camelia Francis is an owner of Sexsearch.com.

29.     Defendant, Damian Cross (aka Damian I. Cross) is an owner of Sexsearch.com.

30.     Defendant, Ed Kunkel is an owner of Sexsearch.com.

31.     Defendant, Mauricio Bedoya is an owner of Sexsearch.com.

32.     Defendant, Patricia Quesada is an owner of Sexsearch.com.

33.     Defendant, Richard Levine is an owner of Sexsearch.com.

34.     Defendant, Jenna Jameson (aka Jenna Marie Massoli) is an owner of Sexsearchcom.com.

35.     Defendant, Sexsearch.com is an owner of Sexsearchcom.com.

36.     Defendant, Cyber Flow Solutions, Inc. is an owner of Sexsearchcom.com.

37.     Defendant, Manic Media (aka Manic Media, Inc.) is an owner of Sexsearchcom.com.

38.     Defendant, Stallion.com FSC Limited is an owner of Sexsearchcom.com.

39.     Defendant, CJ, Inc. is an owner of Sexsearchcom.com.

40.     Defendant, CJI, Inc. is an owner of Sexsearchcom.com.

41.     Defendant, Club Jenna, Inc. is an owner of Sexsearchcom.com.

42.     Defendant, DNR is an owner of Sexsearchcom.com.

43.     Defendant, Experienced Internet, Inc. is an owner of Sexsearchcom.com.

44.     Defendant, Fiesta Catering International, Inc. (aka Ficsta [sic] Catering International, Inc.) is an owner of Sexsearchcom.com.

45.     Defendant, Adam Small is an owner of Sexsearchcom.com.

46.     Defendant, Camelia Francis is an owner of Sexsearchcom.com.

47.     Defendant, Damian Cross (aka Damian I. Cross) is an owner of Sexsearchcom.com.

48.     Defendant, Ed Kunkel is an owner of Sexsearchcom.com.

49.     Defendant, Mauricio Bedoya is an owner of Sexsearchcom.com.

50.     Defendant, Patricia Quesada is an owner of Sexsearchcom.com.

51.     Defendant, Richard Levine is an owner of Sexsearchcom.com.

DEFENDANTS' BUSINESS

52.     Plaintiff incorporates all previous paragraphs as if fully re-written.

53.     Sexsearch.com is a website.

54.    Sexsearchcom.com is a website.

55.    Many companies that are authorized to register domain names for Internet users make that registration information available for what is known as a whois service.

56.    Searching a particular domain name using the whois service displays information about the registrant of that domain name.

57.    Searching Sexsearch.com using the whois service provides information about the registrant for the sexsearch.com domain name.

58.    The whois information identifying the registrant of the site is supplied by the domain name registration company.

59.    The domain name registration company is supplied the registrant information from the registrant.

60.    Searching Sexsearch.com using the whois service provides a graphical representation of the home page of Sexsearch.com.

61.    The graphic below is derived from the whois service information for Sexsearch.com.



62.     The graphic below is derived from the whois service information for

        Sexsearchcom.com.



63.     Defendants' own a website service found at the internet address Sexsearch.com

64.     Defendants' operate a website service found at the internet address Sexsearch.com.

65.     Defendants' own a website service found at the internet address Sexsearchcom.com.

66.     Defendants' operate a website service found at the internet address

        Sexsearchcom.com

67.     Sexsearch.com redirects all web browsers to Sexsearchcom.com.

68.     Sexsearch.com was purchased through Moniker Online Services, Inc.

69.     Sexsearchcom.com was purchased through Moniker Online Services, Inc.

70.     Colosseum Online is a website hosting company.

71.     Colosseum Online's website address is http://www.colosseum.com.

72.     Website hosting companies permit Internet users to make their websites viewable to

        other Internet users.

73.     Sexsearch.com is hosted by Colosseum Online in Toronto, Canada.

74.     Sexsearchcom.com is hosted by Colosseum Online in Toronto, Canada.

75.     Sexsearch.com and Sexsearchcom.com have Internet Protocol Addresses (IP

        address).

76.     Those IP addresses enable Internet users to geo-locate the computer server hosting

        those two (2) websites.

77.     The IP address of Sexsearch.com is 209.47.169.6.

8

78.    The IP address of Sexsearchcom.com is 209.47.169.10.

79.    The IP address of Colosseum.com is 216.95.249.16.

80.    The IP addresses of Sexsearch.com, sexsearchcom.com and Colosseum.com map to the intersection of Manning Street and Barton Street in Ontario, Canada.

81.    The offices of Colosseum Online are located at 800 Petrolia Road. Unit 8, Toronto, Ontario, Canada.

82.    The distance from the server location of sexsearch.com, sexsearchcom.com and Colosseum.com to the Colosseum Online offices is seventeen (17) kilometers.

83.    On the whois service, the website title for Sexsearch.com is "SEXSEARCH.COM - Adult Personals | Free Adult Personals | Adult Dating | Sex Search."

84.    On the whois service, the Meta Description for Sexsearch.com is "Adult personals and free online adult dating service. Search adult swingers and couples personal classified ads. Look to Sex Search for free adult personals."

85.    On the whois service, the Meta Keywords for Sexsearch.com are "adult personals, free adult personals, adult dating."

86.    On the whois service, the Detail is:

     SEXSEARCH.COM
     209.47.169.6
     Record Type:                                                    IP Address

     MCI Communications Services, Inc. d/b/a Verizon Business UUNETCA4-A (NET-209-47-0-0-1)
              209.47.0.0 - 209.47.255.255
     Colosseum Online COLOSS2-UUU13 (NET-209-47-169-0-1)
              209.47.169.0 - 209.47.169.255
     Colosseum Online Inc. COLOSS-VLAN36-BLK5 (NET-209-47-169-0-2)
              209.47.169.0 - 209.47.169.127

87.    On the whois service, the website title for Sexsearchcom.com is

"SEXSEARCH.COM - Adult Personals | Free Adult Personals | Adult Dating | Sex

Search."

88.    On the whois service, the Meta Description for Sexsearchcom.com is "Adult

personals and free online adult dating service. Search adult swingers and couples

personal classified ads. Look to Sex Search for free adult personals."

89.    On the whois service, the Meta Keywords for Sexsearchcom.com are "adult

personals, free adult personals, adult dating."

90.    On the whois service, the Detail is:

```
SEXSEARCHCOM.COM
209.47.169.10
Record Type:                                        IP Address

MCI Communications Services, Inc. d/b/a Verizon Business UUNETCA4-A (NET-209-47-0-0-1)
                209.47.0.0 - 209.47.255.255
Colosseum Online COLOSS2-UUU13 (NET-209-47-169-0-1)
                209.47.169.0 - 209.47.169.255
Colosseum Online Inc. COLOSS-VLAN36-BLK5 (NET-209-47-169-0-2)
                209.47.169.0 - 209.47.169.127
```

91.    Sexsearch.com and Sexsearchcom.com are the same service providers (hereinafter

Sexsearch.com refers to both Sexsearch.com and Sexsearchcom.com).

92.    Sexsearch.com provides services it claims are exclusively for adults.

93.    The service provides its adult members' access to other adult members.

94.    Sexsearch.com provides that access for the purpose of meeting those adult members.

95.    Said access is also for the purpose of allowing members to engage in sexual

encounters.

96.    Sexsearch.com encourages its members to meet and engage in sexual encounters.

97.   Sexsearch.com is an information content provider as defined in 47 U.S.C. § 230 (f)(3).

98.   Sexsearch.com is an access software provider as defined in 47 U.S.C. § 230 (f)(4).

99.   Sexsearch.com boasts more than ten million (10,000,000) members nationwide.

100.  Sexsearch.com has thousands (1000+) of paid members who are residents of the State of Ohio.

## FACTS THAT SUPPORT THIS COMPLAINT

101.  Plaintiff incorporates all previous paragraphs as if fully re-written.

102.  Plaintiff, at all times relevant to the events herein, was a resident of the State of Ohio.

103.  Jane Roe, at all times relevant to the events herein, was a resident of the State of Ohio.

104.  Defendants, at all times relevant to the events herein, were operating Sexsearch.com worldwide including within the State of Ohio.

105.  Members must pay for the service.

106.  Members must agree to Sexsearch.com's terms and conditions as a requirement of receiving its service.

107.  Sexsearch.com's main page at www.sexsearch.com explicitly advertises that it delivers "real people, real sex."

108.  Sexsearch.com's main page at www.sexsearch.com explicitly labels its service as "adult personals."

109.  Sexsearch.com's main page at www.sexsearchcom.com explicitly advertises that it delivers "real people, real sex."

110.    Sexsearch.com's main page at www.sexsearchcom.com explicitly labels its service as "adult personals."

### SEXSEARCH.COM'S MEMBERSHIPS

111.    Plaintiff incorporates all previous paragraphs as if fully re-written.

112.    Sexsearch.com offers three (3) levels of membership: basic, silver and gold.

113.    The basic membership is free.

114.    The two (2) paid memberships are labeled silver and gold.

115.    The silver and gold memberships require members to pay a recurring charge.

116.    Said charge of up to as much as $29.95 occurs per month, per member.

117.    Members have the option to be billed monthly or every three (3) months.

118.    Sexsearch.com charges its paid members by billing members' credit cards.

119.    Sexsearch.com charges its paid members by debiting individual members' United States checking accounts.

120.    All members may create a profile.

121.    Basic members can upload photographs.

122.    Basic members can upload video content.

123.    Basic members are able to use limited search criteria.

124.    Basic members cannot contact other members.

125.    Basic members attempting to contact other members are redirected to an upgrade page requesting payment for one (1) of the other two (2) membership options.

126.    Silver members may access advanced search options.

127.    Silver members get priority listing in all search results by members.

128.    Silver members can view and contact all other members.

12

129.    Gold members have all the options available to basic and silver members.

130.    Gold members may make multiple profiles.

131.    Gold members may access an area of the website service called the "GoldRoom."

132.    Sexsearch.com advertises the "GoldRoom" as containing "the best hardcore porn."

133.    Sexsearch.com boasts spending two hundred thousand ($200,000.00) dollars a month to include the best hard core pornography in the "GoldRoom."

134.    Gold members are given even more advanced search options than those available to basic membership holders.

135.    Gold members are given even more advanced search options than those available to silver membership holders.

136.    Gold members have priority profile reviews.

137.    Gold members have priority for review of audio they submit to be included with their profiles.

138.    Gold members have priority for review of graphic content they submit to be included with their profiles.

139.    Gold members have priority for review of the photo content they submit to be included with their profiles.

140.    Gold members have priority for review of the video content they submit to be included with their profiles.

141.    Gold members have listings at the top of all search results above all other membership designations.

142.    Gold members can view all members' audio content.

143.    Gold members can view all members' graphic content.

144.    Gold members can view all members' photographic content.

145.    Gold members can listen to all members' video content.

146.    Gold members receive the fastest email support.

147.    Gold members receive the fastest technical support.

SEXSEARCH.COM MEMBER PROFILES

148.    Plaintiff incorporates all previous paragraphs as if fully re-written.

149.    All members are permitted to provide information for a profile.

150.    One method a member locates other members is by reviewing other members' profiles.

151.    A profile is a list of information describing the member.

152.    A profile is a way to identify the member.

153.    Defendants review all profiles before they are posted.

154.    Defendants verify all profiles before they are posted.

155.    Defendants approve all profiles before they are posted.

156.    Once Defendants' post a profile, it is viewable by other members.

157.    Defendants review all changes made by members to their profiles before they post the changed profiles.

158.    Defendants verify all changes made by members to their profiles before they post the changed profiles.

159.    Defendants approve all changes made by members to their profiles before Defendants' post those changed profiles.

160.    A profile includes a listing of responses by the member to specific questions posed solely by sexsearch.com.

161.   Sexsearch.com has profile guidelines.

162.   Sexsearch.com only posts profiles that comply with the profile guidelines.

163.   Sexsearch.com modifies profiles if they fail to comply with the profile guidelines.

164.   Members may upload audio content to their profile.

165.   Members may upload graphic content to their profile.

166.   Members may insert photographs into their profiles.

167.   Members may add video content to their profiles.

168.   The profile permits members to list their age.

169.   The profile permits members to list other physical characteristics.

170.   Members' are permitted to list their interests at their discretion.

171.   Members' may list their sexual preferences according to options available by
       questionnaire.

## PLAINTIFF'S MEMBERSHIP IN DEFENDANTS' SERVICE

172.   Plaintiff incorporates all previous paragraphs as if fully re-written.

173.   Plaintiff became a paid member of Sexsearch.com in October of 2005.

174.   Plaintiff was a gold member.

175.   Plaintiff agreed to Sexsearch.com's terms and conditions during his member
       registration.

176.   Plaintiff reviewed Sexsearch.com's warranties prior to his member registration.

177.   Plaintiff reviewed Sexsearch.com's profile guidelines upon becoming a member.

178.   Plaintiff paid a fee of $59.95 in exchange for three (3) months of services and other
       promises in those contractual agreements.

179.   Plaintiff paid that monthly fee for three (3) months.

180.    Plaintiff's credit card was billed for Sexsearch.com services.

THE CONTRACTUAL AGREEMENTS BETWEEN PLAINTIFF AND DEFENDANTS

181.    Plaintiff incorporates all previous paragraphs as if fully re-written.

182.    Sexsearch.com's contractual agreements included terms and conditions.

183.    Plaintiff was required to agree to Sexsearch.com's terms and conditions to become a member.

184.    Plaintiff agreed to Sexsearch.com's terms and conditions.

185.    Sexsearch.com warranted that it limits its service to adults only.

186.    In October 2005, Defendants warranted that "all persons within this site are 18+ and all images are in compliance with 18 U.S.C. 2257."

187.    Sexsearch.com requires paying members to pay with a credit card or permit automatic debiting of a U.S. checking account as forms of payment for its services.

188.    Sexsearch.com promised Plaintiff that it does not permit minors to use its service.

189.    Sexsearch.com promised Plaintiff that any images of minors posted on its site are removed by Sexsearch.com.

190.    Sexsearch.com promised Plaintiff that it reviews all profiles on its site to remove materials depicting minors.

191.    Sexsearch.com promised Plaintiff that it verifies all profiles on its site to remove materials depicting minors.

192.    Sexsearch.com requires all members to state they are eighteen (18) years of age or older prior to becoming members.

193.    Sexsearch.com encourages people to become members to meet other members for sexual encounters.

PLAINTIFF'S CONTACT WITH JANE ROE

194.    Plaintiff incorporates all previous paragraphs as if fully re-written.

195.    Defendants permitted Jane Roe to become a member of its service.

196.    Defendants permitted Jane Roe to become a gold member.

197.    Defendants accepted Jane Roe's form of payment for its service.

198.    On November 2, 2005, Jane Roe's profile contained the following information:

      a.   Jane Roe [alias is used to protect identity of the minor female member]

      b.   Birthdate June 15, 1987

      c.   Age 18

      d.   An authentic image of Jane Roe at her then current age.

      e.   Jane Roe listed her body hair as smooth.

      f.   Jane Roe listed that she was looking for a 1 on 1 sexual encounter.

      g.   Her ideal match included her interest in a male "who can last for a long time."

199.    Defendants verified Jane Roe's profile.

200.    Defendants approved Jane Roe's profile.

201.    Defendants posted Jane Roe's profile.

202.    Defendants verified Jane Roe's photograph included in her profile.

203.    Defendants approved Jane Roe's photograph included in her profile.

204.    Defendants posted Jane Roe's photograph included in her profile.

205.    On November 2, 2005, Plaintiff located Jane Roe's profile.

206.    On November 2, 2005, Plaintiff added Jane Roe to his hot list.

207.    At the time of Sexsearch.com's acceptance of Jane Roe's membership, she was a minor.

17

208.  At the time of Sexsearch.com's acceptance of Jane Roe's profile, she was a minor.

209.  At the time of Sexsearch.com's verification of Jane Roe's profile, she was a minor.

210.  At the time of Sexsearch.com's posting of Jane Roe's profile, she was a minor.

211.  Sexsearch.com assessed monthly charges for its service to Jane Roe using her approved form of payment for its services.

212.  Sexsearch.com assessed monthly charges for its service to Jane Roe for six (6) months.

213.  Defendants' delivered Jane Roe's information to Plaintiff.

214.  Defendants' delivered Jane Roe's information to other adult members.

215.  Plaintiff initiated communication with Jane Roe on November 2, 2005.

216.  Such communication included live, real-time chatting.

217.  Defendants chatting feature permits chat participants to send real-time text based messages to each other.

218.  Plaintiff chatted online through Sexsearch.com with Jane Roe.

219.  Jane Roe invited Plaintiff to her home on November 15, 2005 for the purpose of a sexual encounter.

220.  Plaintiff met Jane Roe at her residence on November 15, 2005.

221.  Jane Roe initiated sexual contact with Plaintiff on November 15, 2005.

222.  Plaintiff and Jane Roe engaged in consensual sexual relations on November 15, 2005.

223.  Plaintiff and Jane Roe communicated subsequent to their meeting on November 15, 2005.

224.  After November 22, 2005, all communications between Plaintiff and Jane Roe abruptly ceased.

CRIMINAL INVESTIGATION OF PLAINTIFF

225. Plaintiff incorporates all previous paragraphs as if fully re-written.

226. On December 30, 2005, representatives of Plaintiff's local law enforcement community uniformed and non-uniformed officers surrounded Plaintiff's backyard patio.

227. Plaintiff's house was searched.

228. Plaintiff was seized.

229. Plaintiff was questioned about an ongoing investigation into a criminal matter involving multiple charges of unlawful sexual conduct with a minor.

230. Plaintiff was informed that he was the suspect in the investigation.

231. Law enforcement officers seized property from Plaintiff's home.

232. Subsequent to the search, Plaintiff was publicly named in a multi-count indictment alleging he engaged in unlawful sexual conduct with a minor.

233. The indictment includes separate charges of unlawful sexual conduct with a minor, all felonies of the third degree.

234. Each of those charges, carry a penalty of prison time from one to five (1-5) years.

235. Those charges can result in fifteen (15) years in prison for Plaintiff.

236. As a result of the charges, Plaintiff could face a sexual classification that might include lifetime registration as a sex offender.

237. The classification Plaintiff faces may include limitations on where he can live.

238. The incarceration Plaintiff faces may include being excluded from the entirety of the childhood of his two (2) minor children.

239.  The classification Plaintiff faces may include being excluded from the entirety of the childhood of his two (2) minor children.

240.  The alleged victim of the indictment against Plaintiff is Sexsearch.com member, Jane Roe.

241.  Plaintiff's name was publicly disseminated as a defendant in that criminal matter.

242.  Plaintiff's reputation in the community as a law-abiding citizen was damaged.

243.  Plaintiff was required to retain and pay for criminal defense counsel to defend himself against the criminal charges arising from his relationship with the member of Sexsearch.com, Jane Roe.

244.  Plaintiff was terminated from his employment.

245.  Plaintiff was required to hire expert witnesses as part of his defense to the criminal charges arising from his relationship with the Sexsearch.com member, Jane Roe.

246.  Plaintiff's liberty was placed at risk as a result of his use of and reliance upon the expressed warranties made by Sexsearch.com service.

247.  Plaintiff's liberty was placed at risk as a result of his use and reliance upon the implied warranties made by the Sexsearch.com service.

248.  Plaintiff's liberty was placed at risk as a result of his use and reliance upon the contractual terms contained in Sexsearch.com's terms and conditions.

                    CONDUCT AND INTENT OF DEFENDANTS

249.  Plaintiff incorporates all previous paragraphs as if fully re-written.

250.  Defendants delivered to adult members' access to Jane Roe.

251.  Defendants delivered nude photographs of adult members to Jane Roe.

252.  Defendants delivered hard-core adult pornography to Jane Roe.

253.  Defendants delivered nude video content of adults to Jane Roe.

254.  Defendants supplied to Jane Roe "the best hard core" pornographic content contained in Defendants' "GoldRoom."

255.  Defendants delivered access to Jane Roe to its adult members for the purpose of engaging in sexual relations with her.

256.  Defendants delivered access to Jane Roe to its adult members for the purpose of those adults' members engaging in live video chats with Jane Roe.

257.  Defendants delivered fetish room access to Jane Roe.

258.  Adult members of Defendants' service found Jane Roe using Defendants' service.

259.  Adult members of Defendants' service engaged in sexual relations with Jane Roe after finding her using Defendants' service.

260.  Jane Roe's profile was active on Sexsearch.com until it was removed by Jane Roe's parents.

MARKETING OF CHILDREN TO ADULTS FOR SEXUAL PURPOSES

261.  Plaintiff incorporates all previous paragraphs as if fully re-written.

262.  Defendants' own the domain name Sexsearch.com.

263.  Defendants' operate the domain name Sexsearch.com.

264.  Defendants' own other domain names.

265.  Defendants' operate other domain names.

266.  Defendants' own the domain name Orgasm.com.

267.  Defendants' operate the domain name Orgasm.com.

268.  Defendants' own the domain name Rawnudeteens.com.

269.  Defendants' operate the domain name Rawnudeteens.com.

270.   Entering Rawnudeteens.com into an internet browser automatically redirects the user to the domain name Orgasm.com.

271.   Re-direction means an Internet user enters one website address into their browser and is automatically sent to another website and its contents are displayed without any further interaction from the user.

272.   Rawnudeteens.com marketing text includes: "You won't believe these adorable <u>little virgins</u> let us photograph their <u>first time</u>!"

273.   Rawnudeteens.com marketing text includes: "<u>Real teen virgins</u> getting their tight pussies and assholes <u>deflowered</u> by massive cocks.  Exclusive, intense hardcore <u>1st timers</u>!  No bullshit!  100% full access."

274.   Defendants' own Freeteenslits.com

275.   Defendants' operate Freeteenslits.com

276.   Entering Freeteenslits.com into an internet browser automatically redirect the user to the domain name Orgasm.com.

277.   Defendants' own Freeteentwat.com.

278.   Defendants' operate Freeteentwat.com.

279.   Entering Freeteentwat.com into an internet browser automatically redirects the user to the domain name Orgasm.com.

280.   Defendants' own Youngntender.com

281.   Defendants' operate Youngntender.com.

282.   Youngntender.com advertises "Im tired of sleeping with my teddy sign up and be my daddy."

283.   Defendants' own Freentender.com

284.  Defendants' operate Freentender.com

285.  Freentender.com advertises "Raw Nude Teens."

286.  Defendants' own Devirginized.com.

287.  Defendants' operate Devirginized.com.

288.  Devirginized.com advertises the site includes "<u>devirginized young teens</u>, the Best <u>Young Girls Undressed</u>, with the best of <u>schoolgirls</u>, pink pussy, naked <u>young virgins</u> and the <u>girl</u> next door."

289.  The search engine keywords Defendants' programmed into Devirginized.com's computer code to assist people in finding the site are as follows "broken hymens <u>bloody bald snatch</u> sweet pink <u>young girls</u> <u>naked innocent</u> next door teen <u>schoolgirls</u> girlfriends bimbos panties video sex sexy oral facial cream fisting spanking <u>boys girl</u> <u>girls</u> nude fuck fucking ass hymen film avi mpeg chat pornography free."

FIRST CAUSE OF ACTION
BREACH OF CONTRACT

290.  Plaintiff incorporates all previous paragraphs as if fully re-written.

291.  No person can become a paid member of Sexsearch.com without consenting to Defendants' terms and conditions and providing valid payment.

292.  Plaintiff agreed to those terms and conditions.

293.  Plaintiff agreed to abide by Defendants' profile guidelines.

294.  Plaintiff paid to become a member of sexsearch.com pursuant to the terms and conditions and profile guidelines.

295.  Defendants breached their contractual agreement with Plaintiff.

296.  Defendants permitted minors to become paid members of their service.

297.  Defendants delivered a minor to Plaintiff for the purpose of sexual relations.

298.    That breach has caused Plaintiff significant financial, emotional damage and severe

damage to his reputation in the community.

SECOND CAUSE OF ACTION
FRAUD

299.    Plaintiff incorporates all previous paragraphs as if fully re-written.

300.    Sexsearch.com represented to Plaintiff that all paid members are adults.

301.    Sexsearch.com represented to Plaintiff that all persons on its site are "18+" years of

age."

302.    Sexsearch.com represented to Plaintiff that it verifies all member profiles prior to

posting.

303.    Plaintiff reasonably relied on Sexsearch.com's representations.

304.    Sexsearch.com knew or should have known those representations were false.

305.    Plaintiff has suffered significant financial, emotional and reputational damages as a

result of his reliance on sexsearch.com's false representation.

THIRD CAUSE OF ACTION
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

306.    Plaintiff incorporates all previous paragraphs as if fully re-written.

307.    Plaintiff was reasonably distressed by the injuries suffered resulting from Defendants'

conduct.

308.    Plaintiff's emotional distress included fearing the loss of his liberty related to criminal

charges arising from his conduct reliant on the Defendants' representations connected

to the Sexsearch.com service.

309.  Plaintiff's emotional distress included fearing loss of employment related to criminal charges arising from his conduct reliant on the Defendants' representations connected to the Sexsearch.com service.

310.  Plaintiff's emotional distress included fearing loss of his reputation related to criminal charges arising from his conduct reliant on the Defendant's representations connected to the Sexsearch.com service.

311.  Plaintiff's damages were foreseeable from Defendants' conduct.

312.  Defendants' conduct proximately caused Plaintiff's emotional distress.

313.  Plaintiff has suffered significant financial, emotional and reputational damages as a result of his reliance on Sexsearch.com's false representation.

FOURTH CAUSE OF ACTION<br>NEGLIGENT MISREPRESENTATION

314.  Plaintiff incorporates all previous paragraphs as if fully re-written.

315.  Defendants have a pecuniary interest in the operation of Sexsearch.com.

316.  Defendants' supplied information promising that Sexsearch.com members were all adults.

317.  Plaintiff relied on those promises and has suffered pecuniary loss as a result.

318.  Plaintiff's reliance on those promises was justifiable.

319.  Defendants' failed to exercise reasonable care in communicating those promises and warranties.

320.  Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' negligent misrepresentation.

FIFTH CAUSE OF ACTION
BREACH OF WARRANTY

321.    Plaintiff incorporates all previous paragraphs as if fully re-written.

322.    Defendants' Sexsearch.com service includes a warranty.

323.    Defendants' warranted to all potential members and paid members that its site

contained only persons 18 years of age or older.

324.    At all times relevant to the events giving rise to this complaint, Sexsearch.com

contained paid members who were not adults.

325.    Defendants' delivered Jane Roe, a minor, to Plaintiff for the purpose of engaging in

sexual relations.

326.    Defendants' breached its warranty to Plaintiff.

327.    Plaintiff's reliance on that warranty was reasonable.

328.    Defendants did not market Sexsearch.com as delivering children to adults for the

purpose of sexual relations.

329.    Plaintiff has suffered significant financial, emotional and reputational damages as a

result of Defendants' breach of their warranty.

SIXTH CAUSE OF ACTION
VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

330.    Plaintiff incorporates all previous paragraphs as if fully re-written.

331.    At the time of becoming a paid member to Defendants' service, Plaintiff was a

consumer as defined under Ohio law.

332.    The terms and conditions that Plaintiff was required to agree to are identical for each

member.

333.   The Terms and Conditions satisfy the definition for a standardized form contract under Ohio law.

334.   Plaintiff could not have obtained Defendants' services without agreeing to the terms and conditions.

335.   Defendants do not negotiate with potential members regarding the wording of the terms and conditions.

336.   Business practices of Defendants are governed by Ohio's Consumer Sales Practices Act.

337.   Defendants' at all relevant times are and were "suppliers" as defined in R.C. 1345.01(C).

338.   Defendants' have engaged in the business of effecting or soliciting "consumer transactions" as that term is defined in R.C. 1345.01(A).

339.   Defendants' have engaged in the acts and practices described herein in the State of Ohio.

340.   Defendants' have engaged in the acts and practices described herein in various Ohio counties, including the County of residence of John Doe and Jane Roe.

341.   Under Ohio Revised Code Section 1345.02, businesses operating within the State of Ohio may not commit a deceptive trade practice.

342.   Ohio Revised Code 1345.02(B)(10) identifies a deceptive trade practice as one in which a business represents that a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

343.    Defendants' warranted as part of their service that no members of its Sexsearch.com service were minors.

344.    In Defendants' terms and conditions, it disclaimed any liability for any damages from content of its website service.

345.    Defendants' terms and conditions disclaimed any warranties related to members' use of the Sexsearch.com service.

346.    Defendants' conduct is a violation of Ohio Revised Code section 1345.02(B)(10).

347.    Defendants' conduct is a deceptive trade practice.

348.    Defendants' conduct entitles Plaintiff to triple damages in accordance with the Ohio Consumer Sales Practices Act.

349.    Plaintiff suffered damages as a result of that deceptive trade practice.

350.    Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' deceptive trade practice.

SEVENTH CAUSE OF ACTION
VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

351.    Plaintiff incorporates all previous paragraphs as if fully re-written.

352.    Defendants' represented that their service did not involve persons less than 18 years of age.

353.    Defendants' service did include members who were under 18 years of age.

354.    Defendants' committed an unfair and deceptive acts or practices in violation of R.C. 1345.02(A) by including a representation for their service that it does not contain any persons under the age of 18 years of age when such representation is false.

28

355.   Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' deceptive trade practice.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

356.   Plaintiff incorporates all previous paragraphs as if fully re-written.

357.   Defendants' terms and conditions limited Plaintiff's damages to the amount paid for Defendants' service.

358.   Defendants' have committed unfair, deceptive and unconscionable acts or practices in violation of R.C. 1345.02(A) and 1345.03 by incorporating in their consumer contract a clause limiting damages for its breach to the amount of the contract.

359.   Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' deceptive trade practice.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

360.   Plaintiff incorporates all previous paragraphs as if fully re-written.

361.   Defendants' terms and conditions permitted Defendants to unilaterally cancel Plaintiff's membership after Plaintiff's three (3) day right to cancel had passed.

362.   Defendants' committed unfair, deceptive and/or unconscionable acts or practices in violation of R.C. 1345.02(A) or 1345.03(A) by incorporating a clause in its consumer contracts that allows the supplier to unilaterally cancel the contract after the consumer's three (3) day right to cancel has passed without allowing the consumer the same option.

363.   Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' deceptive trade practice.

TENTH CAUSE OF ACTION
UNCONSCIONABLE CONTRACT TERM

364.    Plaintiff incorporates all previous paragraphs as if fully re-written.

365.    Defendants' terms and conditions are one-sided in favor of Defendants.

366.    Defendants' committed unfair, deceptive and unconscionable acts or practices in
        violation of R.C. 1345.02(A) and 1345.03(A) by including clauses being so
        substantially one-sided in favor of the supplier as to constitute an unconscionable
        contract terms in violation of R.C. 1345.03(B)(5).

367.    Plaintiff has suffered significant financial, emotional and reputational damages as a
        result of Defendants' deceptive trade practice.

ELEVENTH CAUSE OF ACTION
UNCONSCIONABLE CONTRACT TERM

368.    Plaintiff incorporates all previous paragraphs as if fully re-written.

369.    Defendants' terms and conditions provided no guarantee Defendants' would or could
        perform its contractual promises.

370.    Defendants' committed unfair, deceptive and unconscionable acts and/or practices by
        requiring Plaintiff to agree to terms and conditions that contained no guarantee
        Defendants' would or could perform their contractual promises.

371.    Plaintiff has suffered significant financial, emotional and reputational damages as a
        result of Defendants' deceptive trade practice.

TWELFTH CAUSE OF ACTION
UNCONSCIONABLE CONTRACT TERM

372.    Plaintiff incorporates all previous paragraphs as if fully re-written.

373.    Defendants' drafted the Sexsearch.com terms and conditions.

374.    Defendants' terms and conditions service contain several numbered paragraphs.

375.    Paragraph twelve (hereinafter referred to as "Paragraph 12") of the terms and conditions is titled Limitation on Liability.

376.    Plaintiff was not provided any meaningful choice regarding accepting Paragraph 12.

377.    Paragraph 12 is unreasonably favorable to Defendants.

378.    Paragraph 12 is not commercially reasonable.

379.    Plaintiff was not represented by counsel at the time of the acceptance of the terms and conditions.

380.    Paragraph 12 was misleading.

381.    Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' unconscionable contract term.

THIRTEENTH CAUSE OF ACTION<br/>UNCONSCIONABLE CONTRACT TERM

382.    Plaintiff incorporates all previous paragraphs as if fully re-written.

383.    Paragraph fifteen (hereinafter referred to as "Paragraph 15") of Defendants' terms and conditions contains the term related to disclaimers on all liability.

384.    Plaintiff was not provided any meaningful choice regarding accepting Paragraph 15.

385.    Paragraph 15 is unreasonably favorable to Defendants.

386.    Paragraph 15 is not commercially reasonable.

387.    Plaintiff was not represented by counsel at the time of the acceptance of the terms and conditions.

388.    Paragraph 15 was misleading.

389.    Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' unconscionable contract term.

FOURTEENTH CAUSE OF ACTION

## FAILURE TO WARN

390.    Plaintiff incorporates all previous paragraphs as if fully re-written.

391.    Plaintiff used Defendants' service to meet other Sexsearch.com members.

392.    Plaintiff used Defendants' service in the manner for which it was intended.

393.    Defendant knew or had reason to know that the service was likely to be dangerous to Plaintiff even when used for its intended purpose.

394.    Defendants' had no reason to believe Plaintiff would realize the dangerous nature of its service.

395.    Defendants' failed to exercise reasonable care to inform Plaintiff of the dangerous condition or of the facts that made it likely the service would be dangerous.

396.    Plaintiff has suffered significant financial, emotional and reputational damages as a result of Defendants' failure to warn him of the dangerous nature of Defendants' service.

## RELIEF REQUESTED

Plaintiff prays for the following relief against all Defendants, jointly and severally:

1.  General damages to be determined at trial;

2.  Special damages to be determined at trial;

3. For triple damages to the extent permitted by law under the Ohio Consumer Sales Practices Act;

4. For punitive damages to punish Defendants and set an example for others;

5. For an order enjoining Defendants from enforcing any clauses of their agreements that are in violation of the Ohio's Consumer Sales Practices Act.

6. For an order enjoining Defendants from accepting Ohio members to its service.

7. For an order enjoining Defendants from providing existing Ohio members access to its service until Defendants' provide to this court revised terms and conditions and profile guidelines that comply with Ohio's Consumer Sales Practices Act.

8. For attorneys' fees to the extent permitted by law;

9. For the costs of suit incurred herein;

10. For other relief as this court may deem just and proper.


/s/Dean Boland
Dean Boland 65693
18123 Sloane Avenue
Lakewood, Ohio 44107
dean@deanboland.com
216.529.9371 phone
216.803.2131 fax
Attorney for Plaintiff


JURY TRIAL DEMAND

Plaintiff requests a jury trial for all causes of action a jury trial is available.


/s/Dean Boland
Dean Boland 65693

Attorney for Plaintiff