UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Doe,                                    Case No. 3:07-cv-604

           PLAINTIFF,                        Judge Jack Zouhary

V.

SexSearch.com, et al.,                       MOTION FOR INJUNCTION
                                             EX PARTE HEARING REQUESTED

           DEFENDANTS.

    John Doe requests an immediate ex parte hearing and order for immediate temporary injunction

until further order of this court for the reasons set forth in the attached Brief.

<u>ORDER REQUESTED</u>

    Plaintiff is requesting that the following Defendants;

1.   Cyber Flow Solutions, Inc.

2.   Damian Cross (aka Damian I. Cross)

3.   Ed Kunkel

4.   Adam Small

5.   Richard Levine

6.   Manic Media (aka Manic Media, Inc.)

7.   Mauricio Bedoya

be immediately ordered as follows until further order of this court:

8.   To not transfer any funds from any bank account currently in the name of;

    a.  Cyber Flow Solutions, Inc.

    b.  Damian Cross



UNDER SEAL

UNSEALED PER ORDER DATED 3-20-07

1

Dockets.Justia.com

    c.  Ed Kunkel

    d.  Adam Small

    e.  Richard Levine

    f.  Manic Media (aka Manic Media, Inc.)

    g.  Mauricio Bedoya

9.    To not transfer, by sale or lease, or otherwise encumber by any means the domain names currently owned, registered or otherwise controlled by any Defendant named in 1 above including, but not limited to:

    a.  Sexsearch.com

    b.  Sexsearchcom.com

    c.  Infinitypersonals.com

    d.  Orgasm.com

    e.  Orgasmcash.com

10.    To not transfer, by sale or lease, or to liquidate, or otherwise encumber in any manner the following types of COLLATERAL owned and/or operated by any Defendant named in 1 above:

    a.  EQUIPMENT used or bought for use primarily in Defendants' business Sexsearch.com and/or Sexsearchcom.com.

    b.  INVENTORY held by any of the aforementioned Defendants' business held for sale and/or lease or to be furnished in service contracts or consumed in the ordinary course of business relating to Sexsearch.com and/or Sexsearchcom.com.

11.    To not transfer, by sale or lease, or to liquidate, or otherwise encumber in any manner the following types of SEMI-INTANGIBLE (aspects which are tangible and intangible) and

INTANGIBLE PROPERTY (something that is not tangible) owned and/or operated by any

Defendant named in 1 above:

a.  INSTRUMENTS such as negotiable instruments and any other writings which evidence

a right to payment of monetary obligations owed to Defendants on behalf of

Sexsearch.com and/or Sexsearchcom.com and which are used in the ordinary course of

business for Sexsearch.com and/or Sexsearch.com transferred by delivery with any

necessary endorsement or assignment such as promissory notes.

b.  DOCUMENTS which are used in the regular course of business for Sexsearch.com

and/or Sexsearchcom.com evidencing that the Defendants is in possession documents

entitling them to receive, hold, and/or dispose of the documents and/or the goods it

covers such as bills of lading or warehouse receipts.

c.  CHATTEL PAPER evidencing both a monetary obligation and a security interest in

and/or a lease of specific goods that is stored in a tangible medium such as written on

paper for the business known as Sexsearch.com and/or Sexsearchcom.com.

    i.  ELECTRONIC CHATTEL PAPER a record which evidences both a monetary

    obligation and a security interest in or a lease of specific goods that is stored in

    an electronic medium for the business known as Sexsearch.com and/or

    Sexsearchcom.com.

d.  INVESTMENT PROPERTY held by Sexsearch.com and/or Sexsearchcom.com such as

annuities, retirement accounts, 401K's, CD's, IRA's, stocks, bonds, mutual funds, and

brokerage accounts.

    i.  CERTIFIED SECURITIES for instance a stock certificate.

ii. UNCERTIFIED SECURITIES such as owned stock without an actual stock certificate held by Defendants on behalf of Sexsearch.com and/or Sexsearchcom.com.

iii. SECURITIES ACCOUNTS held by brokers or mutual fund companies on behalf of persons who are instructed to purchase stocks, bonds, or mutual fund shares to be held in a securities account for Defendants on behalf of Sexsearch.com and/or Sexsearchcom.com.

e. ACCOUNTS conferring Defendants rights to payments not evidenced by an instrument or chattel paper for goods, services, rental of real property, for insurance policies, or arising out of the use of credit card information resold to third parties.

f. DEPOSIT ACCOUNTS maintained with a bank such a business checking account at a bank including but not limited to, NON-CONSUMER DEPOSIT ACCOUNTS and ELECTRONIC CHATTEL PAPER.

g. COMMERCIAL TORT CLAIMS such as claims arising in tort with respect to which Defendants as an organization or where the Defendants as individuals are entitled to claims arising in the business known as Sexsearch.com and/or Sexsearchcom.com.

h. GENERAL INTANGIBLES is any personal property not coming within the scope of other definitions such as software, programming language, patent, trade secrets, publicity rights, trademark rights, copyrights, literary rights, and goodwill.

i. PAYMENT INTANGIBLES are claims arising in tort that have been settled and are reduced to a contractual obligation to pay.

12. To not transfer, by sale or lease or any other means of conveyance, or to liquidate in any manner, or otherwise encumber the following types of TANGIBLE PROPERTY (property

4

that has physical form and characteristics) owned and/or operated by Defendant named in 1 above:

    a.  PERSONAL PROPERTY is any moveable or intangible thing that is subject to ownership and not classified as real property.

    b.  REAL PROPERTY is land or anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land.

    c.  FIXTURES where removal of chattel would damage the value of the property.

13.    That Sexsearch.com be ordered to cease and desist from accepting new members to its service whom are residents of the State of Ohio.

14.    That Sexsearchcom.com be ordered to cease and desist from accepting new members to its service whom are residents of the State of Ohio.

15.    That Sexsearch.com be ordered to provide evidence to the court that it has implemented a plan devised to insure that no Ohio residents are permitted to become new members of its service.

16.    That Sexsearchcom.com be ordered to provide evidence to the court that it has implemented a plan devised to insure that no Ohio residents are permitted to become new members of its service.

17.    That Sexsearch.com be ordered to not permit existing Ohio members to access its service.

18.    That Sexsearchcom.com be ordered to not permit existing Ohio members to access its service.

19.    To not destroy, alter, conceal or otherwise change any tax or other financial records of any Defendant named in 1 above or any company or other organization owned or controlled by any Defendants named in 1 above.

20.    For those Defendants named in 1 above who reside within the continental United States,

and that, they not leave the continental United States for any reason without further order of

this court.

21.    That Defendants named in 1 above be ordered to not to incur additional debts to be secured

by any property owned and/or operated by any Defendants named in 1 above

22.    That Defendants named in 1 above be ordered to discontinue any pending applications

and/or other steps currently being taken to encumber any such property.

## LAW AND EXPLANATION

To grant a preliminary injunction, the court examines four (4) factors:

**(1) Whether there is a substantial likelihood that plaintiff will prevail on the merits;**
**(2) Whether the plaintiff will suffer irreparable injury if the injunction is not granted;**
**(3) Whether no third parties will be unjustifiably harmed if the injunction is granted; and**
**(4) Whether the public interest will be served by the injunction.**  (See, Vanguard Transp. Sys., Inc.
v. Edwards Transfer & Storage Co. (1996), 109 Ohio App. 3d 786, 790, citing Valco Cincinnati, Inc. v.
N & D Machining Serv., Inc. (1986), 24 Ohio St.3d 41.  See also Six Clinics Holding Corp. II v.
Cafcomp Sys., Inc., 119 F.3d 393, 399 (6th Cir. 1997) ("requir[ing]" a district court "to make specific
findings concerning each of the four factors").

## SUBSTANTIAL LIKELIHOOD PLAINTIFF WILL PREVAIL ON THE MERITS

Among the causes of action in the complaint are the following:

1.    Breach of Contract;
2.    Breach of Warranty;
3.    Numerous violations of the Ohio Consumer Sales Practices Act; and
4.    Fraud.

### Breach of Contract

Defendants provided a service designed, intended and guaranteed to provide *adult's* access to

other *adults* for the purposes of engaging in sexual relations.  Plaintiff is currently under a multi-count

indictment for engaging in unlawful sexual conduct with a minor.  That minor was a member of

Defendants' service at Sexsearch.com and/or Sexsearchcom.com.  Plaintiff met that minor using

Defendants' service.  Defendants cannot defend this cause of action by claiming that it promised to

6

deliver minors to Plaintiff as part of its service. Such a claim is a violation of or conspiracy to violate

Ohio Criminal Law including Ohio Revised Code § 2907.04 (unlawful sexual conduct with a minor), §

2907.21 (compelling prostitution) and other criminal code sections. Therefore, Defendants are required

to admit they charged Plaintiff for the service of providing him access to exclusively adults for the

purpose of engaging in sexual relations with those adults. Evidenced by Plaintiff's current indictment,

he was provided access to a minor as part of Defendants' service. This conduct by Defendants is a

breach of contract for which there is no defense.

Breach of Warranty

At the time Plaintiff became a member of Defendants' service, its site contained a warranty that

read as follows: "[A]ll persons within this site are 18+...." In fact, this warranty is prominently

displayed as part of Defendants' service as of this writing. (See Exhibit 1, screen shot of

SexSearch.com website captured on February 28, 2007).

Evidenced by Plaintiff's currently pending indictment, Defendants have breached this warranty.

Defendants' membership included minors. Defendants cannot claim that its site did *not include* minors

as Jane Roe was a member. Furthermore, Jane Roe's membership was how Plaintiff was introduced to

Jane Roe. Sexsearch.com and/or Sexsearchcom.com delivered Jane Roe to Plaintiff using a service

that warranted that all members were adults and it is this conduct that resulted in Plaintiff's three (3)

count indictment for unlawful sexual conduct with at minor.

Numerous Violations of the Ohio Consumer Sales Practices Act

Ohio's Consumer Sales Practices Act enumerates several business practices which are *de facto*

deceptive. In other words, there is no defense to a claim of engaging in a deceptive trade practice if a

business engages in such enumerated practices. Defendants' required members to agree to Terms and

Conditions prior to becoming members. (Exhibit 2, SexSearch.com contractual Terms and

Conditions). There are several *de facto* violations of the CSPA within *the Defendants'* terms and

conditions. Those *de facto* violations are enumerated in paragraphs 259-317 of the complaint. All

such references are incorporated herein as if fully re-written.

IRREPARABLE HARM SUFFERED BY PLAINTIFF

Defendants' operate their business in a purposeful fashion designed to obscure ownership,

office locations, asset locations, and hinder service of process from any court in the United States.

(Exhibit 3). They have numerous filings for the trademark Sexsearch.com. (Exhibit 4). They have

multiple companies involved in the operation of the business with no apparent business purpose.

(Exhibit 3). One of the defendants, Experience Internet.Com, Inc., successfully evaded jurisdiction in

federal court in the 9th Circuit. (Silverstein v. EXPERIENCED INTERNET.COM, INC, et al., 05-

00160 PVT, United States District Court, Northern District of California, San Jose Division). That

matter is currently on appeal. That defendant there, also a defendant here, argued that it owned the

domain name Sexsearch.com, but leased it to another company whom operated Sexsearchcom.com.

That defendant was not required to disclose the identity of the lessee. As is evident from Exhibit 3,

Experienced Internet.com, Inc. does have a financial interest in Sexsearch.com.

Defendant, DNR has ownership or a controlling interest in a variety of website domains and

business related to adult pornography. (Exhibit 5).

Defendant, Damian Cross (aka Damian I. Cross) has ownership or control over a variety of

website domains and businesses related to adult pornography. (Exhibit 5). Many of those domain

names and descriptions imply content depicting children in sexual situations. (Exhibit 5). Damian

Cross claims ownership of the domain names Sexsearch.com and Orgasm.com. (Exhibit 6a, Defendant

Damian Cross' personal www.myspace.com page prior to March 1, 2007. Exhibit 6b his personal

myspace page as of March 1, 2007). Many of the websites controlled by Damian Cross automatically

re-direct to Orgasm.com. (Exhibit 5).

Defendant, Cyber Flow Solutions, Inc. and Defendant, Manic Media (aka Manic Media, Inc.) share the same mailing address in California. (Exhibit 7). Defendants SexSearch.com, Cyber Flow Solutions, Adam Small, Ed Kunkel and Manic Media have offices at 6565 West Sunset Boulevard, Suite 400, Los Angeles, California 90028. (Exhibit 7 and 8).

Entering the domain name Sexsearch.com into an Internet browser automatically re-directs users to Sexsearch*com*.com. (Exhibit 4). The Sexsearch.com trademark is registered in both the United States and Canada, but by the same companies however, through a variety of assignments. (Exhibit 4). The Canadian trademark registrant for Sexsearch.com is also the U.S. and Canadian trademark registrant for Orgasm.com. (Exhibit 4). Perhaps intentionally, the U.S. trademark registrant for the Orgasm.com mark is listed as Ficsta (sic) Catering instead of Fiesta Catering. (Exhibit 4).

Plaintiff's two attorneys have more than 600 hours of combined research endeavoring to reconstruct the serpentine structure of Defendants' business. There is no business purpose behind the veiled ownership, divided assets, misnamed corporations, and hidden information about their business. Defendants' structure is intentionally designed to allow for it and its owners and operators to begin some or all of the tasks listed above in this motion in order to thwart the authority of this court and the availability of information and assets necessary to obtain a judgment in this matter.

SexSearch.com boasts in articles and interviews across the internet that it is the "#2 adult dating website" (Exhibit 9) and that it has "10 Million Members." (Exhibit 8). Amazingly, its corporate owners, board of directors, officers and the like are purposefully obscured under layers of intertwining relationships and organizations, related websites. After hours of searching, Counsel was only able to locate a single document on the entire Internet exposing the business mailing address of Sexsearch.com. (Exhibit 8). Given the Herculean efforts to stay hidden, it is highly likely the posting of this one document was an oversight by a SexSearch.com employee.

<u>NO THIRD PARTIES WILL BE HARMED BY THE COURT'S INJUNCTION</u>

9

Plaintiff has gone to great lengths to limit the request of this injunction. He has not asked that all Defendants be enjoined, but merely those listed in 1 above. The remaining Defendants are going concerns, some publicly traded corporations whose assets are not being obscured by the business practices of the Defendants named in 1 above. Playboy Enterprises, Inc., for example, is a publicly traded company. It presumably complies with all Securities and Exchange Commission requirements making its officers, owners, shareholders and asset locations easily available to Plaintiff in the event a judgment is obtained. From a business perspective, this is how normal business operates. They are out in the open; their leaders, investors and the like are known.

No third parties will be harmed by the granting of this injunction as it affects only the business operations of the Defendants named in 1 above. No other third party individual or business relies on the Defendants named in 1 above for income, support, mission critical products or services such that they will be harmed upon the granting of this motion for injunction. Children have been harmed here and that harm is paramount to any harm this company may suffer as a result of this injunction. Assets must be held in the event the people harmed by Sexsearch.com need recompense for what they have suffered particularly representatives of the minors involved.

Plaintiff has limited his injunction request to Defendants' operating of the SexSearch service within Ohio. Plaintiff has not represented and does not know the content of the terms and conditions presented to members residing in other states. The SexSearch service is able to geo-locate individuals who are viewing their site to determine the state in which that viewer is located. As such, the service is easily able, if it so chose, to present different terms and conditions, by state, to each potential member.

### THE PUBLIC INTEREST WILL BE SERVED

The Defendants named in 1 above own and operate Sexsearch.com and/or Sexsearchcom.com. Their business is ostensibly the marketing of access by adults to adults for the purposes of sexual encounters. In addition, they market "hard core pornography" to their members in the so-called

10

"GoldRoom." Their owners also have possession of a variety of websites purposely designed to attract adults seeking children for sex. Adults seeking adults for sexual encounters are unlikely to be attracted to sites with embedded search terms such as "broken hymens bloody bald snatch sweet pink young girls naked innocent next door teen schoolgirls girlfriends bimbos panties video sex sexy oral facial cream fisting spanking boys girl girls nude fuck fucking ass hymen film avi mpeg chat pornography free."

The allegations and facts already provided to this court provide ample reason for the true owners of Sexsearch.com and/or Sexsearchcom.com to hide their identity and abscond with the ill-gotten gains from their service's harm to Jane Roe. The only meaningful way to punish the Defendants, in the event Plaintiff is successful at trial, is financial. Defendants, via their convoluted, secretive and nearly impenetrable structure, are perfectly positioned to quickly hide all their assets, change company names, domain names and continue with their service, evading this court and the payment of any eventual judgment. Additionally, they would be able to evade other courts in the event other minor children come forward to seek recompense. In Plaintiff's opinion, he has demonstrated that the current structure of Defendants' business is intentionally designed with the foresight that a complaint such as the current one may one day arrive. Defendants have spent years planning, designing and constructing their shrouded business model. That work now enables them to easily evade service of this court, participation in discovery, and the payment of any eventual judgment. It also allows them to continue to put our children at risk with a service that promises to screen children out, but does not.

Our United States court system's procedures, proposed offer of justice to wronged citizens is meaningless if Defendants like these are permitted to design their businesses, years before litigation comes, with an intent to evade that litigation and finally allowed, without an injunction, to implement that plan. Defendants' business model is designed for precisely this moment. It is designed to quickly,

11

silently, and effectively reduce this litigation to an exercise in futility, chasing shadows of companies, foreign and domestic, perhaps arriving at a judgment as valueless as if no litigation had occurred at all. While the clock ticks in their favor, Ohio children risk being harmed. Without an injunction, while this litigation progresses, each new day Defendants' continue to operate in the shadows bringing new peril for Ohio children.

Defendants' Sexsearch.com and/or Sexsearchcom.com website service is currently available on a continuous twenty-four (24) hour basis to Ohio residents. Evidenced by Plaintiff's indictment, minors are easily able to become members of this service. It is highly likely that at this very moment, there are other Ohio children (and other children across the country) whom Defendants' have permitted to become members of its service. Defendants boast they have Ten (10) million members. It is reasonable to believe that more than one of those members is a child given the careless operation of Defendants service to date. With the complete lack of controls, security, verifications, age checks, credit-related background checks and so forth, children will continue to become members of Defendants' service. The public interest is served by protecting Ohio's children from the dangers of meeting adults for sex.

The Supreme Court's precedent is clear in establishing the government's compelling interest in protecting children from exposure to sexually explicit material. The Court has repeatedly articulated such an interest in <u>Ginsberg v. New York</u>, 390 U.S. 629, 636-43 (1968); <u>FCC v. Pacifica Foundation</u>, 438 U.S. 726, 748-50 (1978); <u>New York v. Ferber</u>, 458 U.S. 747, 757 (1882); <u>Sable Communications of Cal., Inc. v. FCC</u>, 492 U.S. 115, 126-128 (1989); <u>Denver Area Ed. Tel. Consortium v. FCC</u>, 116 S. Ct. 2374, 2391 (1996); and <u>Reno v. ACLU</u>, 117 S. Ct. 2329 (1997). As stated by the Court: "It is evident beyond the need for elaboration that the State's interest in 'safeguarding the physical and psychological well-being of a minor is 'compelling'." (<u>Ferber</u> at 757). "This interest extends to shielding minors from the influence of literature that is not obscene by adult standards." (<u>Sable</u> at 126).

The publicity associated with Plaintiff's criminal matter has already alerted deviant Ohio adults about the possibility of having children delivered to them for sex using Defendants' service. Without an injunction from this court, as requested in its entirety above, the danger that another child will be harmed looms on the horizon. In the public interest, we cannot fail to act. Ignoring a terrorist-related 911 call to a New York police department on September 10, 2001 may have been an insignificant act – were it not for September 11, 2001. The balance this court strikes in ruling on this motion is between the desires of an adult pornography business and protecting Ohio children. While the Defendants named in 1 above may claim some financial hardship from this injunction, that hardship is temporary and is strictly financial. Without an injunction, another child's harm is permanent and far more devastating than mere financial hardship for an adult pornography company. Financial remuneration will not restore the valuable nature of that which was taken, innocence, but it may in time; make the life of a child or Plaintiff who was harmed by this service more bearable eliminating life's other worries.

Defendants' failed completely to protect Jane Roe. They failed completely to protect John Doe from unwittingly committing a serious offense. Before the next child is harmed, abducted, or murdered after being delivered to an actual assailant by Defendants' service, Plaintiff respectfully requests an order enjoining Defendants as outlined herein.

For the foregoing reasons, this motion for immediate relief must be granted.

/s/Dean Boland
Dean Boland 65693
18123 Sloane Avenue
Lakewood, Ohio 44107
dean@deanboland.com
216.529.9371 phone
216.803.2131 fax

13