# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John Doe,

         Plaintiff,

         v.

SexSearch.com, et al.,

         Defendants.

Case No. 3:07CV604

**DEFENDANTS EXPERIENCED INTERNET.COM, INC.'S, AND MAURICIO BEDOYA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION; DECLARATION OF DANA MILMEISTER IN SUPPORT THEREOF**

Hearing: April 16, 2007
Time: 9:00 a.m.
Ctrm: Hon. Jack Zouhary

Richard M. Kerger (0015864)
KERGER & ASSOCIATES
33 S. Michigan Street, Suite 100
Toledo, Ohio 43604
Telephone: (419) 255-5990
Fax: (419) 255-5997

Gary Jay Kaufman (*Pro hac vice*)
Dana Milmeister (*Pro hac vice*)
The Kaufman Law Group
1925 Century Park East
Suite 2350
Los Angeles, California 90067
Telephone: (310) 286-2202
Fax: (310) 712-0023

Counsel for Specially Appearing
Defendant Experienced Internet.com, Inc.

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     THIS COURT DOES NOT HAVE THE LEGAL AUTHORITY TO MAKE
        ANY ORDERS WITH RESPECT TO ANY DEFENDANT'S ASSETS AT THIS
        JUNCTURE ..........................................................................................................4

III.    PLAINTIFF'S UNCLEAN HANDS BAR THE RELIEF HE SEEKS .............................6

IV.     AGE VERIFICATION ON THE INTERNET IS CONSTITUTIONALLY
        UNREASONABLE AND PLAINTIFF COULD NOT REASONABLY RELY
        ON THE PERCEIVED PROMISE TO DO SO ..................................................8

V.      THE COMMUNICATIONS DECENCY ACT PRE-EMPTS PLAINTIFF'S
        TORT CLAIMS ...................................................................................................9

VI.     NONE OF THE NAMED DEFENDANTS IS DIRECTLY RESPONSIBLE FOR
        OPERATING THE SEXSEARCH.COM WEB SITE ....................................................12

VII.    AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A
        *PRIMA FACIE* CASE ON ANY OF HIS CLAIMS .........................................15

        A.     The Contract Is Clear, Unambiguous And Enforceable .......................................15

        B.     The TAC Are Not Unconscionable In Any Way....................................................17

        C.     The Fraud and Negligent Misrepresentation Claims Fail Because Plaintiff
               Did Not Have A Special Relationship With Defendants And Plaintiff's
               Reliance Was Not Reasonable ...............................................................20

        D.     Plaintiff's Breach Of Warranty Claim Fails Because There Was No
               Warranty And Because He Could Not Have Reasonably Relied On
               The Purported Warranty....................................................................22

        E.     The Ohio Consumer Protection Statutes Do Not Apply To This Case.................23

        F.     As A Matter Of Law, Defendants Cannot Be Held Liable For
               Negligent Infliction Of Emotional Distress .........................................25

        G.     Plaintiff's Failure To Warn Claim Is Meritless ....................................26

VIII.   CONCLUSION...................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*ACLU v. Gonzales,* _____ F. Supp.2d _____, 2007 WL 861120  (E.D. Pa. 2007) .............. 8, 24-27

*Aschcroft v. ACLU,* 542 U.S. 656, 667, 668 (2004) .......................................................8

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.,* 67 Ohio St.3d 274 (1993) ......13

*Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir.2003).................................................11

*Collins v. Click Camera & Video, Inc*, 86 Ohio App.3d 826 (1993)...................................... 17-19

*De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212 (1945) .............................................5

*Deweese v. Reinhard*, 165 U.S. 386 (1897) ......................................................................6

*Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371 (2000) .................................21

*Dimeo v. Max,* 433 F.Supp.2d 523, 528 (E.D.Pa.2006)..................................................................10

*Doe v. Bates,* 2006 WL 3813758 (E.D.Tex. Dec.27, 2006) ........................................................11

*Doe v. MySpace, Inc.* ____ F.Supp. 2nd ____, 2007 WL 471156 (W.D. Tex 2007) .............. 3, 10-12

*Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* 113 Ohio App.3d 75 (1996)..................17

*Feitchner v. City of Cleveland,* 95 Ohio App.3d 388 (1994).........................................................25

*Feldman v. Google, Inc,* 2007 WL 966011 (E.D.Pa. Mar. 29, 2007)............................................18

*Finomore v. Epstein*, 18 Ohio App. 3d 88 (1984) ......................................................................22

*Foust v. Valleybrook Realty Co*., 4 Ohio App. 3d 164 (1981)......................................................22

*Freas v. Prater Constr.  Corp., Inc*, 60 Ohio St.3d 6 (1991).................................................. 26

*Green v. America Online,* 318 F.3d 465 (3d Cir.2003) ...............................................................10

*Grupo Mexicano De Desarrollo, S.A V. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) ......1, 2, 5

*Hoang v. Etrade,* 151 Ohio App.3d 363, 372 (2003) ....................................................................24

*Hubbert v. Dell Corp*., 359 Ill.App.3d 976 (2005) ......................................................................20

*Hurst v. Enterprise Title Agency,* 157 Ohio App.3d 133 (2004) .............................................18, 19

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933) ......................................... 7

*Klaustermeyer v. Cleveland Trust Co.*, 105 N.E. 278 (Ohio 1913) .................................................6

*Leal v. Holtvogt*, 123 Ohio App. 3d 51(1998) ..........................................................................21

*LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 422-423 (1991) ...............................13

*Livengood v. ABS Contractors Supply*, 126 Ohio App.3d 464 (1998) .........................................26

*Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89 (2000)................................................21

*Music Express Broadcasting Corp. v. Aloha Sports, Inc.,* 161 Ohio App.3d 737 (2005) ........... 12

*Novak v. Overture Services, Inc.* 309 F.Supp.2d 446 (E.D.N.Y. 2004) .......................................20

*Orbit Electronics, Inc. v. Helm Instrument Co., Inc.,* 167 Ohio App.3d 301 (2006) ...................21

*Paugh v. Hanks*, 6 Ohio St. 3d 72 (1983) .................................................................................25

*Picker Intern., Inc. v. Mayo Foundation*, 6 F. Supp. 2d 685 (N.D. Ohio 1998)...........................21

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
    324 U.S. 806 (1945).............................................................................................................6

*Price Bros. Co. v. Philadephia Gear Corp.,* 649 F.2d 416 (6th Cir. 1981).................................. 23

*Specht v. Netscape Comms. Corp.,* 306 F.3d 17 (2d Cir.2002) ...................................................18

*Taylor Steel, Inc. v. Keeton,* 417 F.3d 598 (6th Cir.2005) ..........................................................13

*Texas v. Johnson,* 491 U.S. 397 (1989) ....................................................................................27

*Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980) .............................................................................12

*Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir.1997)..................................................10, 11

## United States Constitution

First Amendment .......................................................................................................8, 9, 27
Fifth Amendment ........................................................................................................8, 9, 27

**<u>Statutes</u>**

**Federal**

47 U.S.C. § 230 ................................................................................................................9, 11
47 U.S.C. § 231 ...................................................................................................................8

**Ohio**

R.C. § 1302.26 ..................................................................................................................22
R.C. § 1345.01 ..............................................................................................................23, 24
R.C. § 1345.02 ..................................................................................................................23
R.C. § 1345.03 ..................................................................................................................24
R.C. § 1345.12 ..................................................................................................................24
Ohio Adm.Code 109:4-3-01 ............................................................................................24

Specially appearing defendants Experienced Internet.com, Inc. ("EIC") and Mauricio Bedoya hereby oppose Plaintiff's motion for preliminary injunction.[1]

# I.

## INTRODUCTION

Plaintiff, who is under indictment for unlawful sex with a 14-year-old girl, now asks this Court, in a quite transparent attempt to create a reasonable doubt in his upcoming criminal trial, for unprecedented injunctive relief without presenting any authority or credible evidence. Specifically, as our United States Supreme Court has already definitively ruled in similar circumstances, Plaintiff simply cannot obtain the injunction he seeks. *Grupo Mexicano De Desarrollo, S.A V. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999).

Moreover, this entire case is meritless. Plaintiff's counsel fancies himself as a private attorney general seeking to "rock" the internet social networking industry for allegedly failing to adequately verify members' ages. (Ex. B). However, the U.S. Supreme Court refused both Congress' and the U.S. Attorney General's attempts to do the same thing. *Aschcroft v. ACLU,* 542 U.S. 656, 667, 668 (2004) (parental filters are the least restrictive means of protecting minors, without overburdening the sites and thereby violating free speech).[2] The faceless nature of the industry makes this very difficult, and the sites cannot do more than they are already doing without chilling First and Fifth Amendment rights. The Supreme Court has opined that more cannot reasonably be asked of these sites; and this case is no different.

Plaintiff's counsel has tried to cast this case as being to protect minors. This is shameful, in light of the manner in which his client has chosen to harm a minor and hide behind a dating

---

[1] This Court does not have personal jurisdiction over EIC or Mr. Bedoya, who expressly reserve their rights to challenge jurisdiction via a motion to dismiss.

[2] Indeed, SexSearch has gone to great lengths to prevent minors from joining or maintaining memberships on the site. SexSearch was the first adult dating site to sponsor the leading and most recognized organization devoted to protecting minors from access to adult sites, the Association of Sites Advocating Child Protection ("ASACP"). The SexSearch.com site is constantly monitored to see if minors have scrumptiously gained access, and, if so, they are expelled from the site upon discovery. (Ex. A).

web site as the cause.  It is incredible that Plaintiff did not even question a 14-year-old's age, and instead figured he could blame the SexSearch site because it has a WARNING to minors to stay out.  Plaintiff now claims that clearly-labeled warning was a warranty to him.  However, it is common knowledge that no such warranty could ever be made with current technology, and even taking Plaintiff's incredible allegations at face value, as a matter of law he could not have reasonably relied on any such statement.  Therefore, all of his claims fail as a matter of law.

This motion should be denied for three separate and independent reasons.  First, as a matter of law, Plaintiff cannot obtain the relief sought at this juncture.  The United States Supreme Court has definitively ruled that prior to entry of a money judgment, a district court lacks authority to issue a preliminary injunction preventing defendant from transferring assets in which no lien or equitable interest is claimed.  *Grupo,* 527 U.S. 308.  No further analysis is needed; this case is dispositive.  An injunction of the sort Plaintiff seeks is unprecedented and unsupported by any statute or case.  The request should be denied.

Even without the *Grupo* decision, the injunction should be denied because the complaint lacks any merit whatsoever.  Plaintiff claims that when he joined the adult dating website sexsearch.com, he was promised that no minors would be members on the site.  Plaintiff allegedly had sex with a 14-year-old child he met through the site.  The main basis of Plaintiff's case is the following warning to minors that appears on the home page of the site:

**WARNING: This Site Contains Adult Material**

Explicit pictures, videos, stories, images, or sounds will be contained on this website. If you are under 18 years of age, or if it is illegal to view adult material in your community, you must exit this page now. All models are at least 18 years old, all persons within this site are 18+ and all images are in compliance with 18 U.S.C. 2257

Plaintiff claims that the phrase "all persons within this site are 18+" constitutes a warranty that no minors will be allowed to join.  This is ludicrous.  The statement is included in a section called WARNING, which clearly is addressed to minors.  Moreover, Plaintiff's complaint alleges that he agreed to the terms and conditions ("TAC"), which clearly disclaim all warranties and, further, all responsibility for verifying the accuracy of the information provided by other

users of the service.  In order to join, Plaintiff only had to check a box verifying that he was over 18.  He knew that is all Jane Roe had to do, and his reliance on the site to protect him from having sex with a minor is misplaced and unreasonable.

Plaintiff's own choices and actions in having sex with a child caused his damages.  Plaintiff's criminal acts, and Jane Roe's intentional (and criminal) lies to join the site were superseding and intervening causes that absolve the site of any and all liability.  Indeed, in enacting the Communications Decency Act ("CDA"), Congress expressly immunized internet service providers such as the sexsearch.com site from liability for all information posted or provided by site members.  Case law interpreting the CDA has ruled that sites such as MySpace.com and AOL.com are not liable for damages members suffer as a result of meeting through the site.  Defendants are therefore immune from liability for operation of the SexSearch.com site.

Plaintiff's claims that the TAC violate the Ohio Consumer Practices Act (the "Act") and are unconscionable are likewise misplaced.  The CDA pre-empts the Act, which therefore does not apply.  Moreover, the transaction at issue is not a "consumer transaction" as defined by the Act, and, more importantly, the Act itself exempts publishers from enforcement against them.  Likewise, the TAC is not unconscionable.  Courts that have examined similar "clickwrap" agreements have concluded that these types of agreements are not unconscionable as a matter of law because of the nature of the internet business and the fact that Plaintiff could have chosen not to join if he did not like the terms.

Plaintiff is seeking the injunction merely to ensure that funds will be available to pay any money judgment he obtains.  However, that amount is no more than about $60.  The TAC expressly limits the site's liability to the amount of money Plaintiff spent on his membership.[3]  This includes limits of indirect, consequential, exemplary, incidental, special or punitive damages.  Although Plaintiff challenges the limitation of damages as unconscionable, as

---

[3] It appears that this was no more than $59.95.

3

demonstrated herein, he is wrong as a matter of law.  An injunction of the magnitude that Plaintiff seeks would cause great and irreparable injury to the defendants, over $60.  The request should be denied.

Finally, and separately, there is no evidence to support the relief sought.  Plaintiff bases his motion on his uninformed assumption (based on inadmissible screen shots from hundreds of web pages) that the defendants are alter egos of each other and playing some sort of shell game to hide assets.  This is ridiculous.  That the defendants may have a relationship to or involvement with the sexsearch.com web site does not automatically render them alter egos.  None of the defendants operates the sexsearch.com or sexsearchcom,.com websites; a company called Cytek does, via licensing agreements from the site owners.  Plaintiff's counsel knew this because EIC revealed the operator's name in litigation in the Northern District Of California, but Plaintiff's counsel conspicuously chose not to sue the one entity that actually is directly responsible for operation of the web sites, and collecting all the income from those sites.  Cytek is also filing a complaint in intervention in this action in order to directly defend its interests.

No defendant has run from this Court; indeed, some have appeared without being served and Cytek is appearing without being named.  There is no evidence of any judgment against any of the defendants.  The individuals and entities involved have timely maintained all corporate formalities, timely file all taxes due in their respective jurisdictions, and have facilitation, licensing and consulting agreements in place as appropriate with respect to operating the site.  None are alter egos of the other, none commingle funds, or otherwise have any attributes of alter egos.  There is no basis for jurisdiction over many of them, let alone an asset freeze.  The request should be denied.

## II.

## THIS COURT DOES NOT HAVE THE LEGAL AUTHORITY TO MAKE ANY ORDERS WITH RESPECT TO ANY DEFENDANT'S ASSETS AT THIS JUNCTURE

As a matter of law, at this stage of the proceedings, the Court may not freeze or otherwise alter any of the Defendants' assets.  (Nos. 1-12 and 19, 21 and 22 of the order requested in

moving brief).[4]  Plaintiff's pretext for seeking the asset freeze is to ensure that money will be available to pay any judgment.  However, the relief sought is unavailable as a matter of law.  The United States Supreme Court has held "that the District Court ha[s] no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of [a] . . . claim for money damages."  *Grupo,* 527 U.S. at 333.  In ruling that the district court abused its authority in preliminarily enjoining an alleged debtor from disposing of unsecured assets, the Supreme Court held that "[e]ven when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here."  *Id.* at 331.

The *Grupo* Court cited an earlier Court decision holding that the United States could not obtain an injunction against defendants' transferring assets based on alleged antitrust violations seeking equitable relief.  *Id.* at 326-327, *citing, De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212 (1945).  The *De Beers* Court denied the relief, finding it beyond the district court's power.  The Court further explained:

> To sustain the challenged order would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such.  Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree.  And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action.  No relief of this character has been thought justified in the long history of equity jurisprudence.

*Grupo,* 527 U.S. at 326-327, *quoting, De Beers,* 325 U.S. at 222-223.  That rationale applies the same today as it did sixty years ago: Plaintiff cannot obtain the relief he seeks merely because his counsel downloaded every web page that mentions any of the defendants and then, without any

---

[4] While all of Plaintiff's injunction requests are outrageous, the most notable is no. 20, which precludes some of the defendants from leaving the United States without the Court's approval. This request conclusively demonstrates that Plaintiff comes to this Court asking for the moon, without any justification.  The request itself is almost sanctionable, unsupported by any good faith belief in a legal basis therefor.

proof whatsoever, on a mere statement of belief that the defendants would hide assets, impose an injunction of indefinite duration. The Justices in 1945 predicted this exact scenario, and this Court should not let Mr. Boland get away with this obvious flouting of our laws.[5]

## III.

### PLAINTIFF'S UNCLEAN HANDS BAR THE RELIEF HE SEEKS

Plaintiff comes before this Court seeking equitable relief in a case he has built upon core allegations that he engaged in sexual relations with a minor, an act forbidden under the law and detested by society. Under these circumstances, the "clean hands" doctrine bars Plaintiff's attempt to invoke this Court's equitable powers to preserve defendants' assets, which Plaintiff argues is necessary to allow him to benefit from his wrongdoing. The Supreme Court has explained the "clean hands" doctrine as follows:

> The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity."

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15 (1945).[6] The doctrine is applied regardless of the merits of the Plaintiff's case. *See, e.g., Deweese v. Reinhard*, 165 U.S. 386, 390 (1897) ("A court of equity acts only when and as conscience demands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in

---

[5] Moreover, Mr. Boland's "fears" are unsupported and unsupportable because the defendants' businesses are set up for legitimate business and tax reasons.

[6] A related principle of equity states that "he who seeks equity should not be allowed to profit from his own wrongdoing." *Klaustermeyer v. Cleveland Trust Co.*, 105 N.E. 278, 282 (Ohio 1913).

a court of law, he will be held remediless in a court of equity.").  When applying this equitable doctrine to the facts of a given case, the court acting in equity is not bound by "formula" or constrained to exercise its discretion in any certain manner:

> [Courts] apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice.  They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-46 (1933).

Stated simply, Plaintiff filed the instant lawsuit against defendants in a blatant effort to benefit from his own admitted wrongdoing, availing himself of this Court's equitable power to freeze defendants' assets to make it easiest for him to realize financial gain from his wrongdoing in the highly unlikely event he will succeed on the merits of his specious claims.  Under these circumstances, this Court should reject Plaintiff's appeal to its equitable powers, as defendants' hands are clearly unclean relative to the very matter in which he seeks relief.[7]

---

[7] Likewise, Plaintiff's counsel has been dilatory in providing information and complying with this Court's orders.  Plaintiff's counsel took almost two weeks to comply with the Court's order to "promptly" file his client's affidavit.  Additionally, a week ago EIC's counsel emailed a short draft protective order to Plaintiff's counsel to facilitate informal discovery, to which Plaintiff's counsel responded that he needed a week to review it, and then he demanded a discovery conference with the Court to address Defendants' refusal to submit to informal discovery, without even mentioning the protective order.  (Milmeister Decl., Ex. D).  Then, Plaintiff refused the offer to table the jurisdictional issues while Cytek challenged the merits in a motion to dismiss, which could possibly obviate the need for expensive and extensive jurisdictional discovery.  (Milmeister Decl., Ex. E).  Plaintiff's counsel refused, thereby revealing his true motives.  It seems as if Mr. Boland is trying to discover Defendants' corporate structure for an ulterior purpose: he refuses to give a protective order and then pressures revelation of proprietary business information; he refuses an offer that compromises none of his client's rights and that could save tens of thousands of dollars in legal fees spent in needless jurisdictional discovery.  The Court should not allow Plaintiff to discover proprietary business information to which he is not entitled at this juncture and without proper protection.

## IV.

### AGE VERIFICATION ON THE INTERNET IS CONSTITUTIONALLY UNREASONABLE AND PLAINTIFF COULD NOT REASONABLY RELY ON THE PERCEIVED PROMISE TO DO SO

Federal courts have already found that it is impossible for web site operators to easily confirm age and therefore they cannot be required to do so. Three weeks ago, after trial on the merits and extensive expert testimony, the Philadelphia District Court enjoined the enforcement of the Child Online Protection Act ("COPA"), 47 U.S.C. § 231. *ACLU v. Gonzales,* _____ F. Supp.2d _____, 2007 WL 861120 (E.D. Pa. 2007). COPA provides both criminal and civil penalties for transmitting sexually explicit materials and communications to minors over the web. The *Gonzales* court found that the statute is neither narrowly tailored to the compelling interest of protecting minors, nor the least restrictive and most effective alternative to meet that interest. The court found "no evidence of age verification services or products available on the market to owners of Web sites that actually reliably establish or verify the age of Internet users. Nor is there evidence of such services or products that can effectively prevent access to Web pages by a minor." *Id.* at 25. The court held that parents could use filters to protect their children, and that the law requiring web publishers to do so violates the First and Fifth Amendments.

The *Gonzales* case was decided after remand from the U.S. Supreme Court on appeal of the preliminary injunction entered in that case. *Ashcroft,* 542 U.S. 656. The Court affirmed the preliminary injunction, and also agreed that filters are likely the least restrictive alternative to COPA:

> Filters are less restrictive than COPA. They impose selective restrictions on speech at the receiving end, not universal restrictions at the source. Under a filtering regime, adults without children may gain access to speech they have a right to see without having to identify themselves or provide their credit card information. Even adults with children may obtain access to the same speech on the same terms simply by turning off the filter on their home computers. Above all, promoting the use of filters does not condemn as criminal any category of speech, and so the potential chilling effect is eliminated, or at least much

8

diminished. All of these things are true, moreover, regardless of how broadly or narrowly the definitions in COPA are construed.

Filters also may well be more effective than COPA. First, a filter can prevent minors from seeing all pornography, not just pornography posted to the Web from America. The District Court noted in its factfindings that one witness estimated that 40% of harmful-to-minors content comes from overseas. [] COPA does not prevent minors from having access to those foreign harmful materials. That alone makes it possible that filtering software might be more effective in serving Congress' goals.

*Id.* at 666.

As a matter of law, Plaintiff did not reasonably rely on any perceived warranty to keep minors out. Reasonableness/justifiable reliance is an element of Plaintiff's claims for breach of warranty, fraud, negligent misrepresentation, and failure to warn. *See,* §§ VII-C-F, below. Additionally, assuming *arguendo* that the contract terms at issue are ambiguous, the Court should interpret those terms to ensure the parties' constitutional rights are protected (in this case, SexSearch's members' First Amendment rights). An interpretation of the TAC that allows Plaintiff to maintain his claims violates the First and Fifth Amendments, because it would effectively require SexSearch.com to do what the U.S. Supreme Court said Congress could not require it to do: warrant that minors will not be on the site. The injunction should be denied.

## V.

## THE COMMUNICATIONS DECENCY ACT PRE-EMPTS PLAINTIFF'S TORT CLAIMS

Plaintiff's claims are preempted by the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). The CDA mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." It further provides that, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

"The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet

and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).  "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

The statute and case law make clear that SexSearch.com is an interactive computer service and Plaintiff and Jane Roe are information content providers.  Six weeks ago, the District Court in Austin Texas held that MySpace.com is an "interactive computer service" and therefore could not be held liable for allowing a minor to become a member, which led to her sexual assault by another member, both of whom the court found to be "information content providers." *Doe .v. MySpace, Inc*. ___ F.Supp. 2nd ___, 2007 WL 471156 (W.D. Tex 2007).

In enacting the CDA, Congress made the following findings:

> (1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens. (2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops. (3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity. (4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation. (5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

47 U.S.C. § 230(a).  CDA's underlying policy is promotion of "the continued development of the Internet and other interactive computer services...." 47 U.S.C. § 230(b)(1).  "The provision 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone, or alter content." *Dimeo v. Max,* 433 F.Supp.2d 523, 528 (E.D.Pa.2006), *quoting  Green v. America Online,* 318 F.3d 465, 471 (3d Cir.2003); *Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir.1997)). "The CDA thus encourages web sites and other

10

"interactive computer services" to create forums for people to exchange their thoughts and ideas by protecting web sites and interactive computer services from potential liability for each message republished by their services." *MySpace,* at 3, *citing, Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1122-24 (9th Cir.2003) (Matchmaker.com immune from effects of false personal ad listing resulting in harassment of the plaintiff); *Zeran,* 129 F.3d at 330-31.

> The purpose of this statutory immunity is clear:

> Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium.   The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech.  Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

> * * *

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.  [In enacting the CDA] Congress made a policy choice ... not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.

*Zeran,* 129 F.3d at 330-31.

In *MySpace,* plaintiffs argued that the CDA did not apply because they did not sue "MySpace for the publication of third-party content but rather for failing to implement basic safety measures to prevent sexual predators from communicating with minors on MySpace." *Id.* at 4.  The District Court rejected that argument, and found that the statute was not limited to defamation claims, but also applied to claims for other torts, such as negligence.  *MySpace* at 4, *citing, Doe v. Bates,* 2006 WL 3813758 (E.D.Tex. Dec.27, 2006) (court found that Yahoo! Inc. immune from liability for postings of sexually explicit photos of the minor plaintiff).

Also, like Plaintiff in this case, the *MySpace* plaintiffs asserted that "the CDA does not bar their claims against MySpace because their claims are not directed toward MySpace in its capacity as a publisher.  Plaintiffs argue this suit is based on MySpace's negligent failure to take

reasonable safety measures to keep young children off of its site and not based on MySpace's editorial acts." The court also rejected this argument and found that:

> It is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on MySpace, Pete Solis and Julie Doe met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of Julie Doe. If MySpace had not published communications between Julie Doe and Solis, including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred. No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities. Therefore, in accordance with the cases cited above, Defendants are entitled to immunity under the CDA, and the Court dismisses Plaintiffs' negligence and gross negligence claims with prejudice.

*Id.* at 5. This analysis applies in this case. Plaintiff and Jane Roe would not have met but for the information published on the site. Therefore, EIC has a strong likelihood of prevailing on the immunity defense as to all of Plaintiff's claims.

## VI.

## NONE OF THE NAMED DEFENDANTS IS DIRECTLY RESPONSIBLE FOR OPERATING THE SEXSEARCH.COM WEB SITE

None of the named defendants is responsible for operating the sexsearch.com web site, and none are alter egos of the site operator.[8] Therefore, they cannot possibly be liable for its operation.

Plaintiff's counsel named many of the defendants based on the theory that they are alter egos of each other, and therefore should be held liable for SexSearch's operation. In a diversity action, the Court applies the Ohio alter ego doctrine. *See, e.g., Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980). Although Ohio law has a formal test for veil-piercing, "the legal conception [of alter ego liability] has historical antecedents in both federal and state law. Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in [Ohio law] without usurping its authority." *Music Express Broadcasting Corp. v. Aloha Sports, Inc.,* 161

---

[8] Separately, this Court lacks personal jurisdiction over all the named defendants. This issue will be addressed in Defendants' motions to dismiss, due April 13.

Ohio App.3d 737, 742 (2005). The Court, therefore, in addition to Ohio law, relies on Sixth

Circuit case law applying the alter ego theory of personal jurisdiction insofar as such cases are

consistent with Ohio law pertaining to the alter ego doctrine.

Ohio's corporate veil-piercing test consists of three prongs, the first of which is Ohio's

alter ego doctrine used for purposes of jurisdictional determinations. *Taylor Steel, Inc. v.*

*Keeton,* 417 F.3d 598, 605 (6th Cir.2005), *citing Belvedere Condominium Unit Owners' Assn. v.*

*R.E. Roark Cos.,* 67 Ohio St.3d 274, 287 (1993). That test is met "when . . . control over the

corporation by those to be held liable was so complete that the corporation has no separate mind,

will, or existence of its own." *Belvedere*, 67 Ohio St. 3d at 287.

In deciding whether the company is an alter ego of the individual, Ohio courts consider

such factors as: "(1) grossly inadequate capitalization, (2) failure to observe corporate

formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4)

shareholders holding themselves out as personally liable for certain corporate obligations, (5)

diversion of funds or other property of the company property for personal use, (6) absence of

corporate records, and (7) the fact that the corporation was a mere facade for the operations of

the dominant shareholder(s)." *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 422-

423 (1991) (court held defendant sole shareholder was not alter ego of defendant corporation).

None of the named individual defendants operate the SexSearch.com or

SexSearchcom.com websites in their individual capacities, and none of the entity defendants do

either.[9]  Rather, the owners of those domains and trademarks have contracted with Cytek, Ltd.

("Cytek") to operate the site.  Stallion.com FSC Limited ("Stallion") owns the domain

www.sexsearch.com.  Fiesta Catering International Inc. ("Fiesta") owns the trademark

---

[9] Because Plaintiff would not agree to even discuss a protective order, EIC could not provide a
declaration to support the evidence regarding the structure of entities involved without the ability
to prevent dissemination of the information.  Defendants believe that this evidence is
unnecessary to defeat Plaintiff's motion, in light of the facts that the remedy Plaintiff seeks is
unavailable at this juncture, and that the complaint entirely lacks merit.  Defendants nevertheless
include the information and argument here to inform the Court as to the general background of
the sexsearch.com website operations.

"sexsearch.com."  Both Stallion and Fiesta have licensed / assigned the domain and trademark in written agreements to Cytek.  Pursuant to those written agreements, Cytek has full and complete authority and discretion over the domain and trademark, and need not get any approval for any decisions regarding the use of the mark or operation of the web site from Stallion or Fiesta.

Cytek, in turn, contracts with other companies to perform various services necessary to operation of the site.  On occasion, Cyber Flow Solutions, Inc., a California corporation ("Cyber Flow") provides minimal marketing and design services for the site, but Cytek retains complete authority and discretion over the operation of the site.  Cyber Flow and Cytek are completely unrelated companies, with different directors, officers and shareholders.

Cytek also contracts with EIC, a Florida corporation.  Pursuant to a written agreement, Cytek retained EIC to facilitate some of its credit card processing needs.  Pursuant to a separate agreement, EIC leased usage of a domain it owns, sexsearchcom.com, to Cytek, for Cytek to operate SexSearch.com's affiliate program and other services.  EIC has no current control or authority over the use of the domain www.sexsearchcom.com. [10]  Stallion, Fiesta, Cytek, Cyber Flow and EIC (collectively, the "Companies") timely meet all the necessary corporate formalities in the jurisdictions in which they operate and all file timely tax returns and pay all taxes due in those jurisdictions as well.  None commingle their funds.  None of the named individual defendants are direct shareholders of any of the Companies. [11]

---

[10] Plaintiff no doubt will attempt to claim that EIC has owned sexsearch.com because a whois registration reflected that for four days in 2004.  (Plfs. Ex. 80).  However, Plaintiff misled the Court by submitting only part of the domain history.  In fact, an operator error caused the domain to be reflected as  registered to EIC for four days in 2004.  However, there are 356 entries in the domain history, and it is clear that Stallion currently owns the domain, and has since 2004.  .  (Milmeister Decl., Ex. F).  This is but one more example of how Plaintiff has misled this Court to cause entry of the TRO.

[11] Manic Media, Inc. is not involved with the sexsearch.com or sexsearchcom.com websites.  Ms. Francis is merely Stallion's agent for service.  DNR.com Ltd. is a Jamaican company that owns the domain www.orgasm.com. Ms. Francis and DNR are not involved with the sexsearch.com or sexsearchcom.com websites.

14

The purpose of this organization is to ensure separation of intellectual property and to legitimately minimize tax liability.  The companies are in compliance with all applicable tax and registration laws and each is independent.

None of the defendants is an alter ego of the other, and only Cytek is responsible for operating the SexSearch.com and SexSearchcom.com site.  Accordingly, as a matter of law, none of the other defendants can have assets frozen or otherwise encumbered during the course of this litigation, and there is no legal basis to freeze or otherwise encumber Cytek's assets, as set forth herein.  (§ II).

**VII.**

**AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE ON ANY OF HIS CLAIMS**

**A.    <u>The Contract Is Clear, Unambiguous And Enforceable</u>.**

Plaintiff's first cause of action is for breach of contract.  Plaintiff alleges he agreed to the TAC.  (Comp. ¶ 292).  A pre-requisite to joining SexSearch is a click in a box warranting that the customer is over 18 and has read agreed to the TAC and privacy policy:

YOU MUST CHECK THE BOX BELOW TO PROCEED.

I am over 18, I have read and agreed to the
<u>terms and conditions</u> and the <u>privacy policy</u> .

The TAC are clear and unambiguous that there is no warranty as to members' ages.  (Plfs. Ex. 2).  Specifically, the TAC provides (emphasis in original):

> 2. **Eligibility** You must be eighteen or over to register as a member of SexSearch or use the Website. Membership in SexSearch is intended for adult use only and is void where prohibited. By using the Website, you represent and warrant that you have the right, authority, and capacity to enter into this Agreement and to abide by all of the terms and conditions of this Agreement. SexSearch reserves the right to terminate your account if we learn that you have provided SexSearch or its personals partner sites with false or misleading registration information.

**9. . . .** You agree to not use SexSearch to: . . . b. harm or involve minors (those under age 18) in any way ; . . . k. intentionally or unintentionally violate any applicable local, state, national or international law and any regulations having the force of law;

11. **Indemnity** You agree to indemnify and hold SexSearch and its subsidiaries, affiliates, officers, agents, co-branders or other partners, and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of Content you submit, post, transmit or make available through SexSearch, your use of SexSearch, your connection to SexSearch, your violation of the TAC, or your violation of any rights of another.

12. **Limitation on Liability** Except in jurisdictions where such provisions are restricted, in no event will SexSearch be liable to you or any third person for any indirect, consequential, exemplary, incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if SexSearch has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, SexSearch's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to SexSearch for the Service during the term of membership.

15. **YOU EXPRESSLY UNDERSTAND AND AGREE THAT: a.** Your use of SexSearch is at your sole risk. SexSearch is provided on an "as is" and "as available" basis. SexSearch expressly disclaims all warranties of any kind, whether express or implied, including, but not limited to the implied warranties of merchantability, fitness for a particular purpose and non-infringement. b. SexSearch Makes no warranty that: . . . III. the results that may be obtained from the use of SexSearch will be accurate or reliable; IV. the quality of any . . . information, or other material . . . obtained by you through SexSearch will meet your expectations . . .. d. No advice or information, whether oral or written, obtained by you from SexSearch or through or from SexSearch shall create any warranty not expressly stated in the TAC.

17. We cannot guarantee, and assume no responsibility for verifying, the accuracy of the information provided by other users of the Service.

The privacy policy provides:

This is an adult Site that expressly and strictly limits its membership to adults. All persons under the age of majority in their jurisdiction are strictly prohibited from accessing or viewing the contents of this Site. [¶] This Site does not knowingly seek or collect any personal information or data from persons under the age of majority.

* * *

16

> Each paying or non-paying member should carefully read each of the terms and
> conditions of Membership of this Site. By accepting membership to this Site you
> are unconditionally accepting all of those terms and conditions.

The terms are clear. All warranties are disclaimed. Liability is limited to the amount Plaintiff

spent on his membership. Additionally, as the TAC is only between members and Cytek (the

website operator), then the claim is also meritless as to the other defendants who are not parties

to the contract and therefore are not bound by its terms. Plaintiff's breach of contract claim is

meritless.

**B.    The TAC Are Not Unconscionable In Any Way.**

As a matter of law, the TAC are not unconscionable. Four of Plaintiff's claims are based

on claimed unconscionability of the TAC (10th – 13th causes of action). Specifically, he claims

that (a) the TAC are unconscionably one-sided; (b) the TAC provide no guarantee that

Defendants would or could perform their contractual promises; (c) he was not provided with a

meaningful choice regarding the terms limiting and disclaiming liability. Plaintiff is wrong. As

a matter of law, the TAC are not unconscionable.

Ohio's unconscionability doctrine consists of two 1 prongs: "(1) substantive

unconscionability, i.e., unfair and unreasonable contract terms, and (2) procedural

unconscionability, i.e., individualized circumstances surrounding each of the parties to a contract

such that no voluntary meeting of the minds was possible." *Dorsey v. Contemporary Obstetrics

& Gynecology, Inc.* 113 Ohio App.3d 75, 80 (1996). A contract is unconscionable only if it

meets both tests. *Collins v. Click Camera & Video, Inc*, 86 Ohio App.3d 826, 834 (1993).

Substantive unconscionability involves factors relating to the contract terms themselves

and whether they are commercially reasonable. *Dorsey*, 113 Ohio App.3d at 80. "Procedural

unconscionability involves those factors bearing on the relative bargaining position of the

contracting parties, *e.g.,* "age, education, intelligence, business acumen and experience, relative

bargaining power, who drafted the contract, whether the terms were explained to the weaker

party, whether alterations in the printed terms were possible, whether there were alternative

sources of supply for the goods in question." *Collins,* 86 Ohio App.3d at 834. "Unconscionability

17

is a question of law." *Hurst v. Enterprise Title Agency,* 157 Ohio App.3d 133, 809 N.E.2d 689, 694 (2004).

The TAC "is commonly referred to as a 'clickwrap' agreement. A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Feldman v. Google, Inc,* 2007 WL 966011, p. 6 (E.D.Pa. Mar. 29, 2007), *citing, Specht v. Netscape Comms. Corp.,* 306 F.3d 17, 22 (2d Cir.2002). "Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable." *Feldman,* at 6 (granting summary judgment to Google on Plaintiff's claim that, *inter alia,* limitation of liability in lickwrap agreement was unconscinoable).

The TAC are neither procedurally nor substantively unconscionable. Plaintiff's first unconscionability claim is that the TAC are one-sided fails as a matter of law. Plaintiff seems to be complaining mainly about the site's unilateral right to cancel. This is not unconscionable; it is designed to protect members. The site must be monitored for members who are violating the TAC and privacy policy. Also, a unilateral right to cancel is not contrary to any Ohio law. Plaintiff's counsel misled the Court again when he asserted that Ohio law requires a three-day cancellation period for all consumer contracts. (3/2/07 Trscpt, p. 32:17-23). The three-day grace period is only required for home purchase contracts (R.C. § 1345.23); credit services contracts with credit services organizations (R.C. § 4712.05); and goods and services sold by telephone solicitors (R.C. § 4719.07). Moreover, the TAC makes clear that if the site cancels the membership, the member will receive a pro-rata refund. (Plfs. Ex. 2, ¶ 3). This is entirely reasonable and not unconscionable.

Separately, limitations of liability and damages are not unconscionable and do not violate public policy. "The inclusion of an exculpatory clause in a contract, generally, does not violate public policy." *Hurst,* 809 N.E.2d at 694. "In considering whether a provision in a contract is against public policy, [] we must remember that the freedom to contract is fundamental, and that

18

we should not lightly disregard a binding agreement, unless it clearly contravenes some established or otherwise reasonable public interest." *Id.* (citation omitted).

The *Hurst* court examined an exculpatory clause in an escrow agreement and held it was not unconscionable because escrow services are not necessary for a person's living needs; they are not quasi-public in nature and the escrow company did not have a monopoly. Moreover, the limitation was reasonable in light of the escrow company's small fee ($200) for a $355,000 real estate transaction. *Hurst,* 809 N.E.2d at 695. The *Collins* court also held that a clause in a video transfer contract limiting damages to the cost of the film was not unconscionable. That court held:

> The charge for such services is minimal compared to the potential liability for negligence. (Here, the total charge for transferring twenty-eight reels of film onto video tape was $234.28, or $8.37 per reel, and Collins's complaint sought in excess of $25,000 in damages.) In addition to this disparity in price and claimed damages, it is also significant that, given the nature of film processing, the extent of potential liability is unpredictable because the processor is generally unaware of the content of the film when delivered and unable to replace that content should the film be lost or destroyed. In order to limit exposure to such unpredictable liability, limitation of liability clauses have become a standard in the film processing industry. Without such clauses, film processors would have to increase the cost of their services to cover this exposure. This consideration has often been held to be a commercially reasonable one.

*Collins,* 86 Ohio App.3d at 834-835. Likewise, a SexSearch membership is not a "necessary good or service." The terms are clear and written in plain English. Plaintiff could have gone to other adult dating sites for sex. A quick Google search yields 14 other similar sites. (Milmeister Decl., Ex. C). And, like the escrow and film cases, the membership charge is negligible compared to the potential liability. (Plaintiff's counsel told EIC's counsel that Plaintiff is seeking millions of dollars and will agree to keep the defendants' business information private if he gets the settlement he seeks). It is also significant that, given the nature of the adult dating website, the site cannot control its members actions when they meet, and the limitation of liability is necessary to limit exposure. Without such clauses, adult dating sites would have to increase the cost of membership to cover this exposure. The clause is commercially reasonable.

19

Courts routinely hold that clickwrap agreements are enforceable and not unconscionable. *See, e.g., Hubbert v. Dell Corp.*, 359 Ill.App.3d 976 (2005) and *Novak v. Overture Services, Inc.* 309 F.Supp.2d 446 (E.D.N.Y. 2004). The *Hubbert* court held that terms were sufficiently conspicuous so as not to be procedurally unconscionable. The court noted that the site had hyperlinks for terms in contrasting blue colors; clause in question was partially in capital letters; and the beginning of the terms were in "bold, capital letters." *Hubbert*, 359 Ill.App.3d at 987. The same is true of the TAC. The terms are highlighted in bold, capital letters and with hyperlinks to highlighted some of the more important terms. (Plfs. Ex. 2). The TAC simply are not unconscionable.

The *Novak* court held that a forum selection clause in the terms and conditions agreement for website operator's discussion group was not unconscionable. 309 F.Supp.2d at 451-452. Like the Plaintiff here, the *Novak* plaintiff argued "that since there was no option to negotiate the terms of the contract, it must be unenforceable" The *Novak* court rejected the argument. "Plaintiff had a full and fair opportunity to refuse the terms of this contract. There is also no indication that Plaintiff was under any external pressure to accept these terms. An agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract." *Id.*

The same analysis applies here: Plaintiff was not forced to buy a SexSearch membership. He had a full and fair opportunity to refuse the terms and join another adult dating site. Plaintiff chose to agree to the terms, and, as a matter of law, they are not unconscionable.

**C.     The Fraud and Negligent Misrepresentation Claims Fail Because Plaintiff Did Not Have A Special Relationship With Defendants And Plaintiff's Reliance Was Not Reasonable.**

As a matter of law, Plaintiff cannot establish the elements of a special relationship with any of the defendants, which is a necessary element of the negligent misrepresentation claim; and he cannot establish reasonableness, which is an element of both misrepresentation claims. A negligent misrepresentation claim is stated when one who, in the course of his or her business,

profession, or employment, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to those others by their justifiable reliance upon the information, if the person providing the information fails to exercise reasonable care or competence in obtaining or communicating the information.  *See, e.g.*, *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371 (2000); *Martin v. Ohio State Univ. Found*., 139 Ohio App. 3d 89 (2000); *Leal v. Holtvogt*, 123 Ohio App. 3d 51(1998).

> The elements of a claim for fraud are (a) a representation . . . (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Orbit Electronics, Inc. v. Helm Instrument Co., Inc.***,** 167 Ohio App.3d 301, 313-314 (2006).

As a matter of law, Plaintiff did not act reasonably in relying on the purported representation.  Plaintiff knew that all members only had to state that they were 18 by checking a box; and the TAC and privacy policies gave additional warnings that the site did not guarantee members' ages.  No reasonable person who uses the internet could justifiably rely in any express warranties, let alone warnings directed to keep minors out of the site.  The misrepresentation-based claims are meritless.

Additionally, under Ohio law, a core requirement of a negligent misrepresentation claim is a special relationship pursuant to which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions.  This relationship occurs only in special circumstances; the requisite "special" relationship for a negligent misrepresentation claim does not exist in ordinary business transactions.  Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class.  *Picker Intern., Inc. v. Mayo Foundation*, 6 F. Supp. 2d 685 (N.D. Ohio 1998).  In the absence of a fiduciary relationship, the law requires a person to exercise proper diligence in his or her dealings, such that when a person

is put on notice as to any doubt as to the truth of a representation, that person is under a duty to reasonably investigate before relying on the representation. *Finomore v. Epstein*, 18 Ohio App. 3d 88 (1984); *Foust v. Valleybrook Realty Co*., 4 Ohio App. 3d 164 (1981). The website operator did not have a special relationship with Plaintiff, and the claim fails for this additional reason as well.

Plaintiff does not have a likelihood of success on his claims for fraud and negligent misrepresentation.

**D.    Plaintiff's Breach Of Warranty Claim Fails Because There Was No Warranty And Because He Could Not Have Reasonably Relied On The Purported Warranty.**

Plaintiff's claim for breach of warranty fails for two separate and independent reasons. First, Ohio law only provides for express warranties of goods, and not services. Second, and separately, reasonableness is an element of a claim for breach of warranty, and, as established repeatedly throughout this brief, Plaintiff was not reasonable in his purported reliance on the claimed warranty.

The only apparent basis for a breach of warranty claim is R.C. § 1302.26, which reads in pertinent part as follows:

> (A) Express warranties by the seller are created as follows:
> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

This section specifically states that it applies to "buyers" and "sellers." Buyer means "a person who buys or contracts to buy goods." R.C. § 1302.01(A)(1). Seller means "a person who sells or contracts to sell goods." R.C. § 1302.01(A)(4). And Goods means "all things which are movable at the time of identification." R.C. § 1302.01(A)(8). It is clear that these definitions do not apply to this case and the claim therefore fails.

Assuming, *arguendo*, a claim can be stated for breach of warranty of services, the statement "All persons within this site are 18+" is a warning to minors to stay out, and not a warranty that they will be kept out. Additionally, the Court should consider whether the buyer

was reasonable in believing the seller. *Price Bros. Co. v. Philadephia Gear Corp.,* 649 F.2d 416, 422 (6th Cir. 1981). In this case, for reasons discussed above, even if Plaintiff can state a claim for breach of warranty regarding services, Plaintiff's reliance on the perceived warranty was not reasonable (if, in fact, he really even noticed the warning or read it). The claim fails as a matter of law.

**E.    The Ohio Consumer Protection Statutes Do Not Apply To This Case.**

Plaintiff claims that various aspects of the TAC are deceptive (6th-9th causes of action). Specifically, Plaintiff alleges violations of the following statutes:

> (A) "Consumer transaction" means a sale . . . of . . . a service . . . or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

> (C) "Supplier" means a seller . . . or other person engaged in the business of effecting or soliciting consumer transactions.

R.C. § 1345.01.

> (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

> (B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

> (10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

R.C. § 1345.02.

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

> (B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier.

R.C. § 1345.03.

Plaintiff's practices act claims are pre-empted by the CDA because they attempt to impose liability for information published by information content providers.

Separately and additionally, the transaction at issue is not covered by the Act.  Sale of a SexSearch membership is not a "consumer transaction."  The membership does not qualify as a "service," which is defined as:  "performance of labor for the benefit of another."  Ohio Adm.Code 109:4-3-01(C).  "Although the term 'labor' is not defined, the common ordinary meaning of the word 'labor' implies work performed with some physical exertion.   Services provided electronically do not require any physical exertion and therefore do not require any 'labor.'"  *Hoang v. Etrade,* 151 Ohio App.3d 363, 372 (2003) (court found that Etrade transactions not subject to the Act).

Even assuming the statute applies to sale of SexSearch memberships, the claims still fail. The consumer protection act does not apply to "[a] publisher . . . or other person engaged in the dissemination of information or the reproduction of printed or pictorial matter insofar as the information or matter has been disseminated or reproduced on behalf of others without knowledge that it violated sections 1345.01 to 1345.13 of the Revised Code."  R.C. § 1345.12(B).  While no cases have interpreted this statute as it applies to publishers, it is clear that SexSearch is a publisher.  Congress expressly refers to sites that publish third-parties' information as "publishers."   47 U.S.C. § 230(c)(1).  Likewise, the *ACLU v. Gonzales* opinion refers to sites at issue as "web publishers." --- F.Supp.2d ---- at 37, ¶ 22.  As a matter of law, SexSearch.com is a publisher, and therefore exempt from the Ohio Consumer Protection Act.

Separately and additionally, even if the Act applies, the claims fail on their merits. The claim that the unilateral right to cancel a membership is deceptive is unsupportable.  That term is reasonable, in light of SexSearch's desire to ensure that its members don't harass each other, post advertisements or otherwise violate the TAC.  No law requires that members be given

a three-day cancellation period, which is unreasonable in light of the fact that they can cancel at any time and are liable only for one-month membership fee.

There is no support for Plaintiff's claim that the limitation of damages is deceptive; it is a reasonable and common contract term. (*See,* § VII-B, above).

The Ohio Consumer Protection Statutes clearly do no apply to this case for several separate and independent reasons. The claims are meritless. Because these claims are meritless, Plaintiff's requests for orders enjoining Ohio residents from using or joining the site should be denied. (Plfs Request Nos. 13-18). Additionally, this request should be denied for the separate and independent reason that it would be an unlawful prior restraint on the Ohio residents' freedom of speech. *Gonzales,* ___ F.Supp.2d ___ at p. 45. Plaintiff's request for an injunction should be denied.

## F.    As A Matter Of Law, Defendants Cannot Be Held Liable For Negligent Infliction Of Emotional Distress

The CDA pre-empts Plaintiff's claim for negligent infliction of emotional distress, and, additionally, he cannot establish the essential element of causation. The elements are: 1) the Defendant's actions; 2) created an unreasonable risk of harm (or that serious emotional distress was a reasonably foreseeable consequence); 3) the Plaintiff suffered severe and debilitating emotional distress, and 4) the harm was actually and proximately caused by the Defendant's act. *See, Paugh v. Hanks,* 6 Ohio St. 3d 72 (1983).

The CDA immunizes SexSearch from any liability for all torts, including infliction of emotional distress. (*See,* § V, above). Separately, SexSearch's actions did not create the risk of harm; the Plaintiff's and Jane Roe's actions did. Moreover, the Plaintiff's and Jane Roe's own criminal acts are a superseding and intervening causes of his damages, and Plaintiff therefore cannot establish proximate causation.[12] *Feitchner v. City of Cleveland,* 95 Ohio App.3d 388, 396 (1994). The claim is meritless.

---

[12] Plaintiff's acts in sexually assaulting a minor; Roe's acts in lying about her age.

**G.    Plaintiff's Failure To Warn Claim Is Meritless.**

Plaintiff was warned many times about the risk of minors on the site; he chose to ignore those warnings. The site cannot be liable for that choice. Failure to warn claim consists of the following elements: (1) that there was a duty to warn, (2) that duty was breached, and (3) that the injury proximately resulted from that breach. *Freas v. Prater Constr. Corp., Inc*, 60 Ohio St.3d 6, 8-9. (1991). Where the danger is open and obvious, there is no duty to warn. *Livengood v. ABS Contractors Supply*, 126 Ohio App.3d 464 (1998).

In this case, not only was the danger open and obvious, Plaintiff was in fact warned. The TAC specifically warns about minors and lack of warranty. Additionally, as with the other claims, Plaintiff's own crime is a superseding intervening cause of his damages and thus he cannot prove the causation element of this claim.

**VII.**

**CONCLUSION**

The injunction should be denied for dozens of separate and independent reasons, set forth above.

Nobody denies the importance of protecting minors; indeed, it is crucial. (That is why the SexSearch.com site was the first dating site to sponsor the ASACP). However, that compelling interest cannot be placed above our freedoms of speech and association. The *Gonzales* court eloquently summarized the Court's role in addressing the emotionally-charged issue:

> I agree with Congress that its goal of protecting children from sexually explicit materials on the Web deemed harmful to them is especially crucial. This court, along with a broad spectrum of the population across the country yearn for a solution which would protect children from such material with 100 percent effectiveness. However, I am acutely aware of my charge under the law to uphold the principles found in our nation's Constitution and their enforcement throughout the years by the Supreme Court. I may not turn a blind eye to the law in order to attempt to satisfy my urge to protect this nation's youth by upholding a flawed statute, especially when a more effective and less restrictive alternative is readily available (although I do recognize that filters are neither a panacea nor necessarily found to be the ultimate solution to the problem at hand). My feelings resonate

26

with the words of Justice Kennedy, who faced a similar dilemma when the Supreme Court struck down a statute that criminalized the burning of the American flag:

'The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result. And so great is our commitment to the process that, except in the rare case, we do not pause to express distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases.' *Texas v. Johnson,* 491 U.S. 397, 420-421 (1989) (Kennedy, J. concurring).

Despite my personal regret at having to set aside yet another attempt to protect our children from harmful material, I restate today, as I stated when granting the preliminary injunction in this case, that 'I without hesitation acknowledge the duty imposed on the Court [as Justice Kennedy observed] and the greater good such duty serves. Indeed, perhaps we do the minors of this country harm if First Amendment protections, which they will with age inherit fully, are chipped away in the name of their protection.'

*Gonzales,* ____ F.Supp. 2nd ____ at pp. 44-45.

Constitutional rights are at the forefront of this case. However, it is apparent from Plaintiff's counsel's actions in this Court and comments to the press that this case is not about age verification, but rather a ploy to get Defendants' confidential business and financial information. The Court should stop the fishing expedition now, and let the parties get to the merits and get rid of this specious case as expeditiously as possible.

Respectfully submitted,

/s/ Richard M. Kerger
RICHARD M. KERGER (0015864)
Counsel for Specially Appearing Defendant
Experienced Internet.com, Inc.

/s/ Gary Jay Kaufman
Gary Jay Kaufman (*pro hac vice*)
Counsel for Specially Appearing Defendant
Experienced Internet.com, Inc.

## DECLARATION OF DANA MILMEISTER

I, Dana Milmeister, declare and state as follows:

      1.      I am Of Counsel to The Kaufman Law Group, and, along with Gary Jay Kaufman, represent Experienced Internet.com, Inc. ("EIC"). The facts set out below are known to me personally, and if called on I could testify to those facts, under oath.

      2.      Attached hereto as Exhibit A is a true and correct copy of a press release appearing on the website for the Association of Sites Advocating Child Protection.

      3.      Attached hereto as Exhibit B is a true and correct copy of a news article published on www.xbiz.com on April 4, 2007.

      4.      Attached hereto as Exhibit C is a true and correct copy of a search result for a web search I ran on April 8, 2007 from www.google.com for adult dating websites.

      5.      On March 30, 2007, I sent a draft protective order to Mr. Boland, stating that the parties would provide information to him upon entry of a protective order. Mr. Boland responded that he needed a week to review the 14-paragraph, routine protective order. To date, I have not received a response. Attached hereto as Exhibit D is a true and correct copy of my letter to Mr. Boland and the draft protective order and Mr. Boland's response.

      6.      Attached hereto as Exhibit E is a true and correct copy of a letter from Michael Dortch to Dean Boland dated April 6, 2007.

      7.      Attached hereto as Exhibit F is a true and correct copy of a web page reflecting the WHOIS search results for the history of the domain registrations for www.sexsearch.com. There are 356 entries in the domain history, only four of which Mr. Boland attaches as Exhibit 80 in support of Plaintiff's preliminary injunction motion.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 9, 2007 in Los Angeles, California.

                    /s/ Dana Milmeister
                    Dana Milmeister

28

**EXHIBIT A**



**REPORT CHILD
PORNOGRAPHY**

RTA Label

Homepage

About ASACP

Sponsors

Become a Member

News & Press

Awards & Partners

Resources

Links for Parents

Tips for Webmasters





**SexSearch Becomes First Dating Site to Sponsor ASACP**

**Los Angeles, CA** (March 9, 2006) - The Association of Sites Advocating Child Protection (ASACP) is pleased to announce that adult dating site SexSearch.com has become a Corporate Sponsor.

A part of the online adult industry since 1996, SexSearch.com offers a high -converting webmaster affiliate program that allows visitors to post profiles and browse through thousands of profiles for free. ASACP Executive Director Joan Irvine pointed out that this marks the first time an adult dating site has become an ASACP sponsor.

"We wanted to expand our membership to include dating sites," Irvine said. "And we were working on revising our Best Practices to accommodate those companies. Having a high-profile site like SexSearch interested in joining gave us the impetus to speed up that process!" Dating sites joining ASACP are required to undergo a more rigorous review process than other new members, due to the presence of user profiles and other non-commercial content.

Founded in 1996, the Association of Sites Advocating Child Protection (ASACP) is a non-profit organization dedicated to eliminating child pornography from the Internet. ASACP battles child pornography through its CP reporting hotline, and by organizing the efforts of the online adult industry to combat the heinous crime of child sexual abuse.

Companies and individuals interested in supporting ASACP may go to  www.asacp.org for more information on how to get involved.

###

Sponsors | Members | Awards & Partners | Become a Member
Home | Report CP | About | Statistics | News & Press | Feedback | Contact
RTA Label | Tips for Webmasters | Child Protection Links | Links for Parents
Top of Page | Feedback | Support & Contact Information

Copyright © 1996-2007 by ASACP. All Rights Reserved.

**EXHIBIT B**



FREE Newsletters | XBIZ World | XBIZ Video | XBIZ Forum | XBIZ Awards | XBIZ Hollywood

# xbiz
## THE INDUSTRY SOURCE

BOARDS    NEWS    ARTICLES    DIRECTORY    CALENDAR    SERVICES

• Bookmark XBiz    • Register!

• Search

**Give Your Members**
The -uture of Porn    PORN2GO

✎ Home  >  News  >  Headline News  >  Ohio Man Sues Over Minor's Access to SexSearch        Saturday, April 07, 2007

NEWS STORY

## Ohio Man Sues Over Minor's Access to SexSearch

**By Rhett Pardon**
Wednesday, April 4, 2007

**XBIZ NEWS**

LAKEWOOD, Ohio — SexSearch.com has found itself on the legal defense after an Ohio man filed suit claiming the social networking company allowed him to chat online with a minor, later having sex with her.

The suit, filed in U.S. District Court in Columbus, Ohio, alleges that SexSearch, as well as its executives and partners, committed fraud, violated Ohio consumer laws and markets children to adults for sexual purposes, among other accusations.

Plaintiff's counsel Dean Boland told XBIZ that the suit, which has 21 defendants represented by seven different law firms, could shake up the social networking industry, particularly companies that market specifically to adults.

"The whole industry is going to be rocked," said Boland, referring to the online adult business. "There is no substantial age -verification system on any of these [social networking] sites."



AGE VERIFICATION



**Poll**

Have we heard the last of .XXX?

◼ Yes
♫ No

VOTE    VIEW RESULTS

**Newsletters**

Stay informed of the latest industry developments. Get XBIZ Newsletters delivered to your inbox. Subscribe today!

☑ **XBIZ Weekly Wrap-up**
☑ **XBIZ Daily News Briefs**
☐ **XBIZ Community**
☐ **Specials & Promotions**

Enter email address:

**Sponsor**

The man, whose name or age was not revealed in the complaint, said he was tricked into believing that the minor was in fact over the age 18 because she posted information that stated such and that SexSearch represented to him that it verifies the age of all members who use their site.

More than a month after having consensual intercourse with the minor at her home, the man was arrested and charged with a variety of charges of unlawful conduct with a minor, the complaint said. His criminal trial, where he could face up to 15 years in prison, has not yet commenced.

The 14-year-old minor, whose profile was active on SexSearch until it was removed by her parents, included her photo on the site, as well as listings that said she was looking for a "1 on 1 sexual encounter" and that her ideal match included her interest in a male "who can last for a long time."

The suit's long list of defendants include some well-known adult industry brand names in addition to SexSearch, including Playboy, Jenna Jameson, Club Jenna, Moniker Online Services, Manic Media and Stallion.com.

Also listed as defendants are SexSearch executives Ed Kunkel, Damian Cross and Adam Small, as well as SexSearch hosting company ExperiencedInternet.com.

Counsel for some of the defendants say, however, that the case is frivolous and without merit.

"My clients vigorously deny these claims and expect to prevail in court over these bogus charges," attorney Michael D. Dortch told XBIZ.

Dortch, a Columbus, Ohio, attorney who represents seven of the defendants, including Kunkel and Small, would not further comment on the matter.

Los Angeles-based attorney Gary J. Kaufman, who represents hosting company ExperiencedInternet.com, told XBIZ that he too believes the complaint is unworthy.

"It's clearly the case of a creative attorney who is trying to deflect blame from a client who faces a lot of years in jail," Kaufman said. "We're trying to bring this to a speedy conclusion."

Boland, who represents the John Doe plaintiff, however disputes that the case is frivolous and that SexSearch had a duty to filter out participation with minors.

"When a person signs up for SexSearch, they are promised that they are dealing with an all-adult community," Boland said. "There is a promise that everyone is 18. This is not eHarmony."

"Credit cards are not suitable to verify age," said Boland, who is a noted child-porn defense attorney and digital images expert in Ohio.

The SexSearch complaint said that the minor, who is named as a Jane Roe in the filing, was allowed to access much of the site's services, including a fetish room.

It also attempts to tie the company's marketing efforts to individuals who want to gain access to teens. The complaint said the defendants operate sites such as Devirginized.com, FreenTender.com, YoungnTender.com, Orgasm.com, FreeTeenSlits.com and RawNudeTeens.com, among others.

Hollywood, Calif.-based SexSearch, on its website, claims more than 10 million members advertises it delivers "real people, real sex" on a geo-targeted basis.

The site has three levels of membership and charges up to $29.95 per month. Depending on the level, members can create profiles, upload pictures and video content, as well as access advanced search options and view online adult content.

The plaintiff has asked for unspecified and punitive damages in the suit, which was filed last month.

His attorney, Boland, also is asking for triple damages under the state's Consumer Sales Practices Act and is seeking a restraining order to enjoin SexSearch from accepting Ohio members, as well as attorney fees.

Boland, who requested a jury in the federal case, said that the defendants may have a tough time getting a victory, particularly in Ohio.

"No jury of average intelligence in the Midwest will decide in their favor," Boland said.



Share this news story with others:

digg it    del.icio.us    technorati    fark

XML  Add XBIZ Headline News to your RSS reader



XFANZ, a portal from the parent company of XBIZ, is on a mission to highlight all that is sensational in the world of adult!

★ FANS
› Daily news & reviews!
› Free videos & photo galleries!
› Community profiles & boards!
› Web directory & much more!

★ STARS, WEBMASTERS & PRODUCERS
› Build a global fan base with your profile!
› Submit your videos/sites for review!
› Get free traffic - submit your links!
› Place XFANZ content on your site!

GO TO XFANZ! »



▼ Services

Save time. Increase business. Learn about the following free business services from XBIZ:

XBIZ Newscaster
Submit your press release to top adult industry resource sites.

XBIZ Syndicate
Keep your readers informed by adding XBIZ News content to your site today.

XBIZ Banner Exchange
Generate free traffic with our popular B2B banner exchange.

▼ Free B2B Traffic

Do you market products and services to webmasters? XBIZ offers the most comprehensive business directory available online - generate Free B2B traffic by getting your company listed in our heavily

**EXHIBIT C**

Looking for real sex? Sex Search Hot partners with AdultFriendFinder    Page 1 of 3

## Category: Adult Dating



**Adult Friend Finder**

**Rating:** ★★★★★

**Description from the site:** Looking for real sex? Find someone now on the largest AdultFriendFinder sex personals network. FREE signup! Post a FREE erotic ad w/5 photos, flirt in chatrooms, view explicit live Webcams, meet adultsingles for REAL sex! AdultFriendFinder.com
More...



**Alt.com**

**Rating:** ★★★★★

**Description from the site:** Looking for BDSM partners? Meet someone now on the largest BDSM personals site – photos, chat, more!
More...



**WildMatch**

**Rating:** ★★★★★

**Description from the site:** Meet real sexy singles tonight. Find Hot & WildGirls
More...



**Swapfinder.com**

**Rating:** ★★★★★

**Description from the site:** SwapFinder is the World's Largest Personals Site for Partner Swapping. Search for couples you're looking for with exclusive swap preferences options.
More...



**Mate1.com**

**Rating:** ★★★★☆

**Description from the site:** The web's largest intimate dating site, with millions of members in the U.S. and worldwide. Sign up today, 100% FREE.
More...



**Sexsearch.com**

**Rating:** ★★★★☆

**Description from the site:** Adult personals and free online adult dating service. Search adult swingers and couples personal classified ads. Sexsearchcom
More...



**Amateurmatch.com**

**Rating:** ★★★★☆

**Description from the site:** Find your sex partner in your area. Get Laid at AmateurMatch
More...

Looking for real sex? Sex Search Hot partners with AdultFriendFinder     Page 2 of 3



### Adult Iwantu

**Rating:** ★★★★☆

**Description from the site:** Live out your sexual fantasies and discover a new playmate or swingers with IwantU.com

More…



### Swinglifestyle.com

**Rating:** ★★★★☆

**Description from the site:** Adult Swingers Personals. Create a Free Swingers Account. Start your Sexual Revolution - Join our adult swingers today.

More…



### Eroticy.com

**Rating:** ★★★★☆

**Description from the site:** The hottest adult dating and erotic personals community online featuring over 3 million uncensored personal ads

More…



### SexyAds

**Rating:** ★★★★☆

**Description from the site:** Real People Actively Seeking Sexy Good Times. Excellent Search & Browse Criteria. Full Service Internal Email. Meet wonderfully friendly and sexy people right here right now!

More…



### Hotmatchup.com

**Rating:** ★★★★☆

**Description from the site:** Meet adult singles online, Hot and steamy online personals service. HotMatchup.com

More…



### Swappernet

**Rating:** ★★★★☆

**Description from the site:** Swappernet.com : The premier online community for swingers. Looking to satisfy your swinging lifestyle? Join today to meet local wife swappers and many more.

More…



### AdultLocals.com

**Rating:** ★★★☆☆

**Description from the site:** Find hot singles, couples, swingers and other passionate people just like you

More…



### Adult MatchDoctor

Looking for real sex? Sex Search Hot partners with AdultFriendFinder                                    Page 3 of 3

**Rating:**

**Description from the site:** Adult personals and swinger site. Search our database and anonymously email sexually-liberated singles in your area that are looking to have sex tonight! Post a profile, search, chat, and more for free!

More…

**EXHIBIT D**

# THE KAUFMAN LAW GROUP

A PROFESSIONAL CORPORATION

1925 CENTURY PARK EAST

SUITE 2350

LOS ANGELES, CALIFORNIA 90067

TEL (310) 286-2202

FAX (310) 712-0023

Direct Line:  (310) 689-0572

March 30, 2007

SENT VIA FACSIMILE (866) 455-1267
& EMAIL

Dean Boland, Esq.
18123 Sloane Avenue
Lakewood, OH  44107

Re:    Doe v. SexSearch.com, *et al.,* Case No. 3:07cv 00604-JZ
       United States District Court, No. Dist. Ohio

Dear Mr. Boland:

We have received your informal discovery requests.  These requests are inappropriate, premature and wholly overbroad.  The Court did not authorize discovery requests and we will not respond with any objections at this time, except to say that we will not produce documents or information in response to the requests.

We are in the process of collecting information that establishes, *inter alia*, the Court's lack of personal jurisdiction over our client.  We understand that the other defendants represented by Kravitz Brown & Dortch and Jaffe Raitt Heuer and Weiss are also gathering information for the same purpose.  However, all of this information is confidential business information, maintained and protected as trade secrets by the entity defendants.

Attached is a stipulated protective order that provides for an "attorneys' eyes only" proviso, and that confidential material be filed under seal.

Please let me know by Monday morning, April 2, 2007, whether you and Ms. Hawkins will stipulate to the protective order.  If we do not hear from you, we will file a motion for protective order.  We will provide information after Court enters a protective order.

Separately, further to my letter of yesterday, please fax your client's verification of the complaint to me as soon as possible.  We are perplexed as to why we still do not have it.  If he is unwilling to verify the complaint, please let us know immediately.

**THE KAUFMAN LAW GROUP**
A PROFESSIONAL CORPORATION

Dean Boland, Esq.
03/30/07
Page 2 of 2

Thank you for your anticipated cooperation.

Sincerely,

Dana Milmeister

DM:ch
Attachment

cc: Richard Kerger, Esq.
   Scott Torpey, Esq.
   William Adams, Esq.
   Max Kravitz, Esq.
   Michael Dortch, Esq.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| John Doe, | ) | Case No. 3:07CV604 |
| | ) | |
| | ) | Hon. Jack Zouhary |
| Plaintiff, | ) | |
| | ) | **STIPULATED PROTECTIVE** |
| | ) | **ORDER** |
| v. | ) | |
| | ) | Richard M. Kerger (0015864) |
| | ) | KERGER & ASSOCIATES |
| SexSearch.com, et al., | ) | 33 S. Michigan Street, Suite 100 |
| | ) | Toledo, Ohio 43604 |
| | ) | Telephone: (419) 255-5990 |
| Defendants. | ) | Fax: (419) 255-5997 |
| | ) | |
| | ) | Counsel for Specially Appearing |
| | ) | Defendant Experienced Internet.com, |
| | ) | Inc. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

The parties hereto, through their respective attorneys of record, enter into this Stipulated Protective Order with respect to the above-referenced matter:

WHEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE TO THE FOLLOWING PROTECTIVE ORDER:

<u>DESIGNATION OF CONFIDENTIALITY</u>:

1.    Any information, thing or document (or any portion thereof) subject to discovery or otherwise provided in the course of this action (an "Item") may be designated "CONFIDENTIAL" or "CONFIDENTIAL--RESTRICTED ACCESS" by the party furnishing the Item (the "Designating Party") or as provided in paragraph 2. The treatment of items so designated ("Confidential Material") shall be governed by the terms of this Stipulation and Order.

<u>PRODUCTION BY THIRD PARTIES</u>

2.    Any Item produced by a person or entity not a party to this case (a "Third-Party Item") shall be deemed "CONFIDENTIAL" for a period of twenty-one days from the date of production, unless otherwise agreed to in writing by the parties. A Third-Party Item may be designated as Confidential Material by the third-party producing the item and/or a party to this action within twenty-one days of the date of production, or later as the parties may agree in writing. Any Third-Party Item designated as Confidential Material shall be so marked by all parties in possession of the Third-Party Item, and shall be subject to the terms and conditions of this Stipulation and Order. If a Third-Party Item has not been designated as Confidential Material within twenty-one days from the date of production, the Third-Party Item will no longer be deemed Confidential Material, nor treated as such.

<u>METHODS OF DESIGNATION</u>

3.    Confidential Material shall be designated and marked in the following manners:

   a.    <u>Documents</u>: The Designating Party may designate documents as Confidential Material by producing or serving copies of the document marked with a legend reading "CONFIDENTIAL" or "CONFIDENTIAL--RESTRICTED ACCESS" or other appropriate notice to similar effect. Such legend shall be placed upon the first page of each document so designated.

b. <u>Magnetic Media Documents</u>: Where a document is produced in a magnetic medium (such as compact disc, dvd, floppy diskette or tape), the cartridge, reel, or medium container shall be marked as set forth above.

c. <u>Physical Exhibits</u>: Physical exhibits shall be marked by placing a label on the exhibit marked as set forth above.

d. <u>Deposition Testimony</u>: All deposition testimony shall be deemed CONFIDENTIAL and treated as Confidential Material. In addition, a party may designate deposition testimony "CONFIDENTIAL-RESTRICTED ACCESS" by stating that designation on the record at any time during the deposition. Any transcript, or portion thereof, designated "CONFIDENTIAL--RESTRICTED ACCESS" shall be bound separately, and marked "CONFIDENTIAL--RESTRICTED ACCESS."

<u>DISCLOSURE OF CONFIDENTIAL MATERIAL</u>

4.    Confidential Material designated as "CONFIDENTIAL" shall be disclosed, other than by the Designating Party or Parties, only as follows:

a. to counsel of record for the parties in this action and such counsel's support staff;

b. to any party to this action, or present or former employee of such party to whom the material is necessary to show for purposes of this action;

c. to a bona fide outside expert, not affiliated with any party in this action or any competitor of any party to this action, or any other person involved in litigation with any party or their attorneys, and who is being consulted or retained by counsel in this litigation;

d. to any person whose name appears on or is contained in the Item;

e. to any witness in this action during deposition or trial;

f. to clerical or ministerial service providers, including outside copying services and court reporters retained by a party's counsel to assist such counsel in connection with this action;

g. to the Court, and its support personnel; and

    h.  to any other person to whom the parties consent in writing, which consent shall not be unreasonably withheld.

    5.     Confidential Material designated "CONFIDENTIAL--RESTRICTED ACCESS" shall be disclosed, other than by the Designating Party or Parties, only as follows:

    a.  to counsel of record for the parties in this action and such counsel's support staff;

    b.  to a bona fide outside expert, not affiliated with any party in this action or any competitor of such party, or any other person involved in litigation with any party or their attorneys, and who is being consulted or retained by counsel in this litigation;

    c.  to the author of the Item and anyone shown on the Item as having received it in the ordinary course of business;

    d.  to any witness in this action during deposition or at trial;

    e.  to clerical or ministerial service providers, including outside copying services and court reporters retained by a party's counsel to assist such counsel in connection with this action;

    f.  to the Court and its support personnel;

    g.  to any other person to whom the parties consent in writing, which consent shall not be unreasonably withheld.

## ACKNOWLEDGMENT TO BE BOUND BY STIPULATION AND ORDER

    6.     Each person to whom Confidential Material is to be made available, except for counsel of record and its support staff and authors or prior recipients of the Confidential Material, shall first acknowledge in writing that they have reviewed the terms of this Stipulation and Order and are subject to the jurisdiction of the Court in enforcing this Stipulation and Order, by executing the form Confidentiality Agreement attached hereto as Attachment A. The parties shall each maintain a list of persons executing the form Confidentiality Agreement and shall exchange such lists at the conclusion of this trial.

NO DISCLOSURE EXCEPT PURSUANT TO ORDER

7.      Confidential Material shall not be made available to any person except as authorized under this Stipulation and Order.  Confidential Material shall not be used for any purpose other than the prosecution or defense of claims asserted in this action.  In no event shall any person receiving Confidential Material use it for commercial or competitive purposes or make any public disclosure of its contents.

PROCEDURE FOR CHALLENGING "CONFIDENTIAL" DESIGNATIONS AND DISCLOSURES MADE THEREUNDER:

8.      In the event any party objects to the designation of Confidential Material as "CONFIDENTIAL--RESTRICTED ACCESS," the objecting party shall notify the Designating Party in writing within fifteen (15) days.  The parties shall then meet and confer in an effort to resolve any such dispute informally. In the event that the dispute is not resolved informally, the objecting party may apply to the Court for either a ruling changing the designation of the Item in dispute to "CONFIDENTIAL" or a ruling that the Item is not Confidential Material.  The "CONFIDENTIAL--RESTRICTED ACCESS" designation of any Item for which such an application is made shall be maintained until the Court rules on the application.  Such a dispute shall not be grounds for delay of or refusal to permit further discovery.

9.      In the event any party objects to the designation of Confidential Material as "CONFIDENTIAL," the objecting party shall notify the Designating Party in writing within fifteen (15) days.  The parties shall then meet and confer in an effort to resolve any such dispute informally.  In the event that the dispute is not resolved informally, the objecting party may apply to the Court for a ruling that the Item is not Confidential Material. The "CONFIDENTIAL" designation of any Item for which such an application is made shall be maintained until the Court rules on the application.  Such a dispute shall not be grounds for delay of or refusal to permit further discovery.

NO ADMISSION

     10.    This Stipulation and Order is not, and shall not be construed as an admission by any party that any information provided in this case and not designated CONFIDENTIAL is not proprietary or confidential information.

RETURN OR DISPOSAL OF CONFIDENTIAL INFORMATION

     11.    Within sixty days after termination of this case and the expiration of time for any challenges, all originals and copies of Confidential Material shall be returned to the Designating Party, or, at the direction of the Court or Designating Party, be destroyed. All extracts from Confidential Material, summaries and compilations thereof, and all written, graphic, and recorded versions of information therein shall be destroyed by each recipient of the Confidential Material so summarized, compiled or copied. Furthermore, the termination of this action shall not thereafter relieve the parties of the obligation of maintaining the confidentiality of all Confidential Material received pursuant to this Stipulation and Order.

ADDITIONAL PROTECTION OF CONFIDENTIAL MATERIAL

     12.    Nothing herein shall be deemed to preclude any party from producing Items in redacted form or from asserting, seeking or obtaining, on an appropriate showing, such additional protection as that party may deem appropriate.

COUNTERPARTS

     13.    This stipulated protective order may be executed in one or more counterparts, all of which, when taken together, shall be deemed to constitute one and the same agreement. Faxed or electronically stored signatures shall be treated as original ink signatures.

Dated: March __, 2007        DEAN BOLAND, Attorney at law


                      By: _____
                            DEAN BOLAND
                      Attorney for Plaintiff, John Doe


                      By: _____
                            BRANDIE HAWKINS
                      Attorney for Plaintiff, John Doe

Dated: March__, 2007          KERGER& ASSOCIATES


                              By: _____
                                  RICHARD M. KERGER
                              Attorneys for Specially Appearing Defendant
                              Experienced Internet.com, Inc.




Dated: March __, 2007          THE KAUFMAN LAW GROUP


                              By: _____
                                  DANA MILMEISTER
                              Attorneys for Specially Appearing Defendant
                              Experienced Internet.com, Inc.


Dated: March __, 2007          JAFFE RAITT HEUER & WEISS


                              By: _____
                                  SCOTT R. TORPEY
                              Attorneys for Specially Appearing Defendant
                              Cyber Flow Solutions, Inc.


Dated: March __, 2007          KRAVITZ, BROWN & DORTCH, LLC



                              By: _____
                                  MICHAEL D. DORTCH
                              Attorneys for Specially Appearing Defendants
                              Stallion.Com FSC Limited, DNR, and
                              Manic Media


                        **O R D E R**

APPROVED AND SO ORDERED:


DATED:

                              _____
                              The Hon. Jack Zouhary

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| John Doe, | ) | Case No. 3:07CV604 |
| | ) | |
| | ) | Hon. Jack Zouhary |
| Plaintiff, | ) | |
| | ) | **STIPULATED PROTECTIVE** |
| | ) | **ORDER** |
| v. | ) | |
| | ) | Richard M. Kerger (0015864) |
| | ) | KERGER & ASSOCIATES |
| SexSearch.com, et al., | ) | 33 S. Michigan Street, Suite 100 |
| | ) | Toledo, Ohio 43604 |
| | ) | Telephone: (419) 255-5990 |
| Defendants. | ) | Fax: (419) 255-5997 |
| | ) | |
| | ) | Counsel for Specially Appearing |
| | ) | Defendant Experienced Internet.com, |
| | ) | Inc. |
| | ) | |

        The undersigned acknowledges receipt and review of the protective order previously

entered into in this matter, understands the terms and conditions thereof, is among those

"qualified" persons specified therein as entitled to review "Confidential Material," as

defined therein, and agrees to be bound by the terms of such Order.  Upon the termination

of this action, the undersigned also agrees to cause the return of all such documents,

including all copies or notes thereof, to the counsel for the party who produced such

document.


Date:


                    By:_____

**Dana Milmeister**

| | |
|---|---|
| **From:** | Dean Boland [dean@deanboland.com] |
| **Sent:** | Monday, April 02, 2007 9:20 PM |
| **To:** | Dana Milmeister; Mike Dortch |
| **Subject:** | Protective Order Offer |

Ms. Milmeister and Mr. Dortch:

I will be discussing your proposed protective order with co-counsel this week.

Dean Boland.



dean boland, attorney at law
www.deanboland.com
dean@deanboland.com
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
216.803.2131 fax

**EXHIBIT E**

# Kravitz, Brown & Dortch, LLC

### Attorneys at Law

Max Kravitz
Janet Kravitz
Paula Brown
Michael D. Dortch
Jacob Cairns
Lori A. Catalano
Kristopher A. Haines

145 East Rich Street
Columbus, Ohio 43215-5240
614.464.2000
fax 614.464.2002

mdortch@kravitzllc.com

April 6, 2007

*Of Counsel:*
William H. Bluth*
*Also admitted in NY

### *VIA TELECOPIER: 866.455.1267*

Dean Boland, Esq.
18123 Sloane Avenue
Lakewood, OH 44107

> Subject:  Doe v. Sexsearch.com, et al.
> U.S. District Court, Northern District of Ohio
> Case No. 3:07 CV 604

Dear Mr. Boland:

This letter will confirm our conversation yesterday morning during the course of which I informed you that you have failed to name as a defendant in the above captioned action the entity that actually operates the sexsearch.com website.

I told you the entity that operates the sexsearch.com website is named Cytek, Ltd. ("Cytek"). Further, I told you that Cytek is in fact in possession of assets necessary to the conduct of its business, and I specifically informed you that Cytek receives all cash generated by memberships sold to users of the sexsearch.com website. As a result, Cytek is the proper party defendant for purposes of your client's theories.

On behalf of Cytek, I also offered its voluntary appearance in this litigation. I explained that Cytek is concerned that it is unfair to require the individuals and the entities you have sued to bear the burden of demonstrating the Court's lack of personal jurisdiction over them, as well as the burden of trying to "prove" to your satisfaction that they should not be compelled to defend themselves against your client's claims even if the Court does have jurisdiction over them.

I asked that in return for Cytek's voluntary appearance, you agree, for the benefit of all defendants, to stipulate to stay discovery regarding all preliminary issues and the need to move or plead to your complaint. I stated that I expected the stay to remain in effect until a reasonable period after the Court rules upon a Rule 12(B)(6) motion to dismiss, which Cytek is preparing to file. As I explained, if the Court determines your claims are meritless as applied to even the proper defendant, there is simply no reason to put any of the defendants – or your client for that matter — through the burden and expense of addressing the multiple preliminary issues.

On the other hand, if the Court determines that you have stated a claim upon which relief might be granted against Cytek, the proper entity would then be a party to the action, having voluntarily submitted to the Court's jurisdiction and you would avoid any issues with service or jurisdiction. If you still insisted on maintaining the claims against those improper parties, we could then litigate the jurisdictional issues.

You declined my offer, stating that you are concerned with the liability of co-owners, officers, shareholders, affiliates and others. I simply do not understand your response. A man is not required to personally satisfy a judgment against General Motors in a product liability case merely because he both works for the company and owns shares in it.

I decided, therefore, to submit my offer to you again, in written form. I do not understand why you would decline the offer, since all of the defendants would remain so unless and until the Court rules that the complaint fails to state a claim upon which relief can be granted. At that point, if any claims are remaining, we could litigate the jurisdictional issues. Your client is not giving up any procedural or substantive rights; we would merely be delaying a costly and time-consuming process that might ultimately be unnecessary. I hope you will reconsider and agree to put this matter on a more logical footing.

Very truly yours,

Michael D. Dortch

cc:     Brandie Hawkins, Esq.
        Dana Milmeister, Esq. (The Kaufman Law Group)
        Richard M. Kerger, Esq. (Kerger & Associates)
        Scott Torpey, Esq. and William Adams, Esq. (Jaffe, Rait, Heur & Weiss)
        Louis Columbo, Esq. and James Slater, Jr., Esq. (Baker & Hostetler, LLP)
        Max Kravitz, Esq.

**EXHIBIT F**

launches **Psychic Whois**
AJAX-ified *beta*

Welcome **danamilmeister**    Logout    My Account

| Whois › | Domain Suggestions › | For Sale › | Auctions › | Advanced Auctions › | Domain Search › | Domain Monitor |

| Domain Directory › | Ping › | Traceroute › | My IP Address › | Cheap Domain Name Registration | Bulk Check | *more* › |

| **Power Tools:** | Reverse IP | Domain History | Mark Alert | Name Server Spy *new* | Advanced Auction | XML API |

## Domain History

**Enter a domain name to get its history**

Domain Name: [ sexsearch.com ]   [ Search ]

**356** records found for **sexsearch.com**

Red links are a privacy protected record

Similar records are grouped by background color

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| 2003-01-04 | 2004-01-14 | 2005-01-02 | 2006-01-07 | 2007-01-03 |
| 2003-02-22 | 2004-01-23 | 2005-01-03 | 2006-01-09 | 2007-01-07 |
| 2003-06-17 | 2004-02-05 | 2005-01-12 | 2006-01-12 | 2007-01-16 |
| 2003-07-19 | 2004-02-07 | 2005-01-13 | 2006-01-13 | 2007-01-18 |
| 2003-08-06 | 2004-02-17 | 2005-01-14 | 2006-01-16 | 2007-01-25 |
| 2003-08-30 | 2004-03-05 | 2005-01-21 | 2006-01-18 | 2007-01-26 |
| 2003-09-18 | 2004-03-14 | 2005-01-22 | 2006-01-26 | 2007-01-27 |
| | 2004-03-20 | 2005-01-23 | 2006-01-27 | 2007-02-05 |
| | 2004-03-23 | 2005-01-25 | 2006-01-29 | 2007-02-07 |
| | 2004-03-25 | 2005-02-01 | 2006-02-04 | 2007-02-08 |
| | 2004-03-30 | 2005-02-04 | 2006-02-05 | 2007-02-10 |
| | 2004-03-31 | 2005-02-06 | 2006-02-07 | 2007-02-19 |
| | 2004-04-09 | 2005-02-09 | 2006-02-09 | 2007-02-21 |
| | 2004-04-28 | 2005-02-10 | 2006-02-11 | 2007-02-22 |
| | 2004-04-29 | 2005-02-11 | 2006-02-12 | 2007-02-23 |
| | 2004-05-09 | 2005-02-12 | 2006-02-13 | 2007-02-28 |
| | 2004-05-17 | 2005-02-14 | 2006-02-14 | 2007-03-02 |
| | 2004-05-18 | 2005-02-15 | 2006-02-15 | 2007-03-03 |
| | 2004-05-19 | 2005-02-15 | 2006-02-16 | 2007-03-04 |
| | 2004-05-22 | 2005-02-15 | 2006-02-17 | 2007-03-05 |
| | 2004-05-24 | 2005-02-15 | 2006-02-22 | 2007-03-07 |
| | 2004-05-25 | 2005-02-17 | 2006-02-24 | 2007-03-08 |
| | 2004-05-27 | 2005-02-18 | 2006-02-25 | 2007-03-09 |
| | 2004-06-02 | 2005-02-22 | 2006-03-07 | 2007-03-10 |
| | 2004-06-09 | 2005-02-24 | 2006-03-10 | 2007-03-11 |
| | 2004-06-10 | 2005-02-25 | 2006-03-15 | 2007-03-12 |
| | 2004-06-14 | 2005-03-02 | 2006-03-20 | 2007-03-14 |
| | 2004-06-15 | 2005-03-10 | 2006-03-21 | 2007-03-15 |
| | 2004-06-16 | 2005-03-11 | 2006-03-30 | 2007-03-16 |
| | 2004-06-18 | 2005-03-12 | 2006-03-31 | 2007-03-17 |
| | 2004-06-19 | 2005-03-21 | 2006-04-01 | 2007-03-24 |
| | 2004-06-24 | 2005-03-22 | 2006-04-04 | 2007-03-25 |
| | 2004-06-27 | 2005-03-23 | 2006-04-20 | 2007-03-27 |
| | 2004-06-29 | 2005-03-24 | 2006-04-25 | 2007-03-30 |
| | 2004-07-02 | 2005-03-29 | 2006-04-26 | 2007-04-02 |
| | 2004-07-05 | 2005-03-30 | 2006-04-28 | |

| | | |
|---|---|---|
| 2004-07-06 | 2005-04-02 | 2006-05-02 |
| 2004-07-07 | 2005-04-06 | 2006-05-03 |
| 2004-07-13 | 2005-04-08 | 2006-05-06 |
| 2004-07-14 | 2005-04-15 | 2006-05-08 |
| 2004-07-15 | 2005-04-19 | 2006-05-11 |
| 2004-07-17 | 2005-04-26 | 2006-05-13 |
| 2004-07-20 | 2005-05-03 | 2006-05-16 |
| 2004-07-26 | 2005-05-08 | 2006-05-17 |
| 2004-07-27 | 2005-05-10 | 2006-05-21 |
| 2004-07-30 | 2005-05-12 | 2006-05-22 |
| 2004-08-02 | 2005-05-15 | 2006-05-23 |
| 2004-08-05 | 2005-05-16 | 2006-05-24 |
| 2004-08-06 | 2005-05-17 | 2006-05-30 |
| 2004-08-07 | 2005-05-18 | 2006-06-08 |
| 2004-08-10 | 2005-05-21 | 2006-06-10 |
| 2004-08-18 | 2005-06-01 | 2006-06-14 |
| 2004-08-20 | 2005-06-02 | 2006-06-27 |
| 2004-08-21 | 2005-06-03 | 2006-06-28 |
| 2004-08-23 | 2005-06-06 | 2006-06-29 |
| 2004-08-24 | 2005-06-07 | 2006-06-30 |
| 2004-08-30 | 2005-06-10 | 2006-07-03 |
| 2004-09-05 | 2005-06-13 | 2006-07-04 |
| 2004-09-07 | 2005-06-16 | 2006-07-05 |
| 2004-09-09 | 2005-06-19 | 2006-07-17 |
| 2004-09-10 | 2005-06-21 | 2006-07-24 |
| 2004-09-12 | 2005-06-22 | 2006-07-25 |
| 2004-09-18 | 2005-06-23 | 2006-07-26 |
| 2004-09-20 | 2005-06-28 | 2006-07-29 |
| 2004-09-21 | 2005-07-01 | 2006-08-01 |
| 2004-09-29 | 2005-07-02 | 2006-08-05 |
| 2004-10-01 | 2005-07-12 | 2006-08-07 |
| 2004-10-02 | 2005-07-14 | 2006-08-11 |
| 2004-10-04 | 2005-07-15 | 2006-08-12 |
| 2004-10-06 | 2005-07-20 | 2006-08-24 |
| 2004-10-07 | 2005-07-24 | 2006-08-27 |
| 2004-10-08 | 2005-07-26 | 2006-08-31 |
| 2004-10-09 | 2005-07-27 | 2006-09-03 |
| 2004-10-12 | 2005-07-29 | 2006-09-05 |
| 2004-10-21 | 2005-08-01 | 2006-10-03 |
| 2004-10-28 | 2005-08-02 | 2006-10-04 |
| 2004-10-29 | 2005-08-05 | 2006-10-05 |
| 2004-10-31 | 2005-08-06 | 2006-10-06 |
| 2004-11-04 | 2005-08-10 | 2006-10-10 |
| 2004-11-10 | 2005-08-15 | 2006-10-16 |
| 2004-11-11 | 2005-08-18 | 2006-10-17 |
| 2004-11-13 | 2005-08-23 | 2006-10-20 |
| 2004-11-16 | 2005-08-25 | 2006-10-23 |
| 2004-11-17 | 2005-08-27 | 2006-10-25 |
| 2004-11-18 | 2005-09-01 | 2006-10-26 |
| 2004-11-21 | 2005-09-02 | 2006-11-09 |
| 2004-11-23 | 2005-09-04 | 2006-11-14 |

| | | |
|---|---|---|
| 2004-11-26 | 2005-09-11 | 2006-11-17 |
| 2004-11-28 | 2005-09-12 | 2006-11-20 |
| 2004-12-01 | 2005-09-23 | 2006-11-22 |
| 2004-12-02 | 2005-09-27 | 2006-11-24 |
| 2004-12-04 | 2005-09-28 | 2006-11-29 |
| 2004-12-10 | 2005-10-03 | 2006-12-07 |
| 2004-12-13 | 2005-10-04 | 2006-12-08 |
| 2004-12-17 | 2005-10-11 | 2006-12-15 |
| 2004-12-21 | 2005-10-20 | 2006-12-18 |
| 2004-12-22 | 2005-10-26 | 2006-12-20 |
| 2004-12-28 | 2005-11-01 | 2006-12-27 |
| | 2005-11-03 | 2006-12-28 |
| | 2005-11-07 | 2006-12-29 |
| | 2005-11-08 | 2006-12-30 |
| | 2005-11-09 | |
| | 2005-11-16 | |
| | 2005-11-20 | |
| | 2005-11-23 | |
| | 2005-11-24 | |
| | 2005-11-29 | |
| | 2005-12-05 | |
| | 2005-12-06 | |
| | 2005-12-07 | |
| | 2005-12-22 | |
| | 2005-12-23 | |
| | 2005-12-26 | |
| | 2005-12-29 | |
| | 2005-12-30 | |

 Members Area | Hosting Metrics | Stock Ticker | Download | Domain Registration | Whois | Domain Suggestions | Site Map:

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been electronically filed this 9th day of April, 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's System.


/s/ Gary Jay Kaufman