UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Doe,

        PLAINTIFF,

vs.

SexSearch.com, et al.,

        DEFENDANT(S).

Case No.: 3:07-cv-604

Judge Jack Zouhary

RESPONSE IN OPPOSITION TO
DEFENDANTS MOTIONS TO DISMISS FOR
FAILURE TO STATE A CLAIM UNDER
FEDERAL CIVIL RULE 12(B)(6)

    Now comes Plaintiff, John Doe, by and through his undersigned Counsel and respectfully requests this Honorable Court deny Defendants' motions to dismiss this case for failure to state a claim upon which relief can be granted under Federal Civil Rule of Procedure 12(b)(6) for the reasons contained in the attached memorandum.

1

**MEMORANDUM**

On April 13, 2007, Defendants filed several motions to dismiss on various grounds. (Dkt. #113, 117, 118, 123, 141). This Court ordered that all of those motions except Dkt. #123 be held in abeyance. (Dkt. # 142). Following a phone status conference with the court on April 26, 2007, the court directed that Plaintiff address, solely, Defendants' arguments relating to 12(b)(6) in its initial response. (Dkt. #142). The court halted all discovery and rulings on any motions by Plaintiff seeking Defendants' comply with the court's orders regarding discovery. (Id).

Plaintiff is submitting this response solely to the claims in Defendants' motion to dismiss Dkt. #123 relating to 12(b)(6) pursuant to the court's order.

Plaintiff's response to Dkt. # 123 is a response to all the filed motions to dismiss that are incorporating those arguments as well.

CDA Preemption and Immunity Argument

Defendants' first argument is not dependent on 12(b)(6) in the traditional sense. In essence, Defendants' argue that even if the complaint is well plead and all plead facts proven at trial, the Communications Decency Act of 1996 (hereinafter referred to as the "CDA") prohibits Plaintiff from recovering as a matter of law. They also claim that the "CDA" preempts Ohio's Consumer Sales Practices Act (hereinafter referred to as the "OCSPA"). Finally, they claim that the "CDA" immunizes Defendants' from liability, therefore, making it impossible for Plaintiff's claims to survive a motion to dismiss. The "CDA" has no such effect.

Defendants' maintain that "OCSPA" is preempted by the enactment of the "CDA." Their contentions are without merit.

> The preemption of state law causes of action is mandated, in certain
> circumstances, by the Supremacy Clause of the United States
> Constitution, which directs that 'the Laws of the United States…shall be
> the Supreme Law of the Land; and the judges in ever State shall be
> bound thereby, any Thing in the Constitution of Law of any State to the

Contrary notwithstanding.'

Zeran v. American Online, Inc., 958 F.Supp. 1124 (1997) citing U.S. Const. art. VI §2; see also, McCulloch v. Maryland, 17 U.S. 316 (1819). "Preemption clause analysis properly being with 'the assumption that Congress did not intend to displace state law.'" Id. citing Maryland v. Louisiana, 451 U.S. 725 (1981). In essence, the analysis under preemption is whether federal laws via statutes, regulations and/or treaties should preempt or prevail over any inconsistent state law whether it is in the form of a state constitution, regulation, and/or statute. It is the notion that Congress intended to displace or oust state law in any given area. States, however, can complement federal law. Metophorically, federal law is the ceiling and state law is the floor. States are, clearly, able to grant rights more extensive than their federal counterparts as long as those rights are not inconsistent. There are essentially two (2) forms of preemption:

1. express or implied; or

2. a direct conflict

Id. at 1129 citing Feikema v. Texaco, Inc., 16 F.3d 1408, 1412 (4th Cir. 1994).

In the instant Matter, Defendants' dispute that "Plaintiff's claims that the T[erms][]A[nd][]C[onditions] violated the Ohio Consumer [sic] Practice Act (the "Act") and are unconscionable are likewise misplaced. The CDA pre-empts the Act." (Dkt. #93 at 3). Defendants do not assert which form of preemption is applicable in the case sub judice. There is clearly no expressed provision in the "CDA" found at 47 U.S.C. Section 230 preempting the "OCSPA." 47 U.S.C. §230. And, there is no direct conflict between the language of the "OCSPA" and the "CDA" which would render an apparent conflict. Id. Therefore, the only reasonable assumption would be that Defendants' are arguing there is an implied preemption. However, within the "CDA" there is a subsection directly on point, it reads in pertinent part:

(e) Effect on other laws.

3

    (3) State law. Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

Id. The Northern District of California addressed this issue in Anthony v. Yahoo!, Inc., 421 F.Supp.2d 1257 (2006). The Anthony case involved deceptive profiles which Anthony alleged were deliberately posted by Yahoo! in an attempt to seduce membership, and also, that Anthony was forwarded expired profiles by Yahoo!. Id. Yahoo! argued that the "CDA" barred his claims for fraud and negligent misrepresentation. Id. Yahoo! also claimed that it could not be held liable based on the profile content under the "CDA." Id. The District Court found that the claims made by Yahoo! swept too broadly. Id. The District Court was aware of no case where a defendant was immunized under the "CDA" from allegations that it created tortious content. Id. The Anthony Court, then, went on to differentiate all of the prior cases involving the "CDA" only to surmise that the "CDA" applied to invasion of privacy, misappropriated of the right of publicity, defamation and negligence claims relating to a third party's creation of a false profile using Plaintiff's identity. Id. The "CDA" only immunizes information provided by another information content provider.

    In Anthony this issue was whether Yahoo! actually created the fraudulent profiles. In the instant action, the issue is whether under the "CDA" the degree of control over the profiles that the Sexsearch Website maintains is to such a degree that it would be labeled as an Information Content Provider under section (f)(3), rather than, the immunized Interactive Computer Service Provider under section (f)(2).

    An Information Content Provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. §230(f)(3). An Interactive Computer Service Provider

under section (f)(2) is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such system operate or services offered by libraries or educational institutions." The Sexsearch Website reserves the right, and does in fact, modify the content of profiles when they do not meet the profile guidelines and as such they are responsible in whole or part for the creation of development of the information. Dkt. #9, Exhibit 84 at p. 233, 234. Therefore, it follows that they are an Information Content Provider that finds no immunity under the "CDA."

Anthony was successful even though third parties created the profiles because the "CDA" only protected Yahoo! as a publisher or speaker and not against his claims of misrepresentation. He was likewise successful because Anthony challenged the manner of presentment of the fraudulent profiles, rather than, the underlying profiles themselves. That is precisely why Plaintiff is asserting the content of the profiles are not at issue. It is the fact that a minor was on the Sexsearch Website, and not, the content of that minor's profiles that is at issue. It is the difference between apples and oranges. As a side note, new information has come to light that would tend to indicate that the Sexsearch Website may be engaging in the creation of fraudulent profiles. Plaintiff will soon be seeking to amend his Complaint to add additional causes of action similar to those articulated in Anthony.

Plaintiff contends based on the foregoing that Sexsearch Website is an Information Content Provider under the "CDA," and as such has no immunity. Plaintiff, further, asserts that the content of the pages are not at issue, consequently, the "CDA" is inapplicable. Moreover, the "CDA" does not preempt state law with respect to the claims presented by Plaintiff, other than, those claims relating to defamation which are not present in this causes of action.

Next, Defendants attacks each of the causes of action. Therefore, Plaintiff will respond in order for efficiency and organizational purposes.

5

Sixth Circuit Standard for Analysis of Motion to Dismiss Claims

The standard of review for the Sixth Circuit for a motion to dismiss is as follows:

1. The district court must construe the complaint in a light most favorable to the plaintiff, accepting all of the factual allegations as true. Allard v. Weitzman (In Re DeLorean Motor Co.), 991 F.2d 1236, 1239-40 (6th Cir.1993); Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993).

2. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Allard, 991 F.2d at 1240; Mayer, 988 F.2d at 638.

3. A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Allard, 991 F.2d at 1240; Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir.1990).

4. A complaint satisfies 12(b)(6) it if contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988).

A motion to dismiss is not a motion for summary judgment. The legal standards are different. "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment [only] if 'matters outside the pleading are presented to and not excluded by the court.'" Abbott v. Michigan 474 F.3d 324 (C.A. 6 2007).

The provision of 12(b)(6) that states that such a motion shall be treated as a summary judgment motion if "matters outside the pleading are presented to and not excluded by the court," mandates that in such event, parties must be "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Stringfield v. Graham, 212 Fed.Appx. 530 (C.A.6 2007).

In this case, the court specifically halted all discovery and did not address Defendants' failure to provide discovery to Plaintiff, effectively, preventing Plaintiff from presenting any such evidence "outside the pleadings." (Dkt. #142). Plaintiff treats Defendants' motion as a motion to dismiss and not a motion for summary judgment. Further, the contents of any materials outside the pleadings,

6

specifically any of the declarations submitted by Defendants, are also irrelevant to the issues of the Defendants' motion.

The only remaining question for the court as to Defendants' 12(b)(6) argument is whether the allegations in the complaint, accepted as true, establish a cause of action for which this Court can grant relief.

The complaint contains two hundred and eighty nine (289) separate factual allegations prior to the paragraphs reciting the first of fourteen (14) causes of action. (See, Complaint). Those factual allegations are incorporated into each cause of action. (Id.).

The fourteen (14) causes of action are plead in paragraphs 290 – 396. The complaint alleges all the necessary elements of each cause of action.

<u>Defendants Improperly Argue Facts</u>

Plaintiff has provided a redacted copy of the Defendants' motion with the arguments unrelated to 12(b)(6) lined out. (Exhibit 1). Also lined out are any portions that argue facts as to why Plaintiff's cause of action cannot succeed. As noted above, for purposes of Defendants' motion, there are no factual disputes to be decided by the court pursuant to a 12(b)(6) motion to dismiss. All facts are presumed proven just as they are alleged in the complaint. All arguments of Defendants such as "As a matter of law, Plaintiff <u>cannot establish</u> the elements of a special relationship with any of the defendants, which is a necessary element of the negligent misrepresentation claim; and he <u>cannot establish</u> reasonableness" (Dkt. # 123 at 16) are irrelevant as they pose claims of factual disputes. (Emphasis added).

<u>1st Cause of Action - Breach of Contract</u>

Under Ohio law, "to prove breach of contract, a plaintiff must demonstrate the following elements by a preponderance of the evidence: (1) that a contract existed; (2) that the plaintiff fulfilled his obligations; (3) that the defendant failed to fulfill his obligations; and (4) that damages resulted

7

from this failure." <u>Lawrence v. Lorain Cty. Community College</u>, 127 Ohio App. 3d 546, 548-49 (Ohio App. 9 Dist., 1998).

In allegations 290-298, Plaintiff pleads each of the elements sufficient to establish a breach of contract, and the requisite facts to establish said breach.

2nd Cause of Action – Fraud

The elements of fraud are a "representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." <u>Gaines v. Preterm-Cleveland, Inc</u>., 33 Ohio St.3d 54, 55 (1987).

In allegations 299-305, Plaintiff pleads each of the elements sufficient to establish fraud, and the requisite facts to establish said cause of action.

3rd Cause of Action – Negligent Infliction of Emotional Distress

The elements of negligent infliction of emotional distress are as follows: "the emotional injuries suffered must be (1) serious and (2) reasonably foreseeable as a result of a reasonable person's reaction to the circumstances." <u>Paugh v. Hanks</u>, 6 Ohio St.3d 72 (1983).

In allegations 306-313, Plaintiff pleads each of the elements sufficient to establish negligent infliction of emotional distress, and the required facts to establish this cause of action.

4th Cause of Action – Negligent Misrepresentation

This cause of action has the following elements: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise

8

reasonable care or competence in obtaining or communicating the information." <u>Delman v. City of Cleveland Heights</u>, 41 Ohio St.3d 1, 4 (1989).

In allegations 314-320, Plaintiff pleads each of the elements sufficient to establish negligent misrepresentation, and the requisite facts to establish said cause of action.

<u>5th Cause of Action – Breach of Warranty</u>

This cause of action has the following elements:  1) the existence of a warranty, 2) that the product or service did not perform as warranted, 3) that customer gave vendor reasonable notice of the defects or failure if known and 4) that customer was injured as a result of the defect or failure. <u>Litehouse Products, Inc. v. A.M.I. International, Ltd</u>.1984 WL 4539 Ohio App. 1984. (Ohio App. 8. Dist., 1984).

<u>Preliminary Matter Regarding Ohio Consumer Sales Practices Act Issues</u>

When determining whether an act or practice is deceptive under R.C. 1345.02 et seq., courts look at the incident from a consumer's standpoint. The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract. Furthermore, a deceptive act has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts. <u>Chesnut v. Progressive Cas. Ins. Co</u>., 166 Ohio App. 3d 299 (8th Dist. 2006). Along with the legal arguments and allegations in the complaint, the matter becomes for the court, did the Defendants "induce a state of mind" in Plaintiff that he was paying for a service that included children as potential participants in the sexual encounters it helped to arrange?  In the alternative, did Defendants "induce a state of mind" in Plaintiff that he was paying for a service introducing him to other adults for sexual encounters?

<u>6th Cause of Action – Violation of the Ohio Consumer Sales Practices Act – False disclaimer of warranties</u>

The Ohio Revised Code Section 1345.02(B)(10) identifies a deceptive trade practice as one in which a business represents that a consumer transaction involves or does not involve a warranty, a

9

disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

In paragraphs 330-350, Plaintiff plead the essential elements of a violation of R.C. 1345.02(B)(10) and in the incorporated preceding paragraphs Plaintiff plead the necessary facts to constitute a deceptive trade practices act.

<u>7th Cause of Action – Violation of the Ohio Consumer Sales Practices Act – Fraudulent misrepresentation regarding service</u>

Ohio Revised Code Section 1345.02(A) identifies the representation of a service that is false as a deceptive trade practice. Defendants' committed an unfair and deceptive act or practice in violation of R.C. 1345.02(A) by including a representation for their service that it does not contain any persons under the age of 18 years of age when such representation is false.

In paragraphs 351-355, Plaintiff plead the essential elements of a violation of R.C. 1345.02(A) sufficient to establish this cause of action with accompanying facts.

<u>8th Cause of Action – Violation of the Ohio Consumer Sales Practices Act – Limitation of Damages in Consumer Contract</u>

Defendants' have committed unfair, deceptive and unconscionable acts or practices in violation of R.C. 1345.02(A) and R.C. 1345.03 by incorporating in their consumer contract a clause limiting damages for its breach to the amount of the contract. Courts have held that a limitation of damages clause such as that in this contract is a <u>de facto</u> deceptive trade practice. "Defendants Thermal Seal and Gutter Helmet have committed unfair, deceptive and unconscionable acts or practices in violation of R.C. 1345.02(A) and 1345.03 by incorporating in their consumer contracts a clause limiting damages for breach of implied warranties to the amount of the contract." <u>State v. Thermal Seal</u>, 2001 WL 1841771.

In paragraphs 356-359, Plaintiff plead the essential elements of a violation of R.C. 1345.02(A) and R.C. 1345.03 for improperly limiting the damages in the contract with Plaintiff and the accompanying facts related to the allegations.

1

<u>9th Cause of Action – Violation of the Ohio Consumer Sales Practices Act – Inclusion of uni-lateral right to cancel contract beyond 3-day cancellation rule</u>

Defendants' committed unfair, deceptive and/or unconscionable acts or practices in violation of R.C. 1345.02(A) and R.C. 1345.03(A) by incorporating a clause in its consumer contracts that allows the supplier to unilaterally cancel the contract after the consumer's three (3) day right to cancel has passed without allowing the consumer the same option.  See, <u>Thermal Seal</u>, <u>supra</u>.

In paragraphs 360-363, Plaintiff plead the essential elements of a violation of R.C. 1345.02(A) and R.C. 1345.03(A) as noted above and all essential facts.

<u>10th Cause of Action – Violation of Ohio Consumer Sales Practices Act – Unconscionable Contract Terms</u>

Defendants' committed unfair, deceptive and unconscionable acts or practices in violation of R.C. 1345.02(A) and R.C. 1345.03(A) by including clauses being so substantially one-sided in favor of the supplier as to constitute unconscionable contract terms in violation of R.C. 1345.03(B)(5).  This cause of action is recognized under Ohio law.  See, <u>Thermal Seal</u>, <u>supra</u>.

In paragraphs 364-367, Plaintiff plead the essential elements of a violation of R.C. 1345.02(A) and R.C. 1345.03(A) as noted above and the necessary facts.

<u>11th Cause of Action – Violation of Ohio Consumer Sales Practices Act – Requiring Consumer to agree to conditions that Defendants were not guaranteeing they would perform under the contract</u>

Defendants' committed unfair, deceptive and unconscionable acts and/or practices by requiring Plaintiff to agree to terms and conditions that contained no guarantee Defendants' would or could perform their contractual promises. This cause of action is recognized under Ohio law.  See, <u>Thermal Seal</u>, <u>supra</u>.

In paragraphs 368-371, Plaintiff plead the essential elements and facts to constitute a violation of the "OCSPA" as noted above.

<u>12th Cause of Action – Unconscionable Contract Term – Limitation of Liability</u>

1

Defendants' contract with Plaintiff contained a paragraph purporting to limit liability of the Defendants for a breach in the agreement to the amount of the contract. Such a limitation of liability is a violation of the "OCSPA." See Thermal Seal, supra.

In paragraphs 372-381, Plaintiff plead the essential elements and facts to constitute a violation of the "OCSPA" as noted above.

13th Cause of Action – Unconscionable Contract Term – Disclaimers on Liability

Paragraph 15 of Defendants' contract with Plaintiff contains the terms related to disclaimers by Defendant on all liability for breaches by Defendant. Such a term in a contract is unconscionable under Ohio law. See, Thermal Seal, supra.

In paragraphs 382-389, Plaintiff plead the essential elements and facts to constitute a violation of the "OCSPA" as noted above.

14th Cause of Action – Failure to Warn

The elements of this cause of action are as follows:

1. A duty to warn based upon knowledge of the dangerous condition
2. A breach of that duty
3. Damages flowing from that breach.

Freas v. Prater Constr. Corp., Inc., 60 Ohio St.3d 6, 8-9 (1991).

In paragraphs 390-396, Plaintiff plead the essential elements and facts of Failure to Warn.

Conclusion

The "CDA" does not preempt the "OCSPA." All of the causes of actions were properly plead in the complaint. Plaintiff included two hundred and eighty nine (289) separate factual allegations in addition to the fourteen (14) causes of action. Therefore, Defendants' joint motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be denied.

/s/Dean Boland
Dean Boland, 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
dean@deanboland.com
216.529.9371 phone
216.803.2131 fax
Attorney for John Doe

/s/Brandie L. Hawkins
Brandie L. Hawkins, 0078485
124 S. Metcalf Street
Lima Ohio 45801
419.225.5706 ph
419.225.6003 fax
Attorney for John Doe

**CERTIFICATE OF SERVICE**

A copy of the foregoing Plaintiff's Response to Defendants' Motions to Dismiss was served by operation of the court's electronic filing system on all parties on the date of its filing.

/s/Dean Boland
Dean Boland (0065693)

1