IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Doe,                                                         Case No. 3:07 CV 604

                                        Plaintiff,               MEMORANDUM OPINION
                                                                 AND ORDER

                    -vs-
                                                                 JUDGE JACK ZOUHARY
SexSearch.com, et al.,

                                        Defendants.


        This matter is before the Court on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6)

(Doc. No. 123) and Plaintiff's Motion to Strike Defendants' Joint Reply (Doc. No. 149).  The Court

has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  For the reasons detailed below,

Defendants' Motion is granted, and Plaintiff's Motion is denied.

                                        BACKGROUND

        Sexsearch.com (SexSearch) is a website offering an online adult dating service which

encourages its members to meet and engage in sexual encounters (Complaint ¶¶ 53, 96). Members

are permitted to provide information for a profile, which consists of a list of responses to specific

questions posed by the website. Members may also upload photographs and video content to their

profile (Complaint ¶¶ 121-22, 149, 151).

        Plaintiff John Doe became a gold member of SexSearch in October 2005 (Complaint ¶ 173).

Shortly thereafter, Plaintiff located Jane Roe's profile, which contained the following information:

Birthdate June 15, 1987; Age 18; an authentic image of Jane Roe at her then-current age; and the statement that her ideal match included a male "who could last for a long time" (Complaint ¶¶ 198, 205).

Plaintiff began chatting online through SexSearch with Jane Roe, and the two eventually decided to schedule a sexual encounter to take place at Jane Roe's home on November 15, 2005. The meeting went as planned, and Plaintiff and Jane Roe engaged in consensual sexual relations (Complaint ¶¶ 219, 222). However, as it turned out, Jane Roe was not actually 18, but a 14-year-old child.

On December 30, 2005, Plaintiff's home was surrounded by law enforcement officers, and he was arrested and charged with three separate counts of engaging in unlawful sexual conduct with a minor, all felonies of the third degree (Complaint ¶¶ 226-33). As a result of the charges, Plaintiff could face fifteen (15) years in prison, and a classification that might include lifetime registration as a sex offender (Complaint ¶¶ 235-36).

## **Procedural Posture**

On March 1, 2007, Plaintiff filed this Complaint, naming as Defendants the owners of SexSearch, which include: Sexsearch.com; Sexsearchcom.com; Cyber Flow Solutions, Inc.; Manic Media, Inc.; Stallion.com FSC Limited; DNR; Experienced Internet, Inc.; Fiesta Catering International, Inc.; Adam Small; Camelia Francis; Damian Cross; Ed Kunkel; Mauricio Bedoya; Patricia Quesada; and Richard Levine (Defendants) (Complaint ¶¶ 15-33, 40).  Defendants contend Defendant/Intervenor Cytek, Ltd. is the true owner of the SexSearch website and business, and thus is the only proper party.

2

The Court initially granted Plaintiff an Ex-Parte Temporary Restraining Order on March 2, 2007 (Doc. No. 11), which was extended on March 13, 2007 after Defendants failed to appear at a Preliminary Injunction Hearing (Doc. Nos. 25, 26).  After Defendants retained counsel and entered appearances, the Court held a Preliminary Injunction Hearing on April 16, 2007.  At this hearing, the Court denied Plaintiff's Motion for a Preliminary Injunction and vacated the existing TRO (Doc. No. 130).

Defendants have filed individual Motions to Dismiss, both on the merits (pursuant to Rule 12(b)(6)) and for lack of personal jurisdiction (pursuant to Rule 12(b)(2)) (Doc. Nos. 113, 117, 118, and 123).  For the sake of judicial economy, Defendant/Intervenor Cytek, Ltd. agreed to enter an appearance and waive all service of process and personal jurisdiction issues, allowing the Court to consider a Rule 12(b)(6) motion to dismiss on the merits before undertaking the weighty task of evaluating personal jurisdiction for each of the sixteen remaining Defendants (Doc. No. 110).  Defendants' Motions to Dismiss on Personal Jurisdiction Grounds were held in abeyance pending the outcome of their Motion on the merits (Doc. No. 142).

**Plaintiff's Claims**

Plaintiff alleges that upon becoming a member of SexSearch, he reviewed SexSearch's warranties, and agreed to SexSearch's Terms and Conditions and profile guidelines (Complaint ¶¶ 173-78). He contends Defendants warranted "all persons within this site are 18+" (Complaint ¶ 186).  It is also alleged SexSearch's contractual agreement included the Terms and Conditions, in which Defendants promised to review, verify and approve all profiles on its website and remove materials depicting minors (Complaint ¶¶ 188-92).  Plaintiff alleges the following fourteen claims:

3

1.      Count One alleges SexSearch breached its contract by permitting minors to become paid members, and by delivering a minor to Plaintiff for the purpose of sexual relations (Complaint ¶¶ 295-97).

2.      Count Two alleges Defendants engaged in fraud by representing that all persons on its site were over the age of 18, but allowed a minor to become a member and failed to remove her profile (Complaint ¶¶ 301, 303-04).

3.      Count Three alleges Defendants negligently inflicted emotional distress by failing to remove the profile of a minor from its website, and by delivering a minor to Plaintiff for the purpose of engaging in sexual relations (Complaint ¶ 307).

4.      Count Four alleges negligent misrepresentation because Defendants promised all members were adults, but failed to remove the profile of a minor (Complaint ¶ 316).

5.      Count Five alleges breach of warranty because Defendants warranted all paid members were persons 18 years of age or older but delivered a minor to Plaintiff for the purpose of engaging in sexual relations (Complaint ¶¶ 323, 325).

6.      Counts Six alleges Defendants committed a deceptive trade practice in violation of the Ohio Consumer Sales Practices Act by falsely warranting that no members were under the age of 18 (Complaint ¶¶ 342-43).

7.      Counts Seven alleges Defendants committed unfair and deceptive acts in violation of the Ohio Consumer Sales Practices Act by falsely representing that no members were under the age of 18 (Complaint ¶ 354).

8.      Count Eight alleges unconscionability in violation of the Ohio Consumer Sales Practices Act by incorporating into the contract a clause limiting damages to the amount of the contract (Complaint ¶ 358).

9.      Count Nine alleges unconscionability in violation of the Ohio Consumer Sales Practices Act by incorporating into the contract a clause allowing the supplier to unilaterally cancel the contract after the consumer's three (3) day right to cancel has passed without allowing the consumer the same option (Complaint ¶ 362).

10.     Count Ten alleges unconscionability in violation of the Ohio Consumer Sales Practices Act by including clauses in the contract that are substantially one-sided (Complaint ¶ 366).

4

11.     Count Eleven alleges unconscionability by requiring Plaintiff to agree to terms and conditions that contained no guarantee Defendants would or could perform their contractual promises (Complaint ¶ 370).

12.     Count Twelve alleges unconscionability by including a limitation on liability that was unreasonably favorable to Defendants (Complaint ¶¶ 375-78).

13.     Count Thirteen alleges unconscionability by including a clause in the contract disclaiming all liability (Complaint ¶ 383).

14.     Count Fourteen alleges Defendants failed to warn that minors may be members of the website (Complaint ¶¶ 393-95).

These fourteen causes of action essentially boil down to either (a) Defendants failed to discover Jane Roe lied about her age to join the website, or (b) the contract terms are unconscionable.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint.  In scrutinizing the Complaint, the Court is required to accept the allegations stated in the Complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the Complaint in a light most favorable to the Plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).  The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that Plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Westlake,* 537 F.2d at 858.  *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2003).

5

**DISCUSSION**

**Immunity under the Communications Decency Act**

Defendants first argue they are immune from most of Plaintiff's claims by the Communications Decency Act (CDA), 47 U.S.C. § 230. More specifically, they contend an interactive computer service cannot be held liable on **any** state or federal claim which would render that service liable for content provided by third parties, and thus the CDA bars Plaintiff's claims based on the purported failure of the website to prevent Jane Roe from misrepresenting her age.  These claims are: (1) breach of contract (First cause of action); (2) fraud (Second cause of action); (3) negligent infliction of emotional distress (Third cause of action); (4) negligent misrepresentation (Fourth cause of action); (5) breach of warranty (Fifth cause of action); (6) violation of the Ohio Consumer Sales Practices Act (Sixth and Seventh causes of action); and (7) failure to warn (Fourteenth cause of action) (Def. Reply, p. 4).

Plaintiff responds that because SexSearch reserves the right to modify the content of profiles when they do not meet the profile guidelines, they are an information content provider and thus not immune under the CDA. In the alternative, Plaintiff argues the CDA only preempts claims relating to defamation (Pl. Opp., p. 5).

Section 230 of the CDA states "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* at § 230(e)(3). Thus, Defendants are immune from liability from state law claims if: (1) SexSearch is a "provider or user of an interactive computer service"; (2) the claim is based on "information provided by another

6

information content provider"; and (3) the claim would treat SexSearch "as publisher or speaker" of that information. *Universal Commun. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).

Although the Sixth Circuit has yet to interpret this section, "[n]ear-unanimous case law holds that Section 230(c) affords immunity to [interactive computer services (ICSs)] against suits that seek to hold an ICS liable for third-party content." *Eckert v. Microsoft Corp.*, No. 06-11888, 2007 U.S. Dist. LEXIS 15295, at *6 (E.D. Mich. Jan. 8, 2007) (quoting *Chi. Lawyers' Comm. for Civ. Rights Under the Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 688 (N.D. Ill. 2006)).

### "Interactive Computer Service" Provider

The statute defines interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Here, there is no question (and Plaintiff does not argue otherwise) that SexSearch is an interactive computer service, as the website "functions as an intermediary by providing a forum for the exchange of information between third party users." *Doe v. Myspace, Inc.*, 474 F. Supp.2d 843, 849 (W.D. Tex. 2007).

### "Information Provided by Another"

The statute defines information content provider to be "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, Plaintiff alleges SexSearch is an information content provider because the website "reserves the right, and does in fact, modify the content of profiles when they do not meet the profile guidelines and as such they are responsible in whole or part for the creation or development of the information" (Pl. Opp., p. 5).

7

In support of this contention, Plaintiff cites *Anthony v. Yahoo! Inc.*, 421 F. Supp.2d 1257 (N.D. Cal. 2006), in which the court found an online dating service not immune under Section 230 from claims it deliberately "create[d] false profiles." *Id.* at 1262.  The CDA clearly does not immunize a defendant from allegations that **it** created tortious content by itself, as the statute only grants immunity when the information that forms the basis for the state law claim has been provided by "**another** information content provider." 47 U.S.C. § 230(c)(1) (emphasis added); *Universal Commun. Sys.*, 478 F.3d at 419-20.

Although the court in *Anthony* noted that a website such as SexSearch may simultaneously be both an interactive computer service and an information content provider, the critical issue is whether SexSearch "acted as an information content provider with respect to the information that [Plaintiff] claim[s] is false." 421 F. Supp.2d at 1263, n. 6; *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) ("an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue"). While SexSearch may have reserved the right to modify the content of profiles in general, Plaintiff does not allege SexSearch specifically modified Jane Roe's profile, and is thus not an information content provider in this case. *See Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (upholding immunity for the on-line provision of stock information even though AOL communicated frequently with the stock quote providers and had occasionally deleted stock symbols and other information from its database in an effort to correct errors). Additionally, the mere fact SexSearch provided the questionnaire Jane Doe answered falsely is not enough to consider SexSearch the developer of the false profile. *See Carafano*, 339 F.3d at 1124-25.

8

<u>Treatment "as the Publisher"</u>

The last prong of Section 230 provides that SexSearch will be immune from liability if the state law claims would involve treating the website "as the publisher" of the false information.  47 U.S.C. 230(c)(1).

Plaintiff contends the CDA only applies to defamation cases, and hence is inapplicable to the present action. However, of the courts that have reviewed Section 230, there seems to be a consensus that its grant of immunity is broad and far reaching. *E.g.,Universal Commun. Sys.,* 478 F.3d at 418 ("[t]he other courts that have addressed these issues have generally interpreted Section 230 immunity broadly"); *Carafano*, 339 F.3d at 1123 ("reviewing courts have treated [Section 230] immunity as quite robust"). In fact, several courts have expressly held that the CDA's immunity is not limited only to claims of defamation.  *See Beyond Sys. v. Keynetics, Inc.*, 422 F. Supp.2d 523, 536 (D. Md. 2006) (applying Section 230 to a claim under the Maryland Commercial Electronic Mail Act); *Universal Commun. Sys.,* 478 F.3d at 421 (applying Section 230 to a claim under a Florida securities law and cyber-stalking law); *Novak v. Overture Services, Inc.*, 309 F. Supp.2d 446 (E.D.N.Y. 2004) (applying Section 230 to a claim of tortious interference with prospective economic advantage); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp.2d 532, 538 (E.D. Va. 2003) (applying Section 230 to a claim based on Title II of the Civil Rights Act of 1964).

In *Carafano*, a case in which the plaintiff unsuccessfully attempted to hold an online dating service liable for a third party's creation of a false profile that eventually led to the plaintiff receiving highly-threatening and sexually-explicit messages, the court explained the policy reasons underlying the CDA as follows:

9

> Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages . . . The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Carafano*, 339 F.3d at 1123-24 (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997) (holding AOL immune under Section 230 from claims it failed to remove a false advertisement after specific notice of its falsity)). Moreover, another important purpose of Section 230 is to remove "the disincentives of self-regulation that would otherwise result if liability were imposed on intermediaries that took an active role in screening content." *Universal Commun. Sys.,* 478 F.3d at 419 (citing *Zeran*, 129 F.3d at 331).

While both *Carafano* and *Zeran* speak only in terms of tort liability, as there was no occasion to address non-tort claims in those cases, their reasoning does not preclude Section 230 immunity from extending to Plaintiff's non-tort claims. Indeed, the plain language of Section 230 does not limit its grant of immunity to tort claims: "No **cause of action** may be brought and **no liability** may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. at § 230(e)(3) (emphasis added). Further, the legislative history demonstrates Congress intended to extend immunity to all civil claims: "This section provides 'Good Samaritan' protections from **civil liability** for providers or users of an interactive computer service for actions to restrict or to enable restriction of access to objectionable online material." 142 Cong. Rec. H1078 (1996) (emphasis added).

Thus, the CDA grants immunity from **all** civil liability, except for the few exceptions expressly laid out in the statute: (1) federal criminal law; (2) intellectual property law; (3) State law that is

10

consistent with this section; and (4) the Electronic Communications Privacy Act of 1986. 47 U.S.C. § 230(e). In fact, several courts have specifically applied Section 230 to breach of contract claims. *Jane Doe One v. Oliver*, 755 A.2d 1000, 1002, 1004 (Conn. Sup. Ct. 2000); *Schneider v. Amazon.com, Inc.*, 108 Wash. App. 454, 464 (Wash. Ct. App. 2001); *Green v. America Online, Inc.*, 318 F.3d 465, 471 (3d Cir. 2002) (holding AOL did not waive Section 230 immunity by the terms of its membership contract).

Therefore, in determining whether to apply the CDA, the Court should not ask what particular form the plaintiff's claim takes -- whether it sounds in tort or specifically alleges defamation (if such were the case, plaintiffs could plead their way around the CDA and undermine the will of Congress) -- but whether the claim is directed toward the defendant in its publishing, editorial, and/or screening capacities, and seeking to hold it "liable for its publication of third-party content or harms flowing from the dissemination of that content." *Doe v. Myspace*, 474 F. Supp.2d at 849. *See also Green,* 318 F.3d at 471; *Noah*, 261 F. Supp. 2d at 538-39;

For example, in *Doe v. Myspace*, the plaintiffs asserted they were not suing for Myspace's posting of content, but rather for the website's failure to keep minors off the website or to prevent sexual predators from communicating with minors. The court found the "artful pleading" to be "disingenuous," and held that the CDA immunized Myspace from liability because plaintiffs were seeking to hold Myspace liable for publishing content provided by third parties. *Doe v. Myspace*, 474 F. Supp.2d at 849-50 ("It is quite obvious the underlying basis of Plaintiffs' claim is that, through postings on Myspace, Pete Solis and Julie Doe met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of Jane Doe. If Myspace had not

11

published [their content], Plaintiffs assert they never would have met and the sexual assault never would have occurred").

In the present action, Plaintiff attempts to do the same thing as the plaintiffs in *Doe v. Myspace* and, in fact, comes right out and tells the Court his Complaint is artfully pled to avoid the CDA (Pl. Opp., p. 5) ("That is precisely why Plaintiff is asserting the content of the profiles are not at issue. It is the fact that a minor was on the SexSearch website, and not, the content of the minor's profile that is at issue").

At the end of the day, however, Plaintiff is seeking to hold SexSearch liable for its publication of third-party content and harms flowing from the dissemination of that content.  The underlying basis for Plaintiff's claim is that if SexSearch had never published Jane Roe's profile, Plaintiff and Jane Roe never would have met, and the sexual encounter never would have taken place. Plaintiff thus attempts to hold SexSearch liable for "decisions relating to the monitoring, screening, and deletion of content from its network -- actions quintessentially related to a publisher's role." *Green*, 318 F.3d at 471. Section 230 specifically proscribes liability in such circumstances. *Zeran*, 129 F.3d at 332-33.

Therefore, Defendants are immune from liability with regard to Counts One through Seven and Count Fourteen, as they all hinge on SexSearch's failure to remove Jane Roe's profile, or their failure to prevent John Doe from communicating with her.  Further, even if Defendants were not immune under the CDA, each of Plaintiff's individual claims fails on the merits.  A discussion of these individual claims follows.

**The Merits of the Individual Claims**

As an antecedent matter, the Court must address Plaintiff's Motion to Strike Defendants' Joint Reply (Docket No. 149) on the grounds that it is replete with references to matters outside the

12

pleadings (Docket No. 149, p. 3-4).  The Court must determine whether it can consider the Terms and Conditions, the Privacy Policy, the WARNING, and the age-check box attached to Defendants' Motion to Dismiss.

It is well established that a Rule 12(b)(6) motion attacks the sufficiency of the pleadings, and a court ordinarily may not consider documents outside the four corners of the complaint.  *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are (1) referred to in the plaintiff's complaint and (2) are central to his claims.  *Id.*  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

Here, the documents attached to Defendants' Motion to Dismiss are extensively referenced in the Complaint (*see* Complaint ¶¶ 106, 175-78, 182-92, 246-48, 330-35, 343, 361-89). Moreover, the documents are central to Plaintiff's claims -- not only does he allege Defendants breached the Terms and Conditions and the purported warranty (Complaint ¶¶ 291-96, 322-26), but six of his fourteen claims allege that clauses in the Terms and Conditions are unconscionable (Complaint ¶¶ 356-89). Therefore, the documents attached to Defendants' Motion to Dismiss may properly be considered by the Court, and Plaintiff's Motion to Strike (Docket No. 149) is denied.

Defendants have also asked the Court to take judicial notice of the fact that numerous other adult dating websites exist (Def. Req. for Jud. Not.). When deciding a Rule 12(b)(6) motion, the Court may consider materials in addition to the complaint "if such materials are public records or are otherwise appropriate for the taking of judicial notice."  *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).  The Court may take judicial notice

13

of facts "not subject to reasonable dispute" which are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The fact that numerous adult-dating websites exist is capable for ready and accurate determination and is not subject to reasonable dispute. Accordingly, the Court takes judicial notice of the existence of numerous other adult-dating websites.

<u>Breach of Contract</u>

Under Ohio law, to prove breach of contract, a plaintiff must demonstrate by a preponderance of evidence that: (1) a contract existed; (2) plaintiff fulfilled his obligations; (3) defendant failed to fulfill his obligations; and (4) damages resulted from this failure. *Lawrence v. Lorian Cty. Community College*, 127 Ohio App.3d 546, 548-49 (Ohio Ct. App. 1998). Therefore, the Court must first determine whether a contract existed and its essential terms.

In order to gain access to SexSearch as a member, all potential members must check a box that appears on the webpage, which states: "I am over 18, I have read and agree to the <u>terms and conditions</u> and the <u>privacy policy</u>" (Def. Mot. to Dismiss, p. 29) (emphasis in original). This type of contract is commonly referred to as a "clickwrap" agreement. "A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction."[1] *Feldman v. Google, Inc.*, No. 06-2540, 2007 U.S. Dist. LEXIS 22996, at *17 (E.D.Pa. Mar. 29, 2007) (citing *Specht v. Netscape*

---

[1] "Clickwrap" agreements are different than "browsewrap" agreements. A "browsewrap" agreement "allow[s] the user to view the terms of the agreement, but do[es] not require the user to take any affirmative action before the Web site performs its end of the contract." James J. Tracy, Case Note, *Legal Update: Browsewrap Agreements:* Register.com, Inc. v. Verio, Inc., 11 B.U. J. Sci. & Tech. L 164, 164-65 (2005).

*Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002)). Althought they are electronic, clickwrap agreements are considered "writings" because "they are printable and storable." *Id.* Here, it is undisputed the contract consisted of the Terms and Conditions and the Profile Guidelines (Complaint ¶¶ 291-96; Def. Mot. to Dismiss, pp. 15-17).

Plaintiff alleges Defendants breached the contract by "permitting minors to become paid members" and by "deliver[ing] a minor to Plaintiff for the purpose of sexual relations" (Complaint ¶¶ 296-97). However, the Terms and Conditions provide that SexSearch does not "assume any responsibility for verifying[ ] the accuracy of the information provided by other users of the Service" (Def. Mot. to Dismiss, Ex. A, ¶ 17). Therefore, Defendants complied with the Terms and Conditions, and Plaintiff's breach of contract claim fails as a matter of law. *Ohio Univ. Bd. of Trustees v. Smith*, 132 Ohio App.3d 211, 221 (Ohio Ct. App. 1999) ("[w]hen the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law").

Fraud

Plaintiff alleges in his Second cause of action that SexSearch fraudulently represented "all persons on its site are '18+' years of age," and that it "verifies all members profiles prior to posting." Plaintiff further contends he reasonably relied on these representations (Complaint ¶¶ 301-03).

The elements of a claim of fraud are:

(a) a representation. . . , (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Orbit Electronics, Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App.3d 301, 313-14 (Ohio Ct. App. 2006) (citations omitted).

15

As a matter of law, Plaintiff could not have reasonably relied on a purported representation somewhere on the SexSearch website that all persons using the site were over the age of 18.  Plaintiff, as a registered member of the site, knew the membership-registration process did not involve an age-verification procedure.  But more importantly, Plaintiff cannot claim he was misled or he reasonably relied on the representation that "all members are 18+" when the Terms and Conditions clearly state the website did not guarantee (and took no responsibility for verifying) members' ages  (Def. Mot. to Dismiss, Ex. A, ¶ 17).  Further, the Terms and Conditions state that no "information, whether oral or written, obtained by you from SexSearch or through or from SexSearch shall create any warranty not expressly stated in the TAC."  *Id*. at ¶ 15(d).  Plaintiff specifically agreed to these Terms and Conditions when registering as a member, and acknowledges they constitute the contract between himself and SexSearch (Complaint ¶¶ 175, 182, 184).  Whether he actually read the Terms and Conditions is of no consequence.  *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503 (1998) (quoting *McAdams v. McAdams*, 80 Ohio St. 232, 240-41 (1909)).  Lastly, Plaintiff clearly had the ability to confirm Jane Roe's age when he met with her **in person**, before they had sex, yet failed to do so.  Although Plaintiff's Complaint alleges his reliance was reasonable, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 733 (6th Cir. 2007) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)) (holding plaintiff's conclusory allegation that the application process is "inherently deceptive" is not enough to survive a 12(b)(6) motion). Accordingly, Plaintiff's reliance upon the purported representations was not reasonable as a matter of law in light of the language in the Terms and Conditions, and his fraud claim must be dismissed.

16

<u>Negligent Infliction of Emotional Distress</u>

The Ohio Supreme Court has recognized the tort of negligent infliction of emotional distress. *See Paugh v. Hanks*, 6 Ohio St.3d 72, 74 (1983). However, a plaintiff may only bring a claim for negligent infliction of emotional distress where "the plaintiff is cognizant of real **physical danger** to himself or another." *King v. Bogner*, 88 Ohio App.3d 564, 569 (Ohio Ct. App. 1993) (emphasis added) (citation omitted) (the plaintiff could not maintain a claim for negligent infliction of emotional distress where she was not cognizant of any physical danger resulting from a slanderous statement); *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 86-87 (1995) (Ohio courts have limited "recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril").

Although Plaintiff's arrest and criminal indictment certainly may have caused him emotional distress, he was in no physical peril.  Further, in his Complaint, Plaintiff does not allege he was cognizant of any physical danger to himself or others (*see* Complaint ¶¶ 306-313).  Therefore, this is simply not a case in which Plaintiff can recover for negligent infliction of emotional distress.  *See Wigfall v. Society Nat'l Bank*, 107 Ohio App.3d 667, 670, 676 (Ohio Ct. App. 1995) (where the plaintiff was falsely accused of robbing a bank and was subsequently arrested, fingerprinted, interrogated by FBI agents, and his picture was published in the newspaper and broadcast on television, his negligent infliction of emotional distress claim was denied because the defendant's negligence produced no actual threat of physical harm to him or any other person); *see also Reeves v. Fox TV Network*, 983 F. Supp. 703, 707, 711 (N.D. Ohio 1997) (plaintiff could not maintain a claim of negligent infliction of emotional distress resulting from the videotaping and broadcast of his arrest).

Negligent Misrepresentation

Plaintiff next alleges Defendants made a negligent misrepresentation by promising all members were adults (Complaint ¶ 316).

A defendant is liable for negligent misrepresentation if he: (1) supplies false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied upon the information; (5) and the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. City of Cleveland Heights,* 41 Ohio St.3d 1, 4 (1989).  Further, this Court has recognized that "[a] core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Ziegler v. Findlay Indus.*, 464 F. Supp.2d 733, 738 (N.D. Ohio 2006) (quoting *Hayes v. Computer Assoc. Inc.*, No. 03:02 CV 7452, 2003 U.S. Dist. LEXIS 10712 (N.D. Ohio June 24, 2003)).  "Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special relationship' does not exist in ordinary business transactions." *Id.*

The transaction in the instant case is not the type of "special relationship" required to state a claim for negligent misrepresentation.  Further, the Complaint does not allege that such a special relationship exists here.   Accordingly, Plaintiff's negligent misrepresentation claim must be dismissed.

Breach of Warranty

The only apparent basis for Plaintiff's breach of warranty claim is Ohio Rev. Code § 1302.26, which provides in pertinent part:

18

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

This Section clearly states that it applies only to the sale of goods. A membership to SexSearch is a service, not goods, and therefore Plaintiff cannot maintain a claim for breach of warranty under this statute. *Brown v. Christopher Inn Co.*, 45 Ohio App.2d 279, 283 (Ohio Ct. App. 1975) (Section 1302.26 does not apply where there has been no sale of goods as defined under the Uniform Commercial Code, U.C.C. § 2-105 ("'Goods' means all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.").

Plaintiff cites *Litehouse Products, Inc. v. A.M.I. International, Ltd.*, No. 46834, 1984 WL 4539, at * 3 (Ohio Ct. App. Mar. 8, 1984), for the proposition that Section 1302.26 applies to products and services (Pl. Opp., p. 9). However, that case did not involve services, and nowhere in the opinion did the court mention Section 1302.26 applies to services. *Lighthouse Products*, 1984 WL 4539, at *1, *3.  Accordingly, Plaintiff's breach of warranty claim fails.

<u>Violations of the Ohio Consumer Sales Practices Act</u>

Plaintiff alleges numerous violations of the Ohio Consumer Sales Practices Act (OCSPA). Causes of action Six and Seven allege Defendants engaged in deceptive trade practices in violation of Ohio Rev. Code §§ 1345.02(B)(10) and 1345.02(A) by warranting that no member of the SexSearch website was a minor (Complaint ¶¶ 343, 354). Causes of action Eight through Ten allege Defendants incorporated unconscionable clauses into the Terms and Conditions in violation of Ohio Rev. Code §§ 1345.02(A) and 1345.03, including a clause limiting damages for its breach to the

amount of the contract and a clause allowing the supplier to unilaterally cancel the contract after the consumer's three (3) day right to cancel has passed without allowing the consumer the same option (Complaint ¶¶ 358, 362, 366).

Before reaching the merits of these claims, Defendants argue the OCSPA is inapplicable because the sale of a SexSearch membership is not a "consumer transaction" within the meaning of the OCSPA (Def. Mot. to Dismiss, pp. 24-25).

"Whether the parties have engaged in a consumer transaction is a question of law for the court to determine." *Riley v. Supervalu Holdings, Inc.*, No. C-040668, 2005 Ohio 6996, at ¶ 10, 2005 Ohio App. LEXIS 6318, at *7 (Ohio Ct. App. Dec. 30, 2005). Under the OCSPA, a consumer transaction is defined as "a sale . . . of goods, a service, . . . or an intangible, to an individual for purposes that are primarily personal, family, or household." Ohio Rev. Code § 1345.01(A). Defendants argue the membership is not a "service" within the meaning of the OCSPA because services are defined as the "performance of **labor** for the benefit of another" (emphasis added). They cite *Hoang v. E\*trade Group*, 151 Ohio App. 3d 363, 372 (Ohio Ct. App. 2003), in which the court held "the common ordinary meaning of the word 'labor' implies work performed with some physical exertion," and "[s]ervices provided electronically do not require any physical exertion and therefore do not require any 'labor.'" *Id.*

However, this position is at odds with common sense. First, the OCSPA is a remedial law which must be liberally construed in favor of the consumer; yet the court in *Hoang* gives a hyper-technical definition of the word "labor" which, in effect, denies consumers protection with regard to virtually all internet transactions. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990); *Whitaker v. M.T. Auto., Inc.*, 111 Ohio St. 3d 177, 185 (2006). Secondly, courts have specifically found a

20

website membership to be a service. *Bosley v. WildwetT.com*, 310 F. Supp.2d 914, 921 (N.D. Ohio 2004). In this case, the service rendered by SexSearch is, among other things, the delivery of communications among members via the internet (*see* Complaint ¶ 213). Merely because the communications are delivered electronically does not alter the fact that a service has been performed. The only difference here is that the service is performed by computers acting on behalf of actual people. There is no reason why this distinction alone should render Ohio's consumer protection legislation inapplicable to transactions over the internet. Therefore, the sale of a SexSearch membership is a "consumer transaction" within the meaning of the OCSPA.

Deceptive Acts

With regard to the Sixth and Seventh causes of action, when determining whether an act or practice is deceptive, the Court must view the incident from the consumer's standpoint. *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.3d 299, 307 (Ohio Ct. App. 2006). "The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract." (citation omitted). *Id.* "A deceptive act has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" (quoting *McCullough v. Spitzer Motor Ctr.*, No. 64465, 1994 WL 24281, at *8 (Ohio Ct. App. Jan. 27, 1994)). *Id.*

In this case, there was nothing deceptive with regard to the WARNING language on SexSearch that "all persons within this site are 18+." Plaintiff was not an unsuspecting consumer. He was aware the SexSearch membership registration process did not include an age-verification procedure. As noted above, Plaintiff specifically agreed to Terms and Conditions which stated that SexSearch did not guarantee or verify any information provided by users of the website, and nothing outside of the Terms and Conditions creates warranties (Def. Mot. To Dismiss, Ex. A, ¶¶ 17, 15(d)).

21

This WARNING language is not deceptive because the parties contracted that no warranties could be created outside the Terms and Conditions.  *See, e.g., Rusk Industries v. Alexander*, No. L-01-1328, at ¶ 46, 2002 WL 850232, at *7 (Ohio Ct. App. May 3, 2002) ("the Consumer Sales Practices Act was not promulgated as a panacea by which any consumer would be able to avoid unpleasant contractual obligations").  Accordingly, causes of action Six and Seven fail.

Unconscionable Acts

Plaintiff also alleges Defendants committed unconscionable acts in violation of Ohio Rev. Code § 1345.03 because the contract (a) limited damages to the amount of the contract and (b) provided Defendants a unilateral right to cancel the contract (causes of action Eight through Ten).

Ohio Rev. Code § 1345.03 provides:

(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction
.
(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier.

"In order to recover under Section 1345.03, a consumer must show that a supplier acted unconscionably and knowingly." *Karst v. Goldberg*, 88 Ohio App.3d 413, 418 (Ohio Ct. App. 1993). While proof of intent is not required to prove deception under Section 1345.02, proof of knowledge is a requirement to prove an unconscionable act under Section 1345.03. *Suttle v. DeCesare*, No. 81441, 2003 WL 21291053, at * 6 (Ohio Ct. App. June 5, 2003) (citing *Karst*, 88 Ohio App.3d at 418).  "Knowledge," under Section 1345.01(E), "means actual awareness, but such actual awareness

22

may be inferred where objective manifestations indicate that the individual involved acted with such awareness." *Id.*

While viewed critically by the courts, limitation of liability clauses may be freely bargained for in Ohio, and "[a]bsent important public policy concerns, unconscionability, or vague and ambiguous terms, [such] provisions will be upheld . . . ." *Nahra v. Honeywell, Inc.*, 892 F. Supp. 962, 969 (1995) (citations omitted) (quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 832 (Ohio Ct. App. 1993)). For example, in *Motorists Mut. Ins. Co. v. ADT Sec. Systems*, 1995 WL 461316 (Ohio Ct. App. Aug. 4, 1995), where the limitation on damages clause was disproportionate to the actual damages suffered by the plaintiffs, but not disproportionate to the contract price, the court held the contract was not substantially one-sided and unconscionable because the defendants "could reasonably take the position that it could not afford to undertake a potential liability greater than $1,000 in view of the price it was charging for its [alarm] system," which was an annual fee of $1,033, for a period of five years. *Id.* at *7

The instant action is analogous to *Motorists Mut. Ins. Co.* Not only is the limitation on damages here the same as the contract price (Def. Mot. to Dismiss, Ex. A, ¶), but given the nature of Defendants' adult dating website (i.e., SexSearch cannot control its member's actions when they meet), the extent of potential liability is unpredictable and potentially astronomical. *See Collins,* 86 Ohio App.3d at 834-35. A SexSearch gold membership costs $29.95 per month, and a basic membership is free (Complaint ¶¶ 113, 116). In this case, a limitation on damages clause is commercially reasonable to avoid the specter of potential liability which far exceeds the meager price paid, if any, for membership. *Collins,* 86 Ohio App.3d at 835; *Royal Indem. Co. v. Baker Protective Services, Inc.*, 33 Ohio App.3d 184, 186 (1986) (citations omitted) ("Ohio courts have held the

23

concept of 'freedom of contract' to be fundamental to our society," and "an important function of contract law is to enforce the parties' agreed-upon allocation of risk").  Therefore, the limitation on damages clause here is not substantially one-sided.

With regard to the provision in the contract providing SexSearch a unilateral right to cancel the contract after the consumer's three (3) day right to cancel has passed without allowing the consumer the same option does not render the contract substantially one-sided and unconscionable. In fact, this provision is intended to protect members by allowing SexSearch to monitor and remove members that harass each other, post advertisements, or otherwise violate the Terms and Conditions. Moreover, even if the website cancels the membership, the member will receive a pro-rata refund (Def. Mot. to Dismiss, Ex. A, ¶ 3).  Thus, this clause is entirely reasonable and not substantially one-sided.  Moreover, Plaintiff provides no legal support for this claim.  Plaintiff's Eighth, Ninth, and Tenth causes of action fail and must be dismissed.

Unconscionability

Plaintiff's causes of action Eleven, Twelve, and Thirteen allege common-law claims based on alleged unconscionability of the Terms and Conditions.  Specifically, Plaintiff claims (1) the limitation of liability and the disclaimer of warranties were misleading, and he was not provided a meaningful choice with regard to accepting those terms; and (2) the Terms and Conditions provide no guarantee Defendants would or could perform their contractual promises (Complaint ¶¶ 368-389).

Unconscionability is a question of law, and "is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party."  *Collins*, 86 Ohio App.3d at 834; *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.*, 67 Ohio St.2d 91, 98 (1981).  Thus, Ohio's unconscionability

24

doctrine consists of two prongs: (1) procedural unconscionability, and (2) substantive unconscionability. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80 (Ohio Ct. App. 1996). A contract is unconscionable only if it meets both tests. *Collins,* 86 Ohio App.3d at 834.

Procedural unconscionability involves factors relating to the "relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question.'" *Id.* (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D.Mich. 1976))

Here, Plaintiff does not allege lack of education, intelligence, or business experience. Rather, he claims he was not provided any meaningful choice with regard to accepting the Terms and Conditions, and he was not represented by counsel at the time (Complaint ¶¶ 376, 397, 386, 387).

Even assuming Plaintiff could not have bargained with SexSearch to alter the terms, "this inability alone is insufficient to establish procedural unconscionability." *Collins,* 86 Ohio App.3d at 835 (citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 157 (1978)). Further, "there were alternative sources of supply for the goods in question;" specifically, numerous other adult-dating websites exist, from which Plaintiff could have received the same service if he did not agree with SexSearch's Terms and Conditions.[2]  *Collins,* 86 Ohio App.3d at 834 (citation

---

[2] As noted above, the Court takes judicial notice of the existence of numerous other adult-dating websites.

omitted).   Thus, the fact that Plaintiff "was not provided any meaningful choice" regarding the wording of the Terms and Conditions did not constitute procedural unconscionability here.

Moreover, although the Court should consider whether Plaintiff was represented by counsel at the time the contract was executed, the crucial question is whether "each party to the contract . . . [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print?" *Post v. Procare Automotive Serv. Solutions*, 2 No. 87646, 2007 WL 1290091, at * 4 (Ohio Ct. App. May 3, 2007) (citations omitted); *Collins,* 86 Ohio App.3d at 835 (the court should consider whether the terms were explained, or otherwise brought to Plaintiff's attention). Here, Plaintiff had an adequate opportunity to read the Terms and Conditions, and there is no allegation that a time limitation was placed on Plaintiff's opportunity to read them.  Therefore, the fact Plaintiff was not represented by counsel does not create procedural unconscionability in this case. *Anderson v. Delta Funding Corp.*, 316 F. Supp.2d 554, 565 (N.D. Ohio 2004).

Additionally, the limitation of liability and the disclaimer of warranties were not hidden from Plaintiff or in fine print, but were sufficiently conspicuous.  *See Hubbert v. Dell Corp.*, 359 Ill. App.3d 976, 987 (Ill. Ct. App. 2005) (terms in a clickwrap agreement were sufficiently conspicuous where the website had hyperlinks for the Terms and Conditions in contrasting blue colors, the clauses in question were partially in capital letters, and the beginning of the terms were in bold, capital letters); *Anderson*, 316 F. Supp.2d at 565 (holding no unconscionability where the language was not particularly complex and the terms were not typed in abnormally fine print). Here, the terms are highlighted in bold, capital letters and with hyperlinks to highlight some of the more important terms (Def. Mot. to Dismiss, ¶¶ 12, 15). Therefore, there was no procedural unconscionability in the execution of the contract in this case.

The second element of unconscionability is substantive unconscionability. "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *Collins*, 86 Ohio App.3d at 834. "Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability." *Id.*

For the reasons discussed above, the limitation of liability clause was commercially reasonable based on the small contract price and the extent and unpredictability of future liability. Thus, the limitation of liability clause is not substantively unconscionable. With regard to the disclaimer of warranties (and although Defendants provided no support why the disclaimer of warranties is commercially reasonable), because the Court does not find procedural unconscionability, it is unnecessary for the Court to address the issue of substantive unconscionability. *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 629 (Ohio Ct. App. 2006). Accordingly, Plaintiff's Twelfth and Thirteenth causes of action fail to state a claim for unconscionability and must be dismissed.

Lastly, Plaintiff's Eleventh cause of action alleges the Terms and Conditions provide no guarantee Defendants would or could perform their contractual promises, and therefore, the terms are unconscionable (Complaint ¶ 370). This claim is wholly without merit.

It is axiomatic that a contract is "a **promise** or a set of promises for the breach of which the law gives a remedy." *Rasnick v. Tubbs*, 126 Ohio App. 3d 431, 434 (Ohio Ct. App. 1998) (emphasis added) (citation omitted). In order for a contract to be binding, there must be a "manifestation of mutual assent," which requires that each party "either make a promise or begin or render a performance" (citation omitted). *Id.*; *Westfield Ins. Co. v. HULS Am., Inc.*. 128 Ohio App.3d 270, 291 (Ohio Ct. App. 1998). Thus, a contract is nothing other than a party's **promise** to perform its agreed

27

upon obligations, and nowhere does the law require a party to guarantee it will perform its contractual obligations. If the Court were to hold a contract unconscionable merely because one of the parties did not guarantee it would perform as promised, the Court would implicitly be adding an additional requirement to the formation of a contract; i.e., one which requires the parties to guarantee performance. The Court declines to change the time-tested rule that a contract is a promise, not a guarantee. Accordingly, Plaintiff's Eleventh cause of action fails to state a claim upon which relief may be granted, and therefore must be dismissed

### Failure to Warn

Plaintiff's final cause of action alleges Defendants failed to warn Plaintiff that a minor may be a member of SexSearch (Complaint ¶ 393).

A failure to warn claim consists of the following elements: (1) there was a duty to warn, (2) that duty was breached, and (3) injury proximately resulted from the breach. *See Freas v. Prater Constr. Corp.*, 60 Ohio St. 3d 6, 8-9 (1991). However, where the danger is open and obvious, there is no duty to warn of the danger. *Livengood v. ABS Contrs. Supply*, 126 Ohio App. 3d 464, 466 (Ohio Ct. App. 1998). "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Klauss v. Glassman*, No. 84799, 2005 WL 678984, at *3 (Ohio Ct. App. Mar. 24, 2005) (citations omitted).

In the instant action, Defendants had no duty to warn Plaintiff because the danger here was open and obvious. It is common knowledge that "young children all over America use the Internet." *U.S. v. Rice*, 61 Fed. Appx. 14, 19 (4th Cir. 2003). Moreover, given the "anonymity of the Internet," the danger that a minor might enter an adult-only website was open and obvious, as persons wishing to gain access merely had to click a box stating they were above 18 years of age. *See, e.g., U.S. v.*

*Mitchell*, 353 F.3d 552, 553 (7th Cir. 2003) ("[t]he Internet has opened the doors for many to transact business and personal affairs with almost complete anonymity").  Defendants had no duty to warn Plaintiff that an anonymous internet poster might post false content, as internet anonymity is an open and obvious danger.  S*ee, e.g., Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 163 (Ohio Ct. App. 1994) ("brewers and distributors of alcoholic beverages do not have a duty to warn consumers of the dangers inherent in the excessive or prolonged use of alcohol because those dangers are within the body of knowledge common to the community").  Further, even if Defendants were under a duty to warn, the Terms and Conditions contain the following warning: "We cannot guarantee, and assume no responsibility for verifying, the accuracy of the information provided by other users of the Service" (Def. Mot. to Dismiss, Ex. A, ¶ 17).  Thus, even if Defendants had a duty to warn Plaintiff, they satisfied this duty by including a warning in the Terms and Conditions.  Accordingly, Plaintiff's failure-to-warn claim fails as a matter of law.

## CONCLUSION

Plaintiff employed a double-barreled shotgun approach in this case, but failed to hit a claim upon which relief may be granted.  Accordingly, Defendants' Motion to Dismiss (Doc. No. 123) is granted, and Plaintiff's Motion to Strike (Doc. No. 149) is denied.

IT IS SO ORDERED.

___ s/ Jack Zouhary ____
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 22, 2007

29